359-063535                                                        EHN/SLA

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**JUDGE KOCORAS
MAGISTRATE JUDGE COX**

| | | |
|---|---|---|
| GLADYS SEARCY,<br>individually and on behalf of all<br>others similarly situated, | )<br>)<br>) | NO. |
| | ) | |
| Plaintiff, | )<br>) | JUDGE |
| | ) | CLASS ACTION COMPLAINT **08 C 985** |
| vs. | )<br>) | |
| eFUNDS CORPORATION, d/b/a<br>DEPOSIT PAYMENT PROTECTION<br>SERVICES, INC., and DEPOSIT<br>PAYMENT PROTECTION SERVICES,<br>INC., | )<br>)<br>)<br>)<br>)<br>) | **FILED**<br>**FEBRUARY 15, 2008**<br>MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

*NOW COMES* the Plaintiff, individually and on behalf of all other similarly-situated

persons as defined below, through her attorneys, PRETZEL & STOUFFER, CHARTERED, as

co-counsel, and for her Complaint against the Defendants, states as follows:

### I.  INTRODUCTION

1.      This action is brought by Plaintiff against Defendants eFunds Corporation, d/b/a

Deposit Payment Protection Services, Inc., and Deposit Payment Protection Services, Inc.

("DPPS") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

Plaintiff brings this action on behalf of herself and other similarly-situated persons as defined

below (referred to as the "Class") to redress Defendants' past, present and continuing violations

of the FCRA, including but not limited to the provisions contained in 15 U.S.C. § 1681g.

2.     Defendants have violated, and continue to violate, the FCRA by refusing or failing to provide consumers with disclosures that comply with 15 U.S.C. § 1681g.  In particular, after a consumer has requested a disclosure pursuant to 15 U.S.C. § 1681g, Defendants do not provide:  1) all information in the consumer's file at the time of the request as required by 15 U.S.C. § 1681g(a)(1); 2) the sources of the information in the consumer's file as required by 15 U.S.C. § 1681g(a)(2); and/or 3) the names of the persons (or trade names of the persons, if applicable) who procured consumer reports from Defendants regarding the consumer during the one-year period preceding the consumer's request for a disclosure as required by 15 U.S.C. § 1681g(a)(3).

3.     Plaintiff, individually and on behalf of the Class she seeks to represent, alleges that Defendants willfully violated, and continue to willfully violate, the FCRA.

4.     Plaintiff sues on behalf of herself and the Class she seeks to represent pursuant to Fed. R. Civ. P. 23(a) and one or both of the following Federal Rules of Civil Procedure: 23(b)(3) and/or 23(c)(4).

5.     Plaintiff, individually and on behalf of the Class she seeks to represent, seeks statutory damages under 15 U.S.C. §1681n of not less than $100 and not more than $1,000 for each willful violation of the FCRA committed by Defendants against Plaintiff and the Class she seeks to represent during the liability period.  Plaintiff, individually and on behalf of the Class she seeks to represent, does not seek actual damages or compensatory damages.

## II.     JURISDICTION AND VENUE

6.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2

7.    Pursuant to 28 U.S.C.§1391(c), venue is proper in this Court in the Northern District of Illinois because Defendants are doing business in the State of Illinois and a substantial portion of the conduct giving rise to this action occurred in the Northern District of Illinois.

### III.    PARTIES

8.    Plaintiff Gladys Searcy ("Searcy") is a resident and citizen of Chicago, Illinois. Searcy is a "consumer" as defined under the FCRA, 15 U.S.C. § 1681a(c). Searcy is representative of the Class.

9.    Defendant eFunds Corporation ("eFunds" or "EFD") is a Delaware corporation, doing business in the State of Illinois.  In its SEC filings, eFunds states that its principal place of business is in Scottsdale, Arizona.

10.    eFunds does business as Deposit Payment Protections Services, Inc. ("DPPS"). In its SEC filings, eFunds identifies DPPS as its wholly-owned subsidiary.

11.    eFunds, individually and doing business as DPPS, is a "consumer reporting agency" as defined by the FCRA.  In addition or in the alternative, eFunds, individually and doing business as DPPS, is a "nationwide specialty consumer reporting agency" as defined by the FCRA.

12.    Defendant DPPS is a foreign corporation doing business in Illinois.  DPPS is registered with the Illinois Secretary of State as a Delaware corporation with its principal place of business in Scottsdale, Arizona.

13.    DPPS is a "consumer reporting agency" as defined by the FCRA.  In addition or in the alternative, DPPS is a "nationwide specialty consumer reporting agency" as defined by the FCRA.

14.     eFunds and DPPS are subject to personal jurisdiction in the State of Illinois for purposes of this lawsuit.

### IV.     PROVISIONS OF THE FAIR CREDIT REPORTING ACT

15.     Under the FCRA, a "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

16.     Under the FCRA, a "nationwide specialty consumer reporting agency" is defined as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, including those that relate to check writing history.

17.     Under the FCRA, a "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for: a) credit or insurance to be used primarily for personal, family, or household purposes; b) employment purposes; or c) any other purpose authorized under 15 U.S.C. § 1681b. Under 15 U.S.C. § 1681b, one of the "authorized purposes" listed is in connection with a business transaction initiated by the consumer.

18.    Under the FCRA, a "file" is defined as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

19.    Under the FCRA, consumers have the right to obtain a disclosure from a consumer reporting agency at any time.  If a consumer requests a disclosure from a consumer reporting agency, the consumer reporting agency is required to provide the following:  a) all information in the consumer's file at the time of the request (15 U.S.C. § 1681g(a)(1)); b) the sources of the information in the consumer's file (15 U.S.C. § 1681g(a)(2)); and c) the name of the persons, or trade names of the persons if applicable, who procured a consumer report from the consumer reporting agency during the one-year period preceding the consumer's request for a disclosure (15 U.S.C. § 1681g(a)(3)).

## V.    NATURE OF DEFENDANTS' BUSINESS

20.    Throughout the country, including the Northern District of Illinois and the State of Illinois, a large percentage of businesses, including merchants, accept checks from consumers as a method of payment for goods and services.  The business transactions are initiated by the consumers who wish to purchase goods or services from said business or merchant (hereinafter Plaintiff refers to "businesses" and "merchants" interchangeably).

21.    Businesses and merchants desire to accept checks as a method of payment for goods and services, yet also want to minimize the potential risk of a receiving a "bad check," such as one that would be returned as an unpaid or dishonored item due to non-sufficient funds or being written on a closed account.

22.    eFunds engages in the payment processing business and one of its business lines is risk management.

23.    eFunds does business as Deposit Payment Protection Services, Inc. ("DPPS").

24.    eFunds' risk management segment, including DPPS, derives its revenues from providing data-based risk management products to retailers, merchants and other businesses. These risk management products include those that Defendants claim can assess the potential risk associated with accepting a consumer's check as payment at the point of sale by a business, merchant, or retailer.

25.    Defendant DPPS engages in the payment processing business and risk management.

26.    DPPS derives its revenues from providing data-based risk management products to retailers, merchants and other businesses. These risk management products include those that Defendants claim can assess the potential risk associated with accepting a consumer's check as payment at the point of sale by a business, merchant, or retailer.

27.    Defendants share common databases, which include information and other data in databases referred to as "ChexSystems" and "SCAN." SCAN is the acronym for Shared Check Authorization Network. Defendants share data and information from other sources as well.

28.    SCAN is a service mark of Defendants.

29.    SCAN Online is a service mark of Defendants.

30.    Defendants claim that their SCAN and SCAN Online products or services, which provide check verification, can help businesses, merchants and retailers to reduce the risk of write-offs for bad checks, such as those that are dishonored and/or written on bad or fraudulent accounts.

31.    Upon information, businesses, merchants and retailers throughout the country contract with Defendants to become "members" of SCAN, the Shared Check Authorization

6

Network.  These businesses, merchants and retailers include those in the Northern District of Illinois area and the State of Illinois.

32.     According to eFunds' SEC filings, as of December 31, 2006, nine of the twenty largest retailers in the United States use Defendants' SCAN check verification service.

33.     Defendants offer at least two product lines related to check verification – SCAN and SCAN Online. Both product lines provide Defendants' customers with daily bad check lists.

34.     According to Defendants' website, EFD SCAN "is a low cost, effective method to verify checks at the point-of-sale (POS) and improve collections of returned checks. On a daily basis, members contribute information about returned checks to us. We then merge all of this information and provide a daily file update of returned check activity to our membership. The member uses this information to verify whether to accept or decline check writers at the point-of-sale."

35.     According to Defendants' website, EFD SCAN provides businesses "with basic protection against bad check writers through a file of known bad check writers. This prevents you [a business contracting with Defendants] from accepting a check from a consumer who currently has an unpaid returned check owed to any member of the EFD SCAN[SM] network. EFD SCAN also provides referral value to the member who contributes the check to the network. Referral value occurs when a consumer is turned down at one retailer because of a bad check that is owed to another retailer. That consumer is referred to the retailer to whom they wrote the bad check and they must pay that check to get off the network and have their check writing privileges restored."

36.     Defendants also offer the product SCAN Online.  In addition to providing information regarding known bad check writers and information regarding unpaid returned

checks, SCAN Online also provides risk management to the merchant by purporting to utilize variables and other analytical tools to assist the merchant in its decisionmaking and authorization of checks. For businesses using SCAN Online, Defendants generally provide a response to approve or decline a check.

37.    Based on information contained in eFunds' SEC filings, businesses and merchants that host the SCAN database typically pay a monthly service fee for Defendants' SCAN product based on the businesses' or merchants' net monthly check sales. If the merchant or business uses certain online products, such as SCAN Online, they are billed by the number of transactions processed through Defendants' system by the merchant or business. Additional fees are also assessed by Defendants for calls placed by the retailers or consumers to Defendants' call centers.

38.    Procedurally, when a consumer initiates a sales transaction with the SCAN "member" business or merchant and presents a check as a method of payment at the point of sale, the business or merchant processes the check through Defendants' SCAN or SCAN Online databases, and possibly Defendants' other databases as well. Typically, the merchant or business processes the check by inputting identifiers unique to that consumer, such as driver license and/or bank account number, into a terminal at the point of sale. Some businesses and merchants have terminals that scan the checks and read these identifiers. Defendants then generate a report to the business or merchant, advising whether in Defendants' databases and systems the consumer has record of a bad check, such as returned or dishonored item, or the account on which the check is written is reported as closed or in bad standing.

39.    In addition to receiving reports from Defendants, "members" (i.e. businesses and merchants who subscribe to Defendants' services) also furnish information to Defendants. If a

8

"member" receives a bad check from a consumer, such as a check that is returned as unpaid or dishonored, the "member" reports this information to Defendants, who enter it into their databases and systems.

40.    Conceptually, if a "member" processes a check through Defendants' system and receives a report from Defendants that the consumer has written a bad check previously, such as a returned or dishonored item, the "member" will not accept the check as a method of payment. The consumer will be directed to contact Defendants, who provide the consumer with information related to the unpaid item and/or the "member" who reported this information to Defendants. Conceptually, once the bad check, such as an unpaid or dishonored item, is paid by the consumer, that particular "member" furnishes this information to Defendants, who adjust their systems and databases accordingly. At that point, the consumer is taken off Defendants' bad check list.

41.    Conversely, if a "member" processes a check through Defendants' system and databases and receives a report from Defendants that the consumer does not have record of a bad check, such as a returned or dishonored item, the "member" will typically accept the consumer's check as a method of payment.

42.    In its SEC filings, eFunds states that because it collects and discloses transaction data and other personal information about consumers, its risk management businesses are subject to the FCRA and any state laws providing greater consumer protections.

43.    Defendants collect, gather, store, disseminate and report information to/from businesses and merchants regarding consumers' check writing and bank account histories. Defendants provide this information to businesses and merchants in the form of a consumer report as defined by the FCRA.

9

44.    By performing the aforementioned risk management services, including the SCAN and SCAN Online services, Defendants are consumer reporting agencies as defined by the FCRA.

45.    In addition to or in the alternative, by performing the aforementioned risk management services, including the SCAN and SCAN Online services, Defendants are nationwide specialty consumer reporting agencies as defined by the FCRA.

46.    In its SEC filings, eFunds admits that, under the FCRA, consumers have the right to know the contents of the records pertaining to them which eFunds maintains at its consumer reporting agencies.  Further in its SEC filings, eFunds admits that, under the FCRA, consumers have the right to challenge the accuracy of that information and to have their information verified, updated or removed if it is incorrect.

47.    As consumer reporting agencies, Defendants are required to comply with the FCRA, including provisions contained in 15 U.S.C. §§ 1681g, 1681h and 1681i.

48.    In addition to or in the alternative, as nationwide specialty consumer reporting agencies, Defendants are required to comply with the FCRA, including provisions contained in 15 U.S.C. §§ 1681g, 1681h and 1681i.

49.    Defendants have created and implemented a uniform policy, practice and procedure for responding to consumers' requests for disclosures and information under the FCRA.

50.    Defendants operate and maintain an internet website known as www.consumerdebit.com.  On www.consumerdebit.com, Defendants provide a preprinted document called the "SCAN Consumer Report Order Form."

51.    The purpose of the "SCAN Consumer Report Order Form" is for consumers to obtain disclosures pursuant to the FCRA.

52.    In addition, Defendants have a policy, practice and procedure of accepting consumer requests for disclosures by telephone, telefax or in writing.

## VI.    FACTS RELATING TO DEFENDANTS' FAIR CREDIT REPORTING ACT VIOLATIONS

53.    Plaintiff Gladys Searcy, along with the Class she seeks to represent, are consumers who have utilized checks as a method of payment for goods and services from businesses, including merchants and retailers.

54.    In September 2005, Searcy contacted Defendants and requested a consumer disclosure pursuant to the FCRA.  Several days later, Searcy received a document in the mail titled "SCAN CONSUMER FILE DISCLOSURE REPORT" (hereinafter referred to as "SCAN Disclosure Report") dated September 15, 2005.  Accompanying the SCAN Disclosure Report was a cover letter purportedly from DPPS and a document titled "A Summary of Your Rights Under the Fair Credit Reporting Act." (**Exhibit 1**) (personal identifying information redacted).

55.    In October 2006, Searcy contacted Defendants again and requested a consumer disclosure pursuant to the FCRA.  Several days later, Searcy received a SCAN Disclosure Report dated October 12, 2006.  Accompanying the SCAN Disclosure Report was a cover letter purportedly from DPPS and a document titled "Frequently Asked Questions." (**Exhibit 2**)(personal identifying information redacted).

56.    The SCAN Disclosure Reports received by Plaintiff are standardized documents that Defendants routinely provide to consumers when requesting disclosures under the FCRA.

Upon information and belief, Defendants have sent identical or virtually identical SCAN Disclosure Reports to the Class that Plaintiff seeks to represent.

57.    Defendants have a uniform policy, practice and procedure for responding to consumers' requests for disclosures under the FCRA.    Under Defendants' uniform policy, practice and procedure, Defendants will only provide information in its databases, systems and files regarding current negative items, such as bad checks, dishonored checks and returned checks.    Other than information regarding current bad, dishonored and returned checks, Defendants provide no additional information to consumers regarding checks processed through Defendants' systems and databases.

58.    Under Defendants' uniform policy, practice and procedure, Defendants do not provide all information in the consumer's file at the time of the request required by 15 U.S.C. § 1681g(a)(1).    Upon information and belief, Defendants have additional information in their databases, systems and files regarding Plaintiff and the Class she seeks to represent, but did not and do not provide this information in the SCAN Disclosure Reports.

59.    Further, under Defendants' uniform policy, practice and procedure, Defendants do not provide the sources of the information in the consumer's file pursuant required by 15 U.S.C. § 1681g(a)(2).    Upon information and belief, Defendants have additional information in their databases, systems and files regarding the sources of information regarding Plaintiff and the Class she seeks to represent, but did not and do not provide this information in the SCAN Disclosure Reports.

60.    Further, under Defendants' uniform policy, practice and procedure, Defendants do not provide the names of the persons (or trade names of the persons, if applicable) who procured consumer reports from Defendants regarding the consumer during the one-year period

preceding the consumer's request for a disclosure as required by 15 U.S.C. § 1681g(a)(3). Upon information and belief, Defendants have or should have additional information in their databases, systems and files regarding persons (or trade names of the persons, if applicable) who procured consumer reports from Defendants regarding Plaintiff and the Class she seeks to represent during the one-year period preceding the consumer's request, but did not and do not provide this information in the SCAN Disclosure Reports.

## VII.    CLASS WIDE ALLEGATIONS

### A.    CLASS DEFINITIONS

61.    Plaintiff sues on behalf of herself and on behalf of other persons similarly situated pursuant to Fed. R. Civ. P. 23(a). Plaintiff is a member of the Class she seeks to represent, which consists of all "consumers" as defined under the FCRA in the United States who requested a consumer disclosure from Defendants from June 18, 2005, to the present and continuing, and received a document titled "SCAN CONSUMER FILE DISCLOSURE REPORT" ("SCAN Report") or similar report. Plaintiff may subsequently refine the class definition in light of discovery.

62.    Plaintiff and the Class she seeks to represent relied and rely upon the case of Sammon, et al., Plaintiffs v. eFunds Corporation, d/b/a Deposit Payment Protection Corporation, and Deposit Payment Protection Corporation, previously filed on June 18, 2007, in the United States District Court, Middle District of Tennessee, bearing Docket Number 3:07-0656, to toll the applicable statute of limitations in this action.

63.    Plaintiff and the Class she seeks to represent were provided with consumer disclosures from Defendants that violated the FCRA. Specifically, Plaintiff and the Class she

seeks to represent failed to receive disclosures from Defendants that complied with 15 U.S.C. § 1681g.

64.     Plaintiff and the Class she seeks to represent have been subjected to violations of the FCRA during the applicable liability period from June 18, 2005, to the present, and continuing.

**B.     NUMEROSITY AND IMPRACTICABILITY OF JOINDER**

65.     The Class is so numerous that it is impracticable to bring all of its members before the Court.  Upon information and belief, Defendants receive hundreds if not thousands of requests for disclosures by consumers pursuant to the FCRA on an annual basis.  Thus, the Class of consumers comprises hundreds or thousands of persons.   The actual number of Class members who have requested disclosures from Defendants during the applicable liability period from June 18, 2005, to the present, and continuing can be determined from Defendants' records.

**C.     COMMON QUESTIONS OR LAW AND FACT**

66.     The prosecution of the claims of the Plaintiff requires adjudication of questions of law and fact common to the putative Class: whether Defendants have engaged in a systematic and uniform policy, practice or procedure in responding to consumer's request for disclosures that violate the FCRA.

67.     The claims of the named Plaintiff and the Class she seeks to represent are embedded in common questions of operative facts and law, which include whether:    1) Defendants are consumer reporting agencies as defined by the FCRA; 2) Defendants are specialty consumer reporting agencies as defined by the FCRA; 3) Defendants provide consumer reports to businesses as defined by the FCRA; 4) Defendants have provided standardized, uniform consumer disclosures which violate the FCRA; 5) Defendants refused or failed to

14

provide all information in the consumer's file at the time of the request; 6) Defendants refused or failed to provide the sources of the information in the consumer's file at the time of the request; 7) Defendants refused or failed to identify each person (or trade name if applicable) that procured a consumer report regarding the consumer from Defendants during the one-year period preceding the date on which the consumer's request was made; 8) Defendants' SCAN Disclosure Report or other reports provided to consumers violate the FCRA; and 9) Defendants' noncompliance was a willful violation of the FCRA.

68.    The common questions of fact are that the Plaintiff and the Class they seek to represent all requested a consumer disclosure under the FCRA and were provided a SCAN Report or other uniform and standardized report utilized by Defendants' under their common business policies, practices, and procedures.

69.    The questions of law and fact common to the class predominate over any questions affecting only individual Class members.

**D.    TYPICALITY**

70.    The claims of the named Plaintiff are typical of the claims of the members of the Class.   The named Plaintiff and all Class members have been and are similarly adversely affected by the systematic and uniform policy, practice and procedures complained of herein. Specifically, the named Plaintiff's claims, like those of the Class members, arise out of Defendants' common business practice or a course of conduct in refusing or failing to provide disclosures to consumers in compliance with the FCRA.  Like members of the Class, the named Plaintiff's rights under the FCRA have been violated by Defendants' standard and uniform policies, practices and procedures.

E.    **ADEQUACY OF REPRESENTATION**

71.    The named Plaintiff will fairly and adequately protect the interest of the Class in so far as her claims are broadly representative of the claims of the Class, as reflected in the preceding paragraphs. The named Plaintiff's interests are co-extensive with those of the Class members in that each would benefit from a determination that Defendants' standard and uniform policies, practices and procedures violate the FCRA and further, that Defendants' conduct was willful. Plaintiff has no interests which are antagonistic or adverse to the interests of other class members.

72.    Further, the named Plaintiff's interests are co-extensive with those of the Class members in that each would benefit from imposition of a remedy for Defendants' continued, systematic and uniform violation of the FCRA.

73.    The named Plaintiff is willing and able to represent the Class fairly and vigorously as they pursue their common goal through this civil action.

74.    The named Plaintiff has also retained legal counsel experienced in litigating major class actions, including those in the field of consumer law, and who are prepared and able to meet the time and fiscal demands of class action litigation of this size and complexity. The combined interest, experience and resources of the named Plaintiff and her counsel to litigate competently the Class claims satisfy the requirements of Fed. R. Civ. P. 23(a)(4).

F.    **CERTIFICATION SOUGHT PURSUANT TO FED. RIV. P. 23(b)(3)**

75.    As alleged above in Paragraphs 67 - 70, which are incorporated by reference herein, questions of law and fact common to the Class members predominate over any questions affecting only individual members.

76.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Most individual Class members have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation, the significant costs attendant to litigation on this scale, and the comparatively small, although legally significant, statutory damages to which each Class member is entitled. Absent a class action, Defendants' violations of the FCRA will continue without remedy.

77.    This action will result in an orderly and expeditious administration of Class claims. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

78.    This action presents no difficulty that would impede its management by the Court as a class action. When liability of Defendants has been adjudicated, the damages of each class member can be administratively determined. A class action is superior to other available methods for the fair and efficient adjudication of each class member's claim.

### G.    CERTIFICATION SOUGHT PURSUANT TO FED. R. CIV. P. 23(c)(4)

79.    Under Fed. R. Civ. P. 23(c)(4), an action may be brought or maintained as a class action with respect to particular issues.

80.    Plaintiff seeks class certification pursuant to Fed. R. Civ. P. 23(c)(4) on the following issues: 1) whether Defendants violated the FCRA and specifically, the provisions of 15 U.S.C. § 1681g; 2) whether Defendants refused or failed to provide all information in the consumer's file at the time of the request in violation of 15 U.S.C. § 1681g(a)(1); 3) whether Defendants refused or failed to provide the sources of the information in the consumer's file at the time of the request in violation of 15 U.S.C. § 1681g(a)(2); 4) whether Defendants refused or failed to identify each person (or trade name if applicable) that procured a consumer report

regarding the consumer from Defendants during the one-year period preceding the date on which the consumer's request was made in violation of 15 U.S.C. § 1681g(a)(3); 5) whether Defendants' SCAN Report or similar report provided to consumers violate the FCRA; and 6) whether Defendants' noncompliance is a willful violation of the FCRA.

### H.    <u>**WILLFUL VIOLATION OF THE FCRA**</u>

81.    Plaintiff and the Class she seeks to represent are "consumers" under the FCRA.

82.    Defendants are "consumer reporting agencies" under the FCRA.

83.    In addition to or in the alternative, Defendants are "nationwide specialty consumer reporting agencies" under the FCRA.

84.    As consumer reporting agencies, Defendants are bound by the requirements of the FCRA, 15 U.S.C. § 1681 *et seq.*

85.    Defendants provide check verification services to its "members," which are businesses, merchants and retailers.

86.    As part of their business operations, Defendants provide bad check lists to businesses, both through their SCAN and SCAN Online products.

87.    When a "member" business or merchant processes a consumer's check through Defendants' records, files, systems or databases, including SCAN and SCAN Online, Defendants provide a consumer report as defined by the FCRA.

88.    By providing information to a merchant regarding a bad, dishonored or returned check, Defendants are providing a consumer report to the merchant. Conversely, by providing information to the merchant advising the merchant that the consumer has no record of a bad, dishonored or returned check, Defendants are also providing consumer reports to merchants.

89.     When a "member" business, merchant or retailer processes a consumer's check through Defendants' records, files, systems and databases, including SCAN and SCAN Online, the "member" business, merchant or retailer procures a consumer report from Defendants.

90.     As consumer reporting agencies, Defendants are required to provide disclosures to consumers, upon request, which comply with the FCRA, including 15 U.S.C. § 1681g.

91.     After Plaintiff and the Class she seeks to represent requested consumer disclosures under the FCRA, Defendants refused to comply with the provisions of 15 U.S.C. § 1681g.  Specifically, Defendants refused to provide:  1) all information in the consumer's file at the time of the request required by 15 U.S.C. § 1681g(a)(1); 2) the sources of the information in the consumer's file required by 15 U.S.C. § 1681g(a)(2); and 3) the names of the persons (or trade names of the persons, if applicable) who procured consumer reports from Defendants regarding the Plaintiffs and Class Members during the one-year period preceding the consumer's request for a disclosure as required by 15 U.S.C. § 1681g(a)(3).

92.     The aforementioned violations of the FCRA are continuing in each and every consumer disclosure provided by Defendants to consumers.

93.     Plaintiff and the Class she seeks to represent were and continue to be subjected to Defendants' systematic and uniform policies, practices, and procedures which violate the FCRA.

94.     Defendants have and continue to violate the FCRA, including the provision contained in 15 U.S.C. § 1681g, *et seq.*

95.     Defendants' violation of the FCRA is willful.  Despite having information in its systems, databases and files regarding Plaintiff and the Class she represents, as well as merchants who requested consumer reports from Defendants, Defendants routinely refuse to provide this information to Plaintiff and the Class she seeks to represent.

19

96.    Defendants' refusal to provide accurate and complete consumer disclosures to consumers is in contravention of the plain and unambiguous language of the FCRA, constituting a willful violation.

97.    As a result of Defendants' willful violations of the FCRA, Plaintiff and the Class she seeks to represent are entitled to statutory damages, punitive damages, attorneys' fees, costs and expenses.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and the Class members whom she seeks to represent, request the following relief:

a.    Acceptance of jurisdiction of this cause;

b.    Certification of the case as a class action maintained under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3);

c.    In addition to or in the alternative, certification of the case as a class action maintained under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(c)(4);

d.    Designation of the Plaintiff, as representative of the Class, and her counsel of record as Class counsel;

e.    A determination that Plaintiff and the Class members' rights under the Fair Credit Reporting Act were violated by Defendants;

f.    A determination that Defendants' violations of the Fair Credit Reporting Act were willful;

g.    An award of statutory damages for Defendants' willful violations of the Fair Credit Reporting Act;

h.    An award of punitive damages for Defendants' willful violations of the Fair

Credit Reporting Act;

i.    An award of prejudgment interest for Defendants' willful violations of the Fair

Credit Reporting Act;

j.    An award of litigation, costs and expenses, including reasonable attorneys' fees to

the Plaintiff and to the members of the Class;

k.    Such other and further relief as the Court may deem just and proper.

Respectfully submitted,
**PRETZEL & STOUFFER, CHARTERED,**


By: s/Edward H. Nielsen
　　**Edward H. Nielsen (IL Bar # 0252296)**
　　**Scott L. Anderson (IL Bar # 6269332)**
　　One South Wacker Drive
　　Suite 2500
　　Chicago, IL 60606
　　(312) 346-1973

*Co-Counsel for the Plaintiff*


Respectfully submitted,
**STEWART, ESTES & DONNELL, PLC**


By: _____
　　**M. Reid Estes, Jr., TN Bar #9043**
　　**Martin D. Holmes, TN Bar #12122**
　　Fifth Third Center, Suite 1401
　　424 Church Street
　　Nashville, TN 37219
　　(615) 244-6538

*Lead Attorneys for Plaintiff*
*Applications for Leave to Appear Pro Hac
　Vice are pending.

*Gladys Searcy vs eFunds Corporation, et. al.*
*Exhibits to Complaint at Law*

# Exhibit 1

Document dated September 15, 2005 and titled

"A Summary of Your Rights Under
the Fair Credit Reporting Act"

**Edward H. Nielsen (IL Bar # 0252296)**
**Scott L. Anderson (IL Bar # 6269332)**
Pretzel & Stouffer, Chartered
One South Wacker Drive
Suite 2500
Chicago, IL 60606
(312) 346-1973

*Co-Counsel for the Plaintiff*

Deposit Payment Protection Services, Inc.
7805 Hudson Rd, Suite 100
Woodbury MN 55125

September 15, 2005                                    PRIVATE AND CONFIDENTIAL

GLADYS J. SEARCY
9163 S CLAREMONT AVE
CHICAGO IL 60620
Re: Your inquiry of September 14, 2005

Dear Gladys Searcy:

The enclosed SCAN Report contains the information which you requested.

If you have any questions or concerns with respect to this information,
please contact SCAN Consumer Referral Services at 1-800-358-4508.

SCAN provides information about checks returned by financial institutions
and other account information which retailers and other businesses use to
reduce their returned check losses and to improve their customer service.

Sincerely,

SCAN Consumer Referral Services
Deposit Payment Protection Services, Inc.

Enclosure:  SCAN Report

Please include this number in all correspondence: 32-411415864-4774337

CONFIDENTIAL -- for the use of:

Gladys J. Searcy                         SCAN CONSUMER FILE DISCLOSURE REPORT
9163 S Claremont Ave

This report was prepared September 15, 2005 at 08:22 a.m. Pacific time.
This information has been prepared by the Deposit Payment Protection Services,
Inc. (formerly known as Deluxe Payment Protection Systems) offices. Retailers
and other businesses that subscribe to SCAN may require approximately two
business days to update the SCAN database for any recent changes to your file.

Should you have questions regarding this information, please call (800)358-4508 or
write to 7805 Hudson Rd, Suite 100 ,Woodbury  MN  55125 and refer to your SCAN
Reference Number: 411415864.

===================================== IDENTIFICATION =====================================

This report is based upon the following identification information you have
provided to SCAN:

        Bank/Financial Institution Account Number: ███████████04
        Bank/Financial Institution Account Number: ███████████89
        Bank/Financial Institution Account Number: ███████████03
        Driver's License/ID Number:  IL ████████88
===================================== REPORTING SOURCE/PAYEE CONTACT INFORMATION =====================================

===================================== CONSUMER STATEMENT INFORMATION =====================================

Please include this number in all correspondence: 32-411415864-4774337.
Page 1



*Para informacion en espanol, visite www.ftc.gov/credit o escribe a la FTC Consumer Response Center, Room 130-A 600 Pennsylvania Ave. N.W., Washington D.C. 20580.*

## A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to www.ftc.gov/credit or write to: Consumer Response Center, Room 130-A, Federal Trade Commission, 600 Pennsylvania Ave. N.W., Washington, D.C. 20580.**

- **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.

- **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to free file disclosure if:
  - a person has taken adverse action against you because of information in your credit report;
  - you are the victim of identify theft and place a fraud alert in your file;
  - your file contains inaccurate information as a result of fraud;
  - you are on public assistance;
  - you are unemployed but expect to apply for employment within 60 days.

In addition, by September 2005 all consumers will be entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.ftc.gov/credit for additional information.

**You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

- **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.ftc.gov/credit for an explanation of dispute procedures.

- **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

- **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

- **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need – usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

- **You must give your consent for reports to be provided to employers.** A consumer reporting agency may give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.ftc.gov/credit.

- **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-5-OPTOUT (1-888-567-8688).

- **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

- **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.ftc.gov/credit.

**States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. Federal enforcers are:**

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| Consumer reporting agencies, creditors and others not listed below | Federal Trade Commission: Consumer Response Center - FCRA<br>Washington, DC 20580                                    1-877-382-4357 |
| National banks, federal branches/agencies of foreign banks word "National" or initials "N.A." appear in or after bank's name) | Office of the Comptroller of the Currency<br>Compliance Management, Mail Stop 6-6<br>Washington, DC 20219                                    800-613-6743 |
| Federal Reserve System member banks (except national Banks, and federal branches/agencies of foreign banks) | Federal Reserve Board<br>Division of Consumer & Community Affairs<br>Washington, DC 20551                                    202-452-3693 |
| Savings associations and federally chartered savings banks (word "Federal" or initials "F.S.B." appear in federal institution's name) | Office of Thrift Supervision<br>Consumer Complaints<br>Washington, DC 20552                                    800-842-6929 |
| Federal credit unions (words "Federal Credit Union" appear in institution's name) | National Credit Union Administration<br>1775 Duke Street<br>Alexandria, VA 22314                                    703-519-4600 |
| State-chartered banks that are not members of the Federal Reserve System | Federal Deposit Insurance Corporation<br>Consumer Response Center, 2345 Grand Avenue, Suite 100<br>Kansas City, Missouri 64108-2638                    1-877-275-3342 |
| Air, surface, or rail common carriers regulated by former Civil Aeronautics Board or Interstate Commerce Commission | Department of Transportation, Office of Financial Management<br>Washington, DC 20590                                    202-366-1306 |
| Activities subject to the Packers and Stockyards Act, 1921 | Department of Agriculture<br>Office of Deputy Administrator - GIPSA<br>Washington, DC 20250                                    202-720-7051 |

*Gladys Searcy vs eFunds Corporation, et. al.*
*Exhibits to Complaint at Law*

# Exhibit 2

## Document dated October 12, 2006 and titled

## "Frequently Asked Questions"

**Edward H. Nielsen (IL Bar # 0252296)**
**Scott L. Anderson (IL Bar # 6269332)**
Pretzel & Stouffer, Chartered
One South Wacker Drive
Suite 2500
Chicago, IL 60606
(312) 346-1973

*Co-Counsel for the Plaintiff*

Deposit Payment Protection Services, Inc.
7805 Hudson Rd, Suite 100
Woodbury  MN  55125

October 12, 2006                                    PRIVATE AND CONFIDENTIAL
                                                   ---------------------------

     GLADYS J. SEARCY
     9163 S CLAREMONT AVE
     CHICAGO IL 60620
Re: Your inquiry of October 10, 2006

Dear Gladys Searcy:

The enclosed SCAN Report contains the information which you requested.

If you have any questions or concerns with respect to this information,
please contact SCAN Consumer Referral Services at 1-800-368-4508.

SCAN provides information about checks returned by financial institutions
and other account information which retailers and other businesses use to
reduce their returned check losses and to improve their customer service.

Sincerely,

SCAN Consumer Referral Services
Deposit Payment Protection Services, Inc.


Enclosure:  SCAN Report


Please include this number in all correspondence: 32-411415864-4857384

CONFIDENTIAL -- for the use of:

Gladys J. Searcy                          SCAN CONSUMER FILE DISCLOSURE REPORT
9163 S Claremont Ave

This report was prepared October 12, 2006 at 07:31 a.m. Pacific time.
This information has been prepared by the Deposit Payment Protection Services,
Inc. (formerly known as Deluxe Payment Protection Systems) offices. Retailers
and other businesses that subscribe to SCAN may require approximately two
business days to update the SCAN database for any recent changes to your file.

Should you have questions regarding this information, please call (800)358-4508 or
write to 7805 Hudson Rd, Suite 100 ,Woodbury MN 55125 and refer to your SCAN
Reference Number: 411415864.

To resolve individual items with a 'RETURNED' status, please contact the Reporting
Source/Payee. REPORTING SOURCE/PAYEE CONTACT INFORMATION can be found following th
FILE INFORMATION section. A brief definition of the terms used in the *STATUS*
column can be found at the end of this report.

========================= IDENTIFICATION =============================

This report is based upon the following identification information you have
provided to SCAN:

        Bank/Financial Institution Account Number: ███████████04
        Bank/Financial Institution Account Number: ███████████89
        Bank/Financial Institution Account Number: ███████████03
        Driver's License/ID Number:  IL ██████████88
------------------------------- FILE INFORMATION =====================

This section contains check information furnished to SCAN by the Reporting Sources
identified below:

------------------------------------------------------------------------

Driver's License/ID Number:  IL ██████████88

REPORTING SOURCE/PAYEE      STORE#   CHECK DATE   CHECK#   CHECK AMT   STATUS
-------------------------   ------   ----------   ------   ---------   ----------------
Chexsystems                          02/01/2006              $0.00    CLEARED 02/06/2006

--------------------------------------------------------------------------

Driver's License/ID Number:  IL ██████████88

REPORTING SOURCE/PAYEE      STORE#   CHECK DATE   CHECK#   CHECK AMT   STATUS
-------------------------   ------   ----------   ------   ---------   ----------------
Chexsystems                          02/01/2006              $0.00    CLEARED 02/06/2006


=========================================================================


----------------------------------------------------------------------

Please include this number in all correspondence: 32-411415864-4657384.
Page 1

```
Chexsystems                    STORE #   606
(800) 513-7125             MON-FRI 8AM-6:30PM CST
```

====================== CONSUMER STATEMENT INFORMATION ======================

================================================================================

THE FOLLOWING ARE BRIEF DEFINITIONS OF THE TERMS USED IN THE *STATUS* COLUMN:

RETURNED:        Refers to a returned check and certain collection accounts report
                 to SCAN by retailers and other businesses.
ACCOUNT CLOSED:  Refers to an account number reported to SCAN as a closed account.
CLEARED:         For items listed as Account Closed, a 'cleared' status means the
                 account status has been changed to reflect that the account has
                 been re-opened.
CLEARED:         For items not listed as Account Closed, a 'cleared' status means
                 that the item has been paid or otherwise resolved.
DISPUTED:        Refers to items that have been disputed at SCAN by the consumer.

================================================================================

------------------------------------------------------------------------------
Please include this number in all correspondence: 32-411415864-4857384.
Page 2



**Frequently Asked Questions**
**What is SCAN℠?**
SCAN℠, the Shared Check Authorization Network (SCAN℠), a service provided by Deposit Payment Protection Systems, Inc. (DPPS) is a database of information that SCAN℠ Members use to help make check acceptance decisions or account opening decisions. This information helps retailers and other subscribers reduce their returned check losses and improve customer service. SCAN℠ can describe any check information that has been reported to the SCAN℠ database for your bank accounts and identification numbers.

**Note:** *SCAN℠ does not make the decision to accept or decline your check and does not know the specific reason for an individual SCAN℠ Member's decision.*

**Is SCAN℠ a credit bureau?**
No. SCAN℠ is a Consumer Reporting Agency governed by the federal Fair Credit Reporting Act (FCRA) and other laws.

**How long does returned check information stay on file? How do I get it deleted?**
Each returned check record submitted to SCAN℠ by a Member may remain on the SCAN℠ database until the reporting Member indicates that the returned check is paid or otherwise resolved. When a checking account number is reported to SCAN℠ as "CLOSED", it will remain flagged as a closed account until SCAN℠ is informed of a change in status by the bank. Information reported to SCAN℠ may remain on the SCAN℠ database for up to seven years, or as otherwise limited by law. In the case of a dispute regarding the accuracy or completeness of the information, SCAN℠ may remove data sooner according to applicable law. The decision to delete a record may be made by SCAN℠ or the Member who reported the data, depending on the circumstances.

**I paid the retailer for the returned item. When will this record be removed from the SCAN℠ database?**
The status of the record is typically changed to "cleared" on the SCAN database immediately upon notice of payment or resolution from a Member. Once SCAN has received a payment or resolution notice from the Member and "cleared" the item, you should allow up to two additional business days for all Members to update their databases.

**How do I dispute inaccurate or incomplete information?**
You may submit your dispute by mail to:
SCAN℠
Attn: Research and Resolution
7805 Hudson Road, Suite 100
Woodbury, MN 55125

Or by fax to:
SCAN℠
Attn: Research and Resolution
800-358-4506

**Why do I have to give you personal information, like my checking account number and drivers license number?**
The SCAN℠ database is an encrypted file, which uses driver's license and checking account numbers. We ask for this information to ensure that we make a thorough and accurate search and are able to identify all information that may pertain to you.

**Why did you tell a store not to accept my check?**
SCAN℠ did not make the decision to accept or decline your check and cannot provide the specific reasons for a retailer's decision. Retailers and other subscribers make check acceptance decisions based on a variety of criteria, sometimes including information other than the SCAN℠ database. This can include information on the Retailers own files or other databases and/or procedures they may use. For these reasons, SCAN℠ cannot tell you why a SCAN℠ Member decided not to accept your check or to open an account for you. SCAN℠ can provide you with the information on the SCAN℠ database, which the SCAN℠ Member may consider in its decision.

**Why can't I get a copy of my spouse's report?**
We are required by law to deal directly with the individual to whom the information pertains. We strictly adhere to this to protect consumer privacy. To discuss the information with anyone else, we must receive a notarized Power of Attorney or specific written instructions signed by the consumer whose information is being requested, authorizing us to disclose information to the person named in the Power of Attorney.

**If I have an unpaid check or other outstanding debt, do I pay SCAN^SM or the store?**

No, if your SCAN^SM report contains a record of an outstanding debt, you should contact the reporting Member to discuss the situation. If you contact SCAN^SM, you will be provided with contact information for the reporting SCAN^SM Member.

**What if I still have questions?**

You may contact our Consumer Referral Services department toll free at 1-877-382-7226 from 7:00am to 12:00 AM Central Time. Consumer Referral Services can assist you with any additional questions you may have. When contacting SCAN^SM by telephone, please be prepared to supply your SCAN^SM reference number. If you do not have your reference number available, please have your Driver's License number, a check from your account (preferably the specific check that was declined), and a pen or pencil and paper available.

**SCAN^SM Notice to Consumers**

In addition to the information listed on the above and on the reverse side, the following may also apply to you. If you need further assistance in understanding your SCAN^SM consumer report, you may call 877-382-7226. In most circumstances, SCAN^SM does not currently require a consumer to pay a fee to obtain a consumer report.

**California:** Under California Civil Code, Consumer Credit Reporting Agencies Act, Section 1785.19, you have the right to bring civil action against anyone who improperly obtains access to a file or knowingly or willfully misuses file data.

**Colorado:** You may call our toll-free number and speak directly to a SCAN^SM representative to notify us of disputed information contained in your file. After following all dispute procedures, you may have the right to dispute resolution under the Colorado Consumer Credit Reporting Act, Section 12-14.3-107, Consumers right to file action in court or arbitrate disputes.

**Connecticut:** Under Connecticut law, if after a reinvestigation you are not satisfied with your consumer report, you may contact the Connecticut Department of Banking. You have the right to bring civil action against anyone who knowingly or willfully misuses file data or improperly obtains access to your file.

**Maryland:** You have the right submit complaints to the Commissioner of Banking and Consumer Credit, Commissioner Robert Hergenroeder, 500 Calver St., Baltimore, MD 21202 or call (888) 784-0136. The reverse side explains your rights with regard to the services provided by SCAN^SM under Maryland Commercial Law, Subtitle 12, Consumer Reporting Agencies.

**Massachusetts:** Under Massachusetts law, we must provide someone to help you interpret the information in your file. We must modify or remove inaccurate information after reinvestigation of your dispute. We may not charge a fee for this service. Any pertinent information and copies of all documents you have concerning a dispute should be provided to us. You may be entitled to collect compensation, in certain circumstances, if you are damaged by a person's negligent or intentional failure to comply with the provisions of the credit reporting act.

**Texas:** After you have followed the dispute procedures and have received the results of a reinvestigation, you may be entitled to dispute resolution under Title 2, Business & Commerce Code, Chapter 20, Regulation of Consumer Credit Reporting Agencies, Section 20.08, Consumer's Right To File Action In Court Or Arbitrate Disputes.

**Washington:** In accordance with Washington statute (Title 19 RCW, Chapter 182), the information on the reverse side explains your rights with regard to the services provided by SCAN^SM. The agency responsible for the enforcement of this statute is: Attorney General of Washington, 2000 Bank of California Center, 900 4th Avenue, Seattle, WA 98164-1012. Statewide toll-free number: (800) 551-4636.

**Maine:** Under Maine law, a consumer reporting agency must verify or remove disputed information within 21 days from the date the dispute was received.