**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **GLADYS SEARCY,** | ) | |
| **individually and on behalf of all** | ) | |
| **others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 08-C-985** |
| | ) | |
| **v.** | ) | **JUDGE KOCORAS** |
| | ) | **MAGISTRATE JUDGE COX** |
| **eFUNDS CORPORATION, d/b/a** | ) | |
| **DEPOSIT PAYMENT PROTECTION** | ) | |
| **SERVICES, INC., and DEPOSIT** | ) | |
| **PAYMENT PROTECTION SERVICES,** | ) | |
| **INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES**</u>

Defendants eFunds Corporation and Deposit Payment Projection Services, Inc.

(collectively, "Defendants") as and for their answer to the Complaint, herein state as follows:

1.      This action is brought by Plaintiff against Defendants eFunds Corporation, d/b/a Deposit Payment Protection Services, Inc., and Deposit Payment Protection Services, Inc. ("DPPS") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). Plaintiff brings this action on behalf of herself and other similarly-situated persons as defined below (referred to as the "Class") to redress Defendants' past, present and continuing violations of the FCRA, including but not limited to the provisions contained in 15 U.S.C. § 1681g.

**ANSWER:**     Defendants deny Plaintiff's allegation that they violated, and continue to

violate, the FCRA.

2.      Defendants have violated, and continue to violate, the FCRA by refusing or failing to provide consumers with disclosures that comply with 15 U.S.C. § 1681g. In particular, after a consumer has requested a disclosure pursuant to 15 U.S.C. § 1681g, Defendants do not provide: 1) all information in the consumer's file at the time of the request as required by 15 U.S.C. § 1681g(a)(1); 2) the sources of the information in the consumer's file as required by 15 U.S.C. § 1681g(a)(2); and/or 3) the names of the persons (or trade names of the persons, if applicable) who procured consumer reports from Defendants regarding the consumer during the one-year period preceding the consumer's request for a disclosure as required by 15 U.S.C. § 1681 g(a)(3).

**ANSWER:**     Defendants deny the allegations contained in Paragraph 2.

3.     Plaintiff, individually and on behalf of the Class she seeks to represent, alleges that Defendants willfully violated, and continue to willfully violate, the FCRA.

**ANSWER:**     Defendants deny Plaintiff's allegation that they willfully violated, and continue to willfully violate, the FCRA.

4.     Plaintiff sues on behalf of herself and the Class she seeks to represent pursuant to Fed. R. Civ. P. 23(a) and one or both of the following Federal Rules of Civil Procedure: 23(b)(3) and/or 23(c)(4).

**ANSWER:**     Defendants deny that Plaintiff's claims should be certified as a class action.

5.     Plaintiff, individually and on behalf of the Class she seeks to represent, seeks statutory damages under 15 U.S.C. §1681n of not less than $100 and not more than $1,000 for each willful violation of the FCRA committed by Defendants against Plaintiff and the Class she seeks to represent during the liability period.  Plaintiff, individually and on behalf of the Class she seeks to represent, does not seek actual damages or compensatory damages.

**ANSWER:**     Defendants deny that they have violated the FCRA and that Plaintiff and the Class she seeks to represent are entitled to statutory damages.  Defendants admit the remaining allegations contained in paragraph 5.

## II.  JURISDICTION AND VENUE

6.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

**ANSWER:**     Defendants admit the allegations contained in Paragraph 6.

7.     Pursuant to 28 U.S.C.§1391(c), venue is proper in this Court in the Northern District of Illinois because Defendants are doing business in the State of Illinois and a substantial portion of the conduct giving rise to this action occurred in the Northern District of Illinois.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 7.

### III.    PARTIES

8.    Plaintiff Gladys Searcy ("Searcy") is a resident and citizen of Chicago, Illinois. Searcy is a "consumer" as defined under the FCRA, 15 U.S.C. § 1681a(c). Searcy is representative of the Class.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in the first two sentences of Paragraph 8, and,

on that basis, deny such allegations.    Defendants deny the allegation contained in the last

sentence of Paragraph 8.

9.    Defendant eFunds Corporation ("eFunds" or "EFD") is a Delaware corporation, doing business in the State of Illinois. In its SEC filings, eFunds states that its principal place of business is in Scottsdale, Arizona.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 9.

10.    eFunds does business as Deposit Payment Protections Services, Inc. ("DPPS").  In its SEC filings, eFunds identifies DPPS as its wholly-owned subsidiary.

**ANSWER:**    Defendants admit that eFunds identifies DPPS as its wholly-owned

subsidiary.  Defendants deny the remaining allegations contained in Paragraph 10.

11.    eFunds, individually and doing business as DPPS, is a "consumer reporting agency" as defined by the FCRA. In addition or in the alternative, eFunds, individually and doing business as DPPS, is a "nationwide specialty consumer reporting agency" as defined by the FCRA.

**ANSWER:**    Defendants admit that DPPS, with respect to certain business segments, is

a "nationwide specialty consumer reporting agency" as defined by the FCRA.  Defendants deny

the remaining allegations contained in Paragraph 11.

12.    Defendant DPPS is a foreign corporation doing business in Illinois. DPPS is registered with the Illinois Secretary of State as a Delaware corporation with its principal place of business in Scottsdale, Arizona.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 12.

13.    DPPS is a "consumer reporting agency" as defined by the FCRA.  In addition or in the alternative, DPPS is a "nationwide specialty consumer reporting agency" as defined by the FCRA.

**ANSWER:**    Defendants admit that DPPS, with respect to certain business segments, is

a "nationwide specialty consumer reporting agency" as defined by the FCRA.  Defendants deny

the remaining allegations contained in Paragraph 13.

14.    eFunds and DPPS are subject to personal jurisdiction in the State of Illinois for purposes of this lawsuit.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 14.

### IV.    PROVISIONS OF THE FAIR CREDIT REPORTING ACT

15.    Under the FCRA, a "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

**ANSWER:**    The allegation contained in Paragraph 15 is a legal contention that requires

no response from Defendants.

16.    Under the FCRA, a "nationwide specialty consumer reporting agency" is defined as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, including those that relate to check writing history

**ANSWER:**    The allegation contained in Paragraph 16 is a legal contention that requires

no response from Defendants.

17.    Under the FCRA, a "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for: a) credit or insurance to be used primarily for personal, family, or household purposes; b) employment purposes; or c) any other purpose authorized under 15 U.S.C. § 1681b.  Under 15 U.S.C. § 1681b, one of the "authorized purposes" listed is in connection with a business transaction initiated by the consumer.

**ANSWER:**    The allegation contained in Paragraph 17 is a legal contention that requires no response from Defendants.

18.    Under the FCRA, a "file" is defined as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

**ANSWER:**    The allegation contained in Paragraph 18 is a legal contention that requires no response from Defendants.

19.    Under the FCRA, consumers have the right to obtain a disclosure from a consumer reporting agency at any time. If a consumer requests a disclosure from a consumer reporting agency, the consumer reporting agency is required to provide the following: a) all information in the consumer's file at the time of the request (15 U.S.C. § 1681g(a)(1)); b) the sources of the information in the consumer's file (15 U.S.C. § 1681g(a)(2)); and c) the name of the persons, or trade names of the persons if applicable, who procured a consumer report from the consumer reporting agency during the one-year period preceding the consumer's request for a disclosure (15 U.S.C. § 1681g(a)(3)).

**ANSWER:**    The allegation contained in Paragraph 19 is a legal contention that requires no response from Defendants.

## V.    NATURE OF DEFENDANTS' BUSINESS

20.    Throughout the country, including the Northern District of Illinois and the State of Illinois, a large percentage of businesses, including merchants, accept checks from consumers as a method of payment for goods and services. The business transactions are initiated by the consumers who wish to purchase goods or services from said business or merchant (hereinafter Plaintiff refers to "businesses" and "merchants" interchangeably).

**ANSWER:**    Defendants admit the allegations contained in Paragraph 20.

21.    Businesses and merchants desire to accept checks as a method of payment for goods and services, yet also want to minimize the potential risk of a receiving a "bad check," such as one that would be returned as an unpaid or dishonored item due to non-sufficient funds or being written on a closed account.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 21.

22.    eFunds engages in the payment processing business and one of its business lines is risk management.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 22.

23.    eFunds does business as Deposit Payment Protection Services, Inc. ("DPPS").

**ANSWER:**    Defendants deny the allegations contained in Paragraph 23.

24.    eFunds' risk management segment, including DPPS, derives its revenues from providing data-based risk management products to retailers, merchants and other businesses. These risk management products include those that Defendants claim can assess the potential risk associated with accepting a consumer's check as payment at the point of sale by a business, merchant, or retailer.

**ANSWER:**    Defendants deny that eFunds derives its revenues from the products set forth in Paragraph 24. Defendants admit the remaining allegations contained in Paragraph 24.

25.    Defendant DPPS engages in the payment processing business and risk management.

**ANSWER:**    Defendants deny that DPPS engages in the payment processing business, but admit that it engages in risk management.

26.    DPPS derives its revenues from providing data-based risk management products to retailers, merchants and other businesses. These risk management products include those that Defendants claim can assess the potential risk associated with accepting a consumer's check as payment at the point of sale by a business, merchant, or retailer.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 26.

27.    Defendants share common databases, which include information and other data in databases referred to as "ChexSystems" and "SCAN." SCAN is the acronym for Shared Check Authorization Network. Defendants share data and information from other sources as well.

**ANSWER:**    Defendants deny the allegations contained in the first sentence of Paragraph 27. Defendants admit the allegations contained in the second sentence of Paragraph 27. Defendants deny the remaining allegations of Paragraph 27.

28.    SCAN is a service mark of Defendants.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 28.

29.    SCAN Online is a service mark of Defendants.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 29.

30.    Defendants claim that their SCAN and SCAN Online products or services, which provide check verification, can help businesses, merchants and retailers to reduce the risk of write-offs for bad checks, such as those that are dishonored and/or written on bad or fraudulent accounts.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 30.

31.    Upon information, businesses, merchants and retailers throughout the country contract with Defendants to become "members" of SCAN, the Shared Check Authorization Network. These businesses, merchants and retailers include those in the Northern District of Illinois area and the State of Illinois.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 31.

32.    According to eFunds' SEC filings, as of December 31, 2006, nine of the twenty largest retailers in the United States use Defendants' SCAN check verification service.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 32.

33.    Defendants offer at least two product lines related to check verification – SCAN and SCAN Online. Both product lines provide Defendants' customers with daily bad check lists.

**ANSWER:**    Defendants admit the allegations contained in the first sentence of

Paragraph 33.  Defendants deny the remaining allegations contained in Paragraph 33.

34.    According to Defendants' website, EFD SCAN "is a low cost, effective method to verify checks at the point-of-sale (POS) and improve collections of returned checks. On a daily basis, members contribute information about returned checks to us. We then merge all of this information and provide a daily file update of returned check activity to our membership. The member uses this information to verify whether to accept or decline check writers at the point-of-sale."

**ANSWER:**    Defendants admit that the eFunds website currently contains the quoted

language contained in Paragraph 34.

35.    According to Defendants' website, EFD SCAN provides businesses "with basic protection against bad check writers through a file of known bad check writers. This prevents you [a business contracting with Defendants] from accepting a check from a consumer who currently has an unpaid returned check owed to any member of the EFD SCANS$^{SM}$ network. EFD SCAN also provides referral value to the member who contributes the check to the network. Referral value occurs when a consumer is turned down at one retailer because of a bad check that is owed to another retailer. That consumer is referred to the retailer to whom they wrote the bad check and they must pay that check to get off the network and have their check writing privileges restored."

**ANSWER:**    Defendants admit that the eFunds website currently contains the quoted language contained in Paragraph 35.

36.    Defendants also offer the product SCAN Online. In addition to providing information regarding known bad check writers and information regarding unpaid returned checks, SCAN Online also provides risk management to the merchant by purporting to utilize variables and other analytical tools to assist the merchant in its decisionmaking and authorization of checks. For businesses using SCAN Online, Defendants generally provide a response to approve or decline a check.

**ANSWER:**    Defendants admit the allegations contained in the first two sentences of Paragraph 36.  Defendants deny the remaining allegations contained in Paragraph 36.

37.    Based on information contained in eFunds' SEC filings, businesses and merchants that host the SCAN database typically pay a monthly service fee for Defendants' SCAN product based on the businesses' or merchants' net monthly check sales.  If the merchant or business uses certain online products, such as SCAN Online, they are billed by the number of transactions processed through Defendants' system by the merchant or business. Additional fees are also assessed by Defendants for calls placed by the retailers or consumers to Defendants' call centers.

**ANSWER:**    Defendants admit the allegations contained in the first sentence of Paragraph 37.  Defendants deny the remaining allegations contained in Paragraph 37.

38.    Procedurally, when a consumer initiates a sales transaction with the SCAN "member" business or merchant and presents a check as a method of payment at the point of sale, the business or merchant processes the check through Defendants' SCAN or SCAN Online databases, and possibly Defendants' other databases as well.  Typically, the merchant or business processes the check by inputting identifiers unique to that consumer, such as driver license and/or bank account number, into a terminal at the point of sale.  Some businesses and merchants have terminals that scan the checks and read these identifiers.  Defendants then generate a report to the business or merchant, advising whether in Defendants' databases and systems the consumer has record of a bad check, such as returned or dishonored item, or the account on which the check is written is reported as closed or in bad standing.

**ANSWER:**    Defendants deny the allegations contained in the first sentence of Paragraph 38.  Defendants admit the allegations contained in the second sentence of Paragraph 38.  Defendants deny the remaining allegations contained in Paragraph 38.

39.    In addition to receiving reports from Defendants, "members" (i.e. businesses and merchants who subscribe to Defendants' services) also furnish information to Defendants. If a "member" receives a bad check from a consumer, such as a check that is returned as unpaid or

dishonored, the "member" reports this information to Defendants, who enter it into their databases and systems.

**ANSWER:**    Defendants deny that merchants that utilize the SCAN product receive reports from Defendants, but otherwise admit the remaining allegations contained in Paragraph 39.

40.    Conceptually, if a "member" processes a check through Defendants' system and receives a report from Defendants that the consumer has written a bad check previously, such as a returned or dishonored item, the "member" will not accept the check as a method of payment. The consumer will be directed to contact Defendants, who provide the consumer with information related to the unpaid item and/or the "member" who reported this information to Defendants. Conceptually, once the bad check, such as an unpaid or dishonored item, is paid by the consumer, that particular "member" furnishes this information to Defendants, who adjust their systems and databases accordingly. At that point, the consumer is taken off Defendants' bad check list.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 40.

41.    Conversely, if a "member" processes a check through Defendants' system and databases and receives a report from Defendants that the consumer does not have record of a bad check, such as a returned or dishonored item, the "member" will typically accept the consumer's check as a method of payment.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 41.

42.    In its SEC filings, eFunds states that because it collects and discloses transaction data and other personal information about consumers, its risk management businesses are subject to the FCRA and any state laws providing greater consumer protections.

**ANSWER:**    The contents of eFunds' SEC filings are public records, and, therefore, the allegations contained in Paragraph 42 require no response from Defendants.

43.    Defendants collect, gather, store, disseminate and report information to/from businesses and merchants regarding consumers' check writing and bank account histories. Defendants provide this information to businesses and merchants in the form of a consumer report as defined by the FCRA.

**ANSWER:**    Defendants admit the allegations contained in the first sentence of Paragraph 43.  Defendants further admit that certain business segments provide information to

businesses and merchants in the form of a consumer report as defined by the FCRA.  Defendants

deny the remaining allegations contained in Paragraph 43.

44.     By performing the aforementioned risk management services, including the SCAN and SCAN Online services, Defendants are consumer reporting agencies as defined by the FCRA.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 44.

45.     In addition to or in the alternative, by performing the aforementioned risk management services, including the SCAN and SCAN Online services, Defendants are nationwide specialty consumer reporting agencies as defined by the FCRA.

**ANSWER:**     Defendants admit that, with respect to certain business segments, DPPS is

a nationwide specialty consumer reporting agency as defined by the FCRA.  Defendants deny the

remaining allegations contained in Paragraph 45.

46.     In its SEC filings, eFunds admits that, under the FCRA, consumers have the right to know the contents of the records pertaining to them which eFunds maintains at its consumer reporting agencies.  Further in its SEC filings, eFunds admits that, under the FCRA, consumers have the right to challenge the accuracy of that information and to have their information verified, updated or removed if it is incorrect.

**ANSWER:**     The contents of eFunds' SEC filings are public records, and, therefore, the

allegations contained in Paragraph 46 require no response from Defendants.

47.     As consumer reporting agencies, Defendants are required to comply with the FCRA, including provisions contained in 15 U.S.C. §§ 1681g, 1681h and 1681i.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 47.

48.     In addition to or in the alternative, as nationwide specialty consumer reporting agencies, Defendants are required to comply with the FCRA, including provisions contained in 15 U.S.C. §§ 1681g, 1681h and 1681i.

**ANSWER:**     Defendants admit that, to the extent DPPS is a nationwide specialty

consumer reporting agency, it is required to comply with applicable provisions of the FCRA.

Defendants deny the remaining allegations contained in Paragraph 48.

49.     Defendants have created and implemented a uniform policy, practice and procedure for responding to consumers' requests for disclosures and information under the FCRA.

**ANSWER:**     Defendants admit the allegations contained in Paragraph 49.

50.     Defendants operate and maintain an internet website known as www.consumerdebit.com.   On www.consumerdebit.com, Defendants provide a preprinted document called the "SCAN Consumer Report Order Form."

**ANSWER:**     Defendants admit the allegations contained in Paragraph 50.

51.     The purpose of the "SCAN Consumer Report Order Form" is for consumers to obtain disclosures pursuant to the FCRA.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 51.

52.     In addition, Defendants have a policy, practice and procedure of accepting consumer requests for disclosures by telephone, telefax or in writing

**ANSWER:**     Defendants admit the allegations contained in Paragraph 52.

## VI.     FACTS RELATING TO DEFENDANTS' FAIR CREDIT REPORTING ACT VIOLATIONS

53.     Plaintiff Gladys Searcy, along with the Class she seeks to represent, are consumers who have utilized checks as a method of payment for goods and services from businesses, including merchants and retailers.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 53, and, on that basis, deny such

allegations.

54.     In September 2005, Searcy contacted Defendants and requested a consumer disclosure pursuant to the FCRA.  Several days later, Searcy received a document in the mail titled "SCAN CONSUMER FILE DISCLOSURE REPORT" (hereinafter referred to as "SCAN Disclosure Report") dated September 15, 2005.  Accompanying the SCAN Disclosure Report was a cover letter purportedly from DPPS and a document titled "A Summary of Your Rights Under the Fair Credit Reporting Act." (**Exhibit 1**) (personal identifying information redacted).

**ANSWER:**     Defendants deny that Plaintiff's request was "pursuant to the FCRA," but

otherwise admit the remaining allegations contained in Paragraph 54.

55.    In October 2006, Searcy contacted Defendants again and requested a consumer disclosure pursuant to the FCRA.  Several days later, Searcy received a SCAN Disclosure Report dated October 12, 2006. Accompanying the SCAN Disclosure Report was a cover letter purportedly from DPPS and a document titled "Frequently Asked Questions." (**Exhibit 2**) (personal identifying information redacted).

**ANSWER:**    Defendants deny that Plaintiff's request was "pursuant to the FCRA," but otherwise admit the remaining allegations contained in Paragraph 55.

56.    The SCAN Disclosure Reports received by Plaintiff are standardized documents that Defendants routinely provide to consumers when requesting disclosures under the FCRA. Upon information and belief, Defendants have sent identical or virtually identical SCAN Disclosure Reports to the Class that Plaintiff seeks to represent.

**ANSWER:**    Defendants admit that the format of the SCAN Disclosure Reports is standardized.  Defendants deny the remaining allegations contained in Paragraph 56.

57.    Defendants have a uniform policy, practice and procedure for responding to consumers' requests for disclosures under the FCRA. Under Defendants' uniform policy, practice and procedure, Defendants will only provide information in its databases, systems and files regarding current negative items, such as bad checks, dishonored checks and returned checks. Other than information regarding current bad, dishonored and returned checks, Defendants provide no additional information to consumers regarding checks processed through Defendants' systems and databases.

**ANSWER:**    Defendants admit the allegations contained in the first sentence of Paragraph 57.  Defendants deny the remaining allegations contained in Paragraph 57.

58.    Under Defendants' uniform policy, practice and procedure, Defendants do not provide all information in the consumer's file at the time of the request required by 15 U.S.C. § 1681g(a)(1). Upon information and belief, Defendants have additional information in their databases, systems and files regarding Plaintiff and the Class she seeks to represent, but did not and do not provide this information in the SCAN Disclosure Reports.

**ANSWER:**    Defendants deny the allegations contained in the first sentence of Paragraph 58.  Defendants admit that they have additional information in their possession, but deny that such information is required to be provided to consumers under the FCRA.

59.    Further, under Defendants' uniform policy, practice and procedure, Defendants do not provide the sources of the information in the consumer's file pursuant required by 15 U.S.C. § 1681g(a)(2).  Upon information and belief, Defendants have additional information in their

databases, systems and files regarding the sources of information regarding Plaintiff and the Class she seeks to represent, but did not and do not provide this information in the SCAN Disclosure Reports.

      **ANSWER:**    Defendants deny the allegations contained in Paragraph 59.

      60.    Further, under Defendants' uniform policy, practice and procedure, Defendants do not provide the names of the persons (or trade names of the persons, if applicable) who procured consumer reports from Defendants regarding the consumer during the one-year period preceding the consumer's request for a disclosure as required by 15 U.S.C. § 1681g(a)(3). Upon information and belief, Defendants have or should have additional information in their databases, systems and files regarding persons (or trade names of the persons, if applicable) who procured consumer reports from Defendants regarding Plaintiff and the Class she seeks to represent during the one-year period preceding the consumer's request, but did not and do not provide this information in the SCAN Disclosure Reports.

      **ANSWER:**    Defendants deny the allegations contained in Paragraph 60.

## VII.    <u>CLASS WIDE ALLEGATIONS</u>

### A.    <u>CLASS DEFINITIONS</u>

      61.    Plaintiff sues on behalf of herself and on behalf of other persons similarly situated pursuant to Fed. R. Civ. P. 23(a). Plaintiff is a member of the Class she seeks to represent, which consists of all "consumers" as defined under the FCRA in the United States who requested a consumer disclosure from Defendants from June 18, 2005, to the present and continuing, and received a document titled "SCAN CONSUMER FILE DISCLOSURE REPORT" ("SCAN Report") or similar report. Plaintiff may subsequently refine the class definition in light of discovery.

      **ANSWER:**    Defendants deny the allegations contained in paragraph 61 and specifically deny that Plaintiff's claim should be certified as a class action.

      62.    Plaintiff and the Class she seeks to represent relied and rely upon the case of <u>Sammon, et al. Plaintiffs v. eFunds Corporation d/b/a Deposit Payment Protection Corporation, and Deposit Payment Protection Corporation</u>, previously filed on June 18, 2007, in the United States District Court, Middle District of Tennessee, bearing Docket Number 3:07-0656, to toll the applicable statute of limitations in this action.

      **ANSWER:**    Defendants deny the allegations contained in paragraph 62 and specifically deny that the applicable statute of limitations should be tolled.

      63.    Plaintiff and the Class she seeks to represent were provided with consumer disclosures from Defendants that violated the FCRA. Specifically, Plaintiff and the Class she

seeks to represent failed to receive disclosures from Defendants that complied with 15 U.S.C. § 1681g.

     **ANSWER:**    Defendants deny the allegations contained in Paragraph 63.

     64.    Plaintiff and the Class she seeks to represent have been subjected to violations of the FCRA during the applicable liability period from June 18, 2005, to the present, and continuing.

     **ANSWER:**    Defendants deny the allegations contained in Paragraph 64.

### B.    <u>NUMEROSITY AND IMPRACTICABILITY OF JOINDER</u>

     65.    The Class is so numerous that it is impracticable to bring all of its members before the Court. Upon information and belief, Defendants receive hundreds if not thousands of requests for disclosures by consumers pursuant to the FCRA on an annual basis. Thus, the Class of consumers comprises hundreds or thousands of persons. The actual number of Class members who have requested disclosures from Defendants during the applicable liability period from June 18, 2005, to the present, and continuing can be determined from Defendants' records.

     **ANSWER:**    Defendants deny the allegations contained in Paragraph 65.

### C.    <u>COMMON QUESTIONS OR LAW AND FACT</u>

     66.    The prosecution of the claims of the Plaintiff requires adjudication of questions of law and fact common to the putative Class: whether Defendants have engaged in a systematic and uniform policy, practice or procedure in responding to consumer's request for disclosures that violate the FCRA.

     **ANSWER:**    Defendants deny the allegations contained in Paragraph 66.

     67.    The claims of the named Plaintiff and the Class she seeks to represent are embedded in common questions of operative facts and law, which include whether: 1) Defendants are consumer reporting agencies as defined by the FCRA; 2) Defendants are specialty consumer reporting agencies as defined by the FCRA; 3) Defendants provide consumer reports to businesses as defined by the FCRA; 4) Defendants have provided standardized, uniform consumer disclosures which violate the FCRA; 5) Defendants refused or failed to provide all information in the consumer's file at the time of the request; 6) Defendants refused or failed to provide the sources of the information in the consumer's file at the time of the request; 7) Defendants refused or failed to identify each person (or trade name if applicable) that procured a consumer report regarding the consumer from Defendants during the one-year period preceding the date on which the consumer's request was made; 8) Defendants' SCAN Disclosure Report or other reports provided to consumers violate the FCRA; and 9) Defendants' noncompliance was a willful violation of the FCRA.

     **ANSWER:**    Defendants deny the allegations contained in Paragraph 67.

68.    The common questions of fact are that the Plaintiff and the Class they seek to represent all requested a consumer disclosure under the FCRA and were provided a SCAN Report or other uniform and standardized report utilized by Defendants' under their common business policies, practices, and procedures.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 68.

69.    The questions of law and fact common to the class predominate over any questions affecting only individual Class members.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 69.

**D.    TYPICALITY**

70.    The claims of the named Plaintiff are typical of the claims of the members of the Class. The named Plaintiff and all Class members have been and are similarly adversely affected by the systematic and uniform policy, practice and procedures complained of herein. Specifically, the named Plaintiff's claims, like those of the Class members, arise out of Defendants' common business practice or a course of conduct in refusing or failing to provide disclosures to consumers in compliance with the FCRA. Like members of the Class, the named Plaintiff's rights under the FCRA have been violated by Defendants' standard and uniform policies, practices and procedures.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 70.

**E.    ADEQUCY OF REPRESENTATION**

71.    The named Plaintiff will fairly and adequately protect the interest of the Class in so far as her claims are broadly representative of the claims of the Class, as reflected in the preceding paragraphs. The named Plaintiff's interests are co-extensive with those of the Class members in that each would benefit from a determination that Defendants' standard and uniform policies, practices and procedures violate the FCRA and further, that Defendants' conduct was willful. Plaintiff has no interests which are antagonistic or adverse to the interests of other class members.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 71.

72.    Further, the named Plaintiff's interests are co-extensive with those of the Class members in that each would benefit from imposition of a remedy for Defendants' continued, systematic and uniform violation of the FCRA.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 72.

73.    The named Plaintiff is willing and able to represent the Class fairly and vigorously as they pursue their common goal through this civil action.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 73.

74.     The named Plaintiff has also retained legal counsel experienced in litigating major class actions, including those in the field of consumer law, and who are prepared and able to meet the time and fiscal demands of class action litigation of this size and complexity. The combined interest, experience and resources of the named Plaintiff and her counsel to litigate competently the Class claims satisfy the requirements of Fed. R. Civ. P. 23(a)(4).

**ANSWER:**     Defendants deny the allegations contained in Paragraph 74.

## F.     CERTIFICATION SOUGHT PURSUANT TO FED R CIV P 23(b)(3)

75.     As alleged above in Paragraphs 67 - 70, which are incorporated by reference herein, questions of law and fact common to the Class members predominate over any questions affecting only individual members.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 75.

76.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Most individual Class members have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation, the significant costs attendant to litigation on this scale, and the comparatively small, although legally significant, statutory damages to which each Class member is entitled. Absent a class action, Defendants' violations of the FCRA will continue without remedy.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 76.

77.     This action will result in an orderly and expeditious administration of Class claims.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 77.

78.     This action presents no difficulty that would impede its management by the Court as a class action. When liability of Defendants has been adjudicated, the damages of each class member can be administratively determined.   A class action is superior to other available methods for the fair and efficient adjudication of each class member's claim.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 78.

## G.     CERTIFICATION SOUGHT PURSUANT TO FED. R. CIV. P. 23(c)(4)

79.     Under Fed. R. Civ. P. 23(c)(4), an action may be brought or maintained as a class action with respect to particular issues.

**ANSWER:**    The allegation contained in Paragraph 79 is a legal contention that requires no response from Defendants.

80.    Plaintiff seeks class certification pursuant to Fed. R. Civ. P. 23(c)(4) on the following issues:  1) whether Defendants violated the FCRA and specifically, the provisions of 15 U.S.C. § 1681g; 2) whether Defendants refused or failed to provide all information in the consumer's file at the time of the request in violation of 15 U.S.C. § 1681g(a)(1); 3) whether Defendants refused or failed to provide the sources of the information in the consumer's file at the time of the request in violation of 15 U.S.C. § 1681 g(a)(2); 4) whether Defendants refused or failed to identify each person (or trade name if applicable) that procured a consumer report regarding the consumer from Defendants during the one-year period preceding the date on which the consumer's request was made in violation of 15 U.S.C. § 1681g(a)(3); 5) whether Defendants' SCAN Report or similar report provided to consumers violate the FCRA; and 6) whether Defendants' noncompliance is a willful violation of the FCRA.

**ANSWER:**    Defendants deny the allegations contained in paragraph 80 and specifically deny that Plaintiff's claim should be certified as a class action.

## H.    <u>WILLFUL VIOLATION OF THE FCRA</u>

81.    Plaintiff and the Class she seeks to represent are "consumers" under the FCRA.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 81, and, on that basis, deny such allegations.

82.    Defendants are "consumer reporting agencies" under the FCRA

**ANSWER:**    Defendants deny the allegation contained in Paragraph 82.

83.    In addition to or in the alternative, Defendants are "nationwide specialty consumer reporting agencies" under the FCRA.

**ANSWER:**    Defendants admit that DPPS, with respect to certain business segments, is a nationwide specialty consumer reporting agency under the FCRA.    Defendants deny the remaining allegations contained in Paragraph 83.

84.    As consumer reporting agencies, Defendants are bound by the requirements of the FCRA, 15 U.S.C. § 1681 *et seq.*

**ANSWER:**    Defendants deny the allegations contained in Paragraph 84.

85.    Defendants provide check verification services to its "members," which are businesses, merchants and retailers.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 85.

86.    As part of their business operations, Defendants provide bad check lists to businesses, both through their SCAN and SCAN Online products.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 86.

87.    When a "member" business or merchant processes a consumer's check through Defendants' records, files, systems or databases, including SCAN and SCAN Online, Defendants provide a consumer report as defined by the FCRA.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 87.

88.    By providing information to a merchant regarding a bad, dishonored or returned check, Defendants are providing a consumer report to the merchant. Conversely, by providing information to the merchant advising the merchant that the consumer has no record of a bad, dishonored or returned check, Defendants are also providing consumer reports to merchants.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 88.

89.    When a "member" business, merchant or retailer processes a consumer's check through Defendants' records, files, systems and databases, including SCAN and SCAN Online, the "member" business, merchant or retailer procures a consumer report from Defendants.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 89.

90.    As consumer reporting agencies, Defendants are required to provide disclosures to consumers, upon request, which comply with the FCRA, including 15 U.S.C. § 1681g.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 90.

91.    After Plaintiff and the Class she seeks to represent requested consumer disclosures under the FCRA, Defendants refused to comply with the provisions of 15 U.S.C. § 1681g. Specifically, Defendants refused to provide: 1) all information in the consumer's file at the time of the request required by 15 U.S.C. § 1681g(a)(1); 2) the sources of the information in the consumer's file required by 15 U.S.C. § 1681g(a)(2); and 3) the names of the persons (or trade names of the persons, if applicable) who procured consumer reports from Defendants regarding the Plaintiffs and Class Members during the one-year period preceding the consumer's request for a disclosure as required by 15 U.S.C. § 1681 g(a)(3).

**ANSWER:**    Defendants deny the allegations contained in Paragraph 91.

92.    The aforementioned violations of the FCRA are continuing in each and every consumer disclosure provided by Defendants to consumers.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 92.

93.    Plaintiff and the Class she seeks to represent were and continue to be subjected to Defendants' systematic and uniform policies, practices, and procedures which violate the FCRA.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 93.

94.    Defendants have and continue to violate the FCRA, including the provision contained in 15 U.S.C. § 1681 g, *et seq.*

**ANSWER:**    Defendants deny the allegations contained in Paragraph 94.

95.    Defendants' violation of the FCRA is willful. Despite having information in its systems, databases and files regarding Plaintiff and the Class she represents, as well as merchants who requested consumer reports from Defendants, Defendants routinely refuse to provide this information to Plaintiff and the Class she seeks to represent.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 95.

96.    Defendants' refusal to provide accurate and complete consumer disclosures to consumers is in contravention of the plain and unambiguous language of the FCRA, constituting a willful violation.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 96.

97.    As a result of Defendants' willful violations of the FCRA, Plaintiff and the Class she seeks to represent are entitled to statutory damages, punitive damages, attorneys' fees, costs and expenses.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 97.

<u>**REQUEST FOR RELIEF**</u>

Defendants eFunds Corporation and Deposit Payment Projection Services, Inc. deny that

Plaintiff is entitled to the recovery requested in their prayer for relief or to any recovery from

Defendants.

## <u>AFFIRMATIVE DEFENSES</u>

Without assuming any burden of proof that they might not otherwise bear, Defendants assert the following additional defenses.

1.      Plaintiff has failed to state a claim upon which relief can be granted.

2.      Plaintiff's claims are barred by the applicable statutes of limitations.

3.      Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and laches.

4.      Defendants reserve the right to present additional affirmative defenses as discovery proceeds.

WHEREFORE, eFunds Corporation and Deposit Payment Projection Services, Inc. respectfully request that judgment be entered in their favor and against Plaintiff, be awarded their costs and fees incurred herein, and that the Court grant such further relief as is just, proper and necessary.

## JURY DEMAND

Defendants demand that all claims so triable be heard by a jury.

Respectfully Submitted,

s/ David R. Esquivel
David R. Esquivel (pro hac vice)
Jeffrey P. Yarbro (pro hac vice)
BASS, BERRY & SIMS PLC
315 Deaderick Street, Suite 2700
Nashville, TN  37238-3001
Phone:  615-742-6200
Fax:      615-742-0405

David L. Hartsell
MCGUIREWOODS LLP
77 West Wacker Drive
Suite 4100
Chicago, IL  60601-1818
Phone: 312-750-8898
Fax:      312-920-6766

*Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I do hereby certify I electronically filed the foregoing Answer with the Clerk of the Court by using the CM/ECF system on this 5th day of May, 2008, which will send a notice of electronic filing to the following:

Edward H. Nielson (IL Bar #0252296)
Scott L. Anderson (IL Bar #6269332)
Pretzel & Stouffer, Chartered
One South Wacker Drive
Suite 2500
Chicago, IL  60606

*Co-Counsel for the Plaintiff*

M. Reid Estes, Jr.
Martin D. Holmes
Stewart, Estes & Donnell, PLC
Fifth Third Center
424 Church Street
Suite 1401
Nashville, Tennessee 37219

*Lead Attorneys for Plaintiff*


s/ David R. Esquivel
David R. Esquivel