IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLADYS SEARCY,<br>individually and on behalf of all<br>others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>eFUNDS CORPORATION, d/b/a<br>DEPOSIT PAYMENT PROTECTION<br>SERVICES, INC., and DEPOSIT<br>PAYMENT PROTECTION SERVICES,<br>INC.<br><br>    Defendants. | No. 08-C-985<br><br>JUDGE KOCORAS<br><br>MAGISTRATE JUDGE COX |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this putative class action, Plaintiff seeks statutory and punitive damages for Defendants' alleged failure to comply with the Fair Credit Reporting Act ("FCRA") in their standardized "SCAN Consumer File Disclosure Reports" ("SCAN Reports"). Plaintiff Searcy claims that Defendants' policy of including only negative information in these SCAN Reports constitutes a willful violation of the FCRA. On the merits, Defendants maintain that their policy, which has remained unchanged since well before the relevant time period, is in compliance with the FCRA and that no plaintiff would be entitled to statutory or punitive damages. In the case at bar, however, summary judgment should be granted because Plaintiff's claims fall outside the FCRA statute of limitations.

While Plaintiff's Complaint alleges that Searcy requested and received SCAN Reports in September 2005 and October 2006, the Complaint fails to mention an earlier

SCAN Report that was requested and received by Searcy in January 2005. A copy of this January 2005 SCAN Report is attached as Exhibit 2 to the Declaration of Tonya Weber, the Senior Audit Compliance Specialist for eFunds Corporation. ("Weber Declaration", attached hereto as Exhibit 1). Defendants' policies and procedures regarding the content of their consumer file disclosures, which are the sole focus of Plaintiff's Complaint, were in place well before January 2005 and remained unchanged throughout the relevant time period. Accordingly, the January 2005 SCAN Report is, in all relevant aspects, identical to those received by Searcy in September 2005 and October 2006. By failing to file her claims within the FCRA's two-year statute of limitations (i.e., by January 2007), her claims in this lawsuit should be dismissed.

## **BACKGROUND ON SCAN PRODUCTS AND PLAINTIFF'S CLAIMS**

Defendants offer a Shared Check Authorization Network ("SCAN") to various retail merchants that desire to accept checks as a form of payment for goods and services. SCAN consists of two basic products: traditional SCAN and SCAN OnLine. Traditional SCAN is an electronic database that contains bank account and driver's license numbers that are associated with closed bank accounts or previously unpaid items, commonly known as bounced checks. Merchants that subscribe to "traditional SCAN" receive the database on a daily basis in a distributed electronic file and utilize their own internal processes to query and make use of the information. SCAN OnLine is a newer product, utilized by fewer merchants, that provides similar information, but in an on-line database that is hosted by Defendants, as well as certain other risk management tools associated with merchants' acceptance of checks.

To avoid confusion, the normal operation of SCAN products should be considered. When a consumer has written a check to a merchant that was not honored

by the bank because the account had been closed or due to insufficient funds in the account, the merchant reports that bad check information to Defendants, who incorporate this information into their SCAN products. When a consumer attempts to use the same checking account in a subsequent transaction with a merchant who uses SCAN, that merchant may opt not to accept the check. Upon doing so, the merchant will provide the consumer contact information for Defendants so that the consumer may resolve the outstanding debt. Consumers that contact Defendants are then provided information about the source and amount of their outstanding debt; when the debt is resolved, the information in the SCAN products is updated.

Plaintiff Searcy's allegations do not speak to any failure to adequately inform consumers about their outstanding debts, to any merchant's refusal to honor checks based on incorrect SCAN product information, or to Defendants' resolution of conflicts related to claimed outstanding debts. Instead, Plaintiff Searcy's claims pertain to other, *non-adverse* information that Plaintiff alleges should be included in SCAN Consumer File Disclosure Reports ("SCAN Reports"). *See* Complaint ¶ 57 ("Under Defendants' uniform policy, practice and procedure, Defendants will only provide information in its databases, systems, and files regarding current negative items, such as bad checks, dishonored checks and returned checks."). For example, in the vast multitude of transactions where a consumer presents a check to a merchant who uses a SCAN product, that merchant receives an indication from the product that the proffered identifiers (checking account and/or driver's license numbers) are not contained in the database. Usually, these merchants will then permit payment by check. In her Complaint, Plaintiff Searcy asserts that Defendants' failure to include these "successful" check transactions in their SCAN reports is a violation of the FCRA. Plaintiff does not

3

allege any actual damages stemming from Defendants' conduct, Complaint ¶ 5, but instead seeks statutory and punitive damages for this allegedly "willful" violation of the FCRA.

Defendants strongly deny that their policies regarding the content of the SCAN Reports violate the FCRA. Whatever the merits of Plaintiff's theory may be, however, Searcy's claims cannot proceed because they are barred by the FCRA statute of limitations. Searcy had all the information necessary to challenge Defendants' longstanding policy in January 2005 when she first requested and received a SCAN Report.

## ARGUMENT

### I. Plaintiff Searcy's claims are barred by the FCRA's two-year statute of limitations.

"Statutes of limitation are legislative creations designed to give what the legislature deems a reasonable time for a plaintiff to present his or her claim." *United States v. Kubrick*, 444 U.S. 111, 117 (1979). In the Fair Credit Reporting Act, Congress determined that a two-year statute of limitations was appropriate. The statute establishes a narrowly-defined statute of limitations applicable to civil actions arising under the Act:

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, *not later than the earlier of—*
> (1) *2 years after the date of discovery by plaintiff of the violation that is the basis of the liability*; or
> (2) *5 years after the date on which the violation that is the basis for such liability occurs.*

15 U.S.C. § 1681p (emphasis added). Plaintiff Searcy's Complaint establishes quite clearly that the alleged violation of the FCRA stems from Defendants' "uniform policy,

practice and procedure for responding to consumers' requests for disclosures and information." Complaint ¶ 49. Defendants have admitted that they had a uniform and standardized policy for responding to consumer requests for file disclosures throughout the relevant time period. *See* Answer ¶ 49.

In her Complaint, Plaintiff Searcy does not challenge a particular transaction that has caused her injury—indeed the Complaint expressly indicates that the Plaintiff "does not seek actual damages or compensatory damages." Complaint ¶ 5. To the contrary, the Complaint is focused squarely on the Defendants' "uniform policy, practice and procedure." *Id.* ¶¶ 56-60. Plaintiff contends that these policies and procedures fail to comply with the technical requirements of the FCRA.

Searcy, however, discovered the alleged basis of liability outside of the FCRA's statute of limitations. Plaintiff Searcy first sought and received a SCAN Consumer File Disclosure Report well before the September 2005 report that is referenced in her Complaint. *See* Weber Declaration, Ex. 1. On January 18, 2005, Searcy requested that Defendants send her a SCAN Report. *See* Weber Declaration ¶ 5; *id.* Exhibit 1. Within days, she received a SCAN Report dated January 21, 2005. *Id.* Exhibit 2. To Defendants' knowledge, Plaintiff Searcy never complained in any way about the form or content of this January 2005 SCAN Report. To the contrary, Searcy requested and received a subsequent SCAN Report in September of 2005 and again in October of 2006. Copies of these reports were attached to Searcy's Complaint. *See* Complaint ¶¶ 54-55 & Exhibits 1-2. The January 2005 SCAN Report contains no material differences from the SCAN Reports attached as exhibits to Plaintiff's Complaint. To the extent that the SCAN Reports that are the subject of Plaintiff's Complaint suffer from FCRA defects,

any such defects would have been equally plain in the January 2005 SCAN Report, which Plaintiff omitted from her Complaint.

Because Plaintiff's discovery of any alleged shortcoming in Defendants' responses to consumer inquiries occurred in January of 2005, her action cannot proceed. The present action was filed on February 15, 2008—over three years after her receipt of the January 2005 report. Because the action was not filed within the two-year statute of limitations, Plaintiff Searcy's action should be dismissed.

## II. Because the statute of limitations barred Searcy's claims as of January 2007, the filing of the Tennessee class action in June 2007 cannot save them by way of equitable tolling.

Plaintiff seeks to avoid the application of the FCRA's statute of limitations through equitable tolling based upon a previously-filed class action. Complaint ¶ 62 (referencing *Sammons et al. v. eFunds Corporation and Deposit Payment Protection Corporation*, previously filed on June 18, 2007 in the United States District Court, Middle District of Tennessee, Docket No. 3:07-0656). Notably, the Tennessee class action plaintiff was represented by the same counsel that represents Searcy in this proposed class action. *See* Exhibit 2, attached hereto (*Sammons* Complaint). The Tennessee action was voluntarily dismissed by Plaintiffs after the Defendants produced voluminous written discovery, Plaintiffs deposed two of Defendants' employees, and the Court's deadline for Plaintiffs' motion for class certification was elapsing.[1] *See* Exhibit 3, attached hereto (*Sammons* Initial Case Management Order); Exhibit 4, attached hereto (*Sammons* Notice of Voluntary Dismissal). While Defendants contend that the *Sammons* action should not provide equitable tolling for *any* class plaintiff under the

---

[1] *See Swindell v. Florida East Coast Ry., LLC*, 2005 WL 2387614, at *8 (M.D. Fla. 2005) (ruling that the statute of limitations under FELA was not tolled by a previous action that was voluntarily dismissed) ("[T]he voluntary dismissal of a prior action has the effect of placing the parties in a position as if the earlier suit had never been filed, and the statutory limitations period is not tolled.").

6

circumstances, no equitable tolling can save this particular action in light of the SCAN Report requested and received by Searcy in January of 2005.

The statute of limitations on Plaintiff Searcy's claims against Defendants expired in January of 2007—five months before the filing of the *Sammons* action in the Middle District of Tennessee in June 2007. Even if the Court were to find equitable tolling generally appropriate, the limitations period on Searcy's claims had expired before the *Sammons* action was filed. Therefore, the filing of the *Sammons* lawsuit does not provide a basis to toll the statute of limitations for Searcy's claims, Searcy failed to timely file her claims against Defendants, and her lawsuit should be dismissed.

**III.  Because separate communications made pursuant to Defendants' long-standing policy do not constitute "serial violations," the statute of limitations should be measured by Searcy's discovery of the alleged violation in January 2005.**

In addition to the plainly inapplicable equitable tolling argument, Plaintiff seeks to save her claims from the normal operation of the FCRA's statute of limitations by alleging that Defendants' "violations of the FCRA are continuing in each and every consumer disclosure provided by Defendants to consumers." Complaint ¶ 92. There is no basis for finding alleged "serial" or "continuing" violations of the FCRA to save a Plaintiff who has sat on her rights, especially in circumstances where no actual harm to Plaintiff or any member of the proposed class is alleged. There is no allegation that Defendants' "policy, practice and procedures" were changed between January 2005 and October 2006; nor is there any allegation that any actual harm resulted from the first, second, third, or any SCAN Report received by any putative class member.

7

> **A.   The FCRA statute of limitations begins to run upon a consumer's discovery of the defendant's allegedly willful violation of the statute.**

Pursuant to the FCRA statute of limitations, a plaintiff must file her action under the statute "not later than . . . 2 years after the date of discovery by plaintiff of the violation that is the basis of the liability." 15 U.S.C. § 1681p. "Absent other indication, a statute of limitations begins to run at the time the plaintiff 'has the right to apply to the court for relief . . . .'" *TRW, Inc. v. Andrews*, 534 U.S. 19, 37 (2001) (Scalia, J., concurring in judgment) (quoting 1 H. Wood, Limitation of Actions § 122a, at 684 (4th ed. 1916)). Without question, the plaintiff's right to apply for relief for the alleged violation arose in January of 2005 when she received her first SCAN Report.

In 2001, the United States Supreme Court explored the FCRA statute of limitations at great length. *See TRW, Inc. v. Andrews*, 534 U.S. 19 (2001). In *TRW*, the plaintiff sought the application of a general discovery rule to the statute of limitations, whereby the two-year limitations period would commence upon the plaintiff's discovery of the alleged violation. The Court rejected this argument, reasoning that the FCRA statute of limitations should be interpreted strictly in accordance with the statutory terms. The FCRA statute of limitations includes a specific exception that causes the limitations period to be measured two years from the time of discovery only where there is some willful and material misrepresentation by the defendant. The Court found that Congress had "implicitly excluded a general discovery rule by explicitly including a more limited one." *Id.* at 28. Thus, *TRW* makes it clear that the only basis for extending the two-year statute of limitations is the statutory exception for willful and material misrepresentations. Because Searcy does not allege any such misrepresentation, the two-year statue of limitations is appropriate to her action.

Instructive to this case is the Court's analysis of one of Plaintiff's arguments for the later commencement of the statute of limitations. Relying on the "liability arises" language, the plaintiff in *TRW* argued that consumers could not logically bring suit on a claim until actual damages have materialized, essentially asserting that "liability arises" under the FCRA when plaintiffs incur damages. *Id*. at 35. Commenting on this argument, the Court pointed to the plaintiff's allegation of "willful violations" that would entitle the plaintiff to certain punitive damages under the FCRA. *Id*. These damages, the Court stated, "could presumably be awarded at the moment of TRW's alleged wrongdoing." *Id*. Thus, even under the *TRW* plaintiff's theory "at least some of the liability she sought to enforce arose when the violations occurred, and the limitations period therefore began to run at that point." *Id*.

Similarly, any liability of Defendants to Plaintiff Searcy arose when she received her January 2005 SCAN report. Because there is no claim of actual damages, the only question is when her right (if any) to statutory and punitive damages arose. When Plaintiff Searcy received her January 2005 SCAN report, she plainly could have brought an action against Defendants seeking the same relief sought in the present complaint. "[A] statute of limitations which says the period runs from the date on which the cause of action arose incorporates the standard rule that the limitations period commences when the plaintiff has a complete and present cause of action." *See TRW*, 534 U.S. at 36 (Scalia, J., concurring in judgment) (internal citations and quotation marks omitted). The FCRA limitations period thus commenced when Searcy had a complete and present cause of action in January 2005. *See also Emich Motors Corp. v. General Motors Corp.*, 229 F.2d 714, 719 (7th Cir. 1956) (noting that generally "statutes of limitations begin running on the date on which the plaintiff first has the right to bring action").

**B.     There is no basis for application of the continuing violations doctrine in this case.**

The doctrine of "continuing violations" is most firmly established in the jurisprudence of employment discrimination law. The continuing or serial violation doctrine is generally premised upon "the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated." *Alldread v. City of Grenada,* 988 F.2d 1425, 1432 (5th Cir.1993) (internal quotation marks omitted); *see also Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 446 (7th Cir.1994) ("[T]he purpose of permitting a plaintiff to maintain a cause of action on the continuing violation theory is to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred.") (citing *Moskowitz v. Trustees of Purdue Univ.,* 5 F.3d 279, 282 (7th Cir.1993)).

These purposes would not be served in Searcy's action against Defendants. To the extent there was a violation of the FCRA, the character of this violation was perfectly clear in January of 2005 when Searcy received her first SCAN Report. Defendants' subsequent conduct and actions did not provide any additional information to Searcy that would have altered her ability to bring an action under the FCRA. Searcy's failure to seek relief upon the maturation of her claim does not render Defendants' actions a "continuing violation" for statute of limitations purposes. *Cf. Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1222 (11th Cir. 2001) (noting that "[a] claim arising out of an injury which is 'continuing' only because a putative plaintiff knowingly fails to seek relief is exactly the sort of claim that Congress intended to bar").

10

A recent case granting summary judgment in a Fair Debt Collection Practices Act ("FDCPA") case is instructive. *See Wilhelm v. Credico*, 455 F. Supp. 2d 1006 (D.N.D. 2006). In *Wilhelm*, the district court rejected plaintiff's "serial violation" theory, which would have extended plaintiff's limitations period beyond that required by the statute. *Id.* at 1009. The plaintiff in *Wilhelm* had disputed a putative debt with Pinnacle Credit Services, LLC ("Pinnacle"). *Id.* at 1008. While any identification of the dispute was dated as December 12, 2003, plaintiff did not file suit against Pinnacle until October 3, 2005—well beyond the FDCPA's one-year statute of limitations. *Id.* at 1009. Plaintiff alleged that Pinnacle's continued reporting of the debt constituted a continuing or "serial" violation and thus argued that the statute of limitations should be measured from the last violation, which by Plaintiff's assertion occurred in March of 2005. *Id.*

Like Plaintiff here, the *Wilhelm* plaintiffs urged the court to measure the statute of limitations from the date of the final instance in a series of reports. The court, however, rejected this "serial violation" theory, reasoning that such a continuing violation theory was unavailable in the context of the FDCPA. *Id.*; *see also Sierra v. Foster & Garbus*, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) (rejecting the continuing violations theory in an FDCPA case because of the potential result that a "cause of action could be kept alive indefinitely because each new communication would start a fresh statute of limitations"); *Knobbe v. Bank of America N.A.*, 2007 WL 2822750 (D. Neb. 2007) (rejecting the argument that "[e]very letter that Defendants write, any attempt to engage in a collection including any court actions . . . is a series of continuing violations"). These cases analyzing the continuing violations doctrine under the FDCPA are equally applicable to Plaintiff Searcy's action under the FCRA.

Furthermore, the fact that Searcy's request for a SCAN Report in October 2006 was received less than two years from the filing of the Complaint does not save the Plaintiff's claims. Under Plaintiff's limitations theory, litigants would be empowered to sit on their rights and toll the statute indefinitely by continuing to request reports that suffer from an alleged defect that they discovered earlier but never acted upon. Indeed, Plaintiff's theory would permit a litigant to request monthly reports for two years and then file suit for $24,000 in statutory damages. Preventing this type of abuse is exactly why the FCRA statute of limitations commences upon the "*discovery by plaintiff* of the violation that is the basis of the liability." 15 U.S.C. § 1681p (emphasis added). Searcy had all the information needed to bring a claim in January of 2005 and should not be able to rely on her own actions to extend the statute of limitations. It was plainly Searcy's decision to initiate an additional request for a SCAN Report that was materially identical to her previous two reports, pursuant to Defendant's unchanged procedures. To the extent there was any injury in October of 2006, it was the very same alleged injury that she discovered in January of 2005. Seeking out an additional instance of this alleged injury should not permit Searcy to postpone the normal operation of the FCRA statute of limitations.

Searcy's complaint is premised entirely upon Defendants' "uniform policy, practice and procedure for responding to consumers' requests for disclosures." Complaint ¶ 49. Searcy, however, received a SCAN Report in January 2005 pursuant to the very "policy, practice and procedure" she now challenges. Any right to bring a cause of action against Defendants for this policy was fully mature in January 2005. The fact that she received subsequent reports pursuant to Defendants' unchanged policy did not provide her with any additional facts necessary to file suit and did not cause her any

actual harm. Consequently, the statute of limitations under the FCRA commenced when Searcy first became aware of Defendants' policy in January 2005.

## CONCLUSION

Plaintiff did not timely file an action within two years of her discovery of the policy about which she complains in this lawsuit. Because the statute of limitations for her claims expired in January 2007—months before the Tennessee class action was filed and over a year before the present action was filed—Searcy's claim is now time barred. For these reasons and those stated above, Defendants respectfully request that the Court enter summary judgment against Plaintiff Searcy because her action was not filed within the applicable statute of limitations.

Respectfully Submitted,

s/ David R. Esquivel
David R. Esquivel (pro hac vice)
Jeffrey P. Yarbro (pro hac vice)
BASS, BERRY & SIMS PLC
315 Deaderick Street, Suite 2700
Nashville, TN  37238-3001
Phone:  615-742-6200
Fax:     615-742-0405

David L. Hartsell
MCGUIREWOODS LLP
77 West Wacker Drive
Suite 4100
Chicago, IL  60601-1818
Phone: 312-750-8898
Fax:     312-920-6766

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

    I do hereby certify I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system on this 5th day of May, 2008, which will send a notice of electronic filing to the following:

> Edward H. Nielson (IL Bar #0252296)
> Scott L. Anderson (IL Bar #6269332)
> Pretzel & Stouffer, Chartered
> One South Wacker Drive
> Suite 2500
> Chicago, IL  60606
>
> *Co-Counsel for the Plaintiff*
>
> M. Reid Estes, Jr.
> Martin D. Holmes
> Stewart, Estes & Donnell, PLC
> Fifth Third Center
> 424 Church Street
> Suite 1401
> Nashville, Tennessee 37219
>
> *Lead Attorneys for Plaintiff*

                                            s/ David R. Esquivel
                                            David R. Esquivel

6770488.1