# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

2007 JUN 18  PM 4: 38

MIDDLE DISTRICT OF TN

|  |  |  |
|---|---|---|
| KIMBERLY SAMMONS and CHERYL BEAUDRY, individually and on behalf of all others similarly situated, | ) ) ) ) ) | NO  3  07  0656 |
| Plaintiffs, | ) ) ) | JUDGE<br><br>CLASS ACTION COMPLAINT<br><br>JURY DEMAND |
| vs | ) ) ) | |
| eFUNDS CORPORATION, d/b/a DEPOSIT PAYMENT PROTECTION SERVICES, INC. and DEPOSIT PAYMENT PROTECTION SERVICES, INC., | ) ) ) ) ) ) | JUDGE ECHOLS |
| Defendants | ) | |

## CLASS ACTION COMPLAINT

Come Plaintiffs, individually and on behalf of all other similarly situated persons as

defined below, and for their Complaint against Defendants, state the following:

### I.     INTRODUCTION

1     This action is brought by Plaintiffs against Defendants eFunds Corporation, d/b/a

Deposit Payment Protection Services, Inc and Deposit Payment Protection Services, Inc

("DPPS") for violations of the Fair Credit Reporting Act, 15 U S C § 1681 *et seq.* ("FCRA")

Plaintiffs bring this action on behalf of themselves and other similarly situated persons as defined

below (referred to as the "Class") to redress Defendants' past, present and continuing violations

of the FCRA, including but not limited to the provisions contained in 15 U S C. § 1681g

2     Defendants have and continue to violate the FCRA by refusing or failing to

provide consumers with disclosures that comply with 15 U.S.C. § 1681g  In particular, after a

consumer has requested a disclosure pursuant to 15 U.S.C § 1681g, Defendants do not provide: 1) all information in the consumer's file at the time of the request as required by 15 U.S.C. § 1681g(a)(1); 2) the sources of the information in the consumer's file as required by 15 U.S.C § 1681g(a)(2); and/or 3) the names of the persons (or trade names of the persons, if applicable) who procured consumer reports from Defendants regarding the consumer during the 1-year period preceding the consumer's request for a disclosure as required by 15 U.S.C § 1681g(a)(3).

3    In Count I of the Complaint, Plaintiffs, individually and on behalf of the Class they seek to represent, contend that Defendants willfully violated and continue to violate the FCRA  Plaintiffs, individually and on behalf of the class they seek to represent during the liability period, seek the following relief:  a) a declaratory judgment that Defendants have engaged in a pattern and practice of conduct that violates the FCRA, and specifically, the provisions of 15 U.S.C. § 1681g; and b) a declaratory judgment that Defendants' violations of the FCRA were willful

4.    Also in Count I of the Complaint, Plaintiffs, individually and on behalf of the Class, seek a permanent injunction and other equitable relief necessary to undo the effects of the Defendants' past and current violations of the FCRA and to prevent such violations from occurring in the future, including, but not limited to, affirmative restructuring of the Defendants' policies, practices and procedures, and specifically, Defendants' disclosures to consumers, in a manner which complies with the provisions of the FCRA and 15 U.S.C § 1681g.  Plaintiffs further seek other incidental monetary and non-monetary remedies, including but not limited to statutory damages, punitive damages, prejudgment interest, attorneys' fees, costs and expenses

5    In Count I of the Complaint, Plaintiffs sue on behalf of themselves and the Class they seek to represent pursuant to Fed R. Civ P  23(a) and one or all of the following Rules of

the Federal Rules of Civil Procedure: a) 23(b)(2); b) 23(b)(3); and/or c) 23(c)(4).

6       In the alternative, in Count II of the Complaint, Plaintiffs, individually and on behalf of the Class they seek to represent, contend that Defendants negligently violated and continue to violate the FCRA. Plaintiffs, individually and on behalf of the class they seek to represent during the liability period, seek the following relief: a) a declaratory judgment that Defendants have engaged in a pattern and practice of conduct that violates the FCRA, and specifically, the provisions of 15 U.S.C. § 1681g; and b) a declaratory judgment that Defendants' violations of the FCRA were negligent

7.      Also in Count II of the Complaint, Plaintiffs, individually and on behalf of the Class, seek a permanent injunction and other equitable relief necessary to undo the effects of the Defendants' past and current violations of the FCRA and to prevent such violations from occurring in the future, including, but not limited to, affirmative restructuring of the Defendants' policies, practices and procedures, and specifically, Defendants' disclosures to consumers, in a manner which complies with the provisions of the FCRA and 15 U.S.C § 1681g  Plaintiffs further seek other incidental non-monetary remedies, including but not limited to attorneys' fees, costs and expenses

8.      In Count II of the Complaint, Plaintiffs sue on behalf of themselves and the Class they seek to represent pursuant to Fed R. Civ P 23(a) and one or all of the following Rules of the Federal Rules of Civil Procedure: a) 23(b)(2); b) 23(b)(3); and/or c) 23(c)(4).

9       Plaintiffs, individually and on behalf of the Class they seek to represent, do not seek actual damages or compensatory damages

## II.    JURISDICTION AND VENUE

10.     This Court has federal question jurisdiction pursuant to 28 U S C. § 1331.

11    Venue is proper in this Court in the Middle District of Tennessee because Defendants are doing business in the State of Tennessee and a substantial portion of the conduct giving rise to this action occurred in the Middle District of Tennessee.

### III.  PARTIES

12.    Plaintiff Kimberly Sammons ("Sammons") is a resident and citizen of Nashville, Davidson County, Tennessee. Sammons is a "consumer" as defined under the FCRA, 15 U.S.C § 1681a(c). Sammons is representative of the Class.

13    Plaintiff Cheryl Beaudry ("Beaudry") is a resident and citizen of Nashville, Davidson County, Tennessee. Beaudry is a "consumer" as defined under the FCRA, 15 U.S.C § 1681a(c). Beaudry is representative of the Class.

14    Defendant eFunds Corporation ("eFunds") is a Delaware corporation, doing business in the State of Tennessee. In its SEC filings, eFunds states that its principal place of business is in Scottsdale, Arizona.

15.    eFunds does business as Deposit Payment Protections Services, Inc ("DPPS"). In its SEC filings, eFunds lists DPPS as its subsidiary.

16    eFunds, individually and doing business as DPPS, is a "consumer reporting agency" as defined by the FCRA.

17.    Defendant DPPS is a foreign corporation doing business in Tennessee. DPPS is registered with the Tennessee Secretary of State as a Delaware corporation with its principal place of business in Scottsdale, Arizona.

18.    DPPS is a "consumer reporting agency" as defined by the FCRA.

19    eFunds and DPPS are subject to personal jurisdiction in the State of Tennessee for purposes of this lawsuit.

## IV.   PROVISIONS OF THE FAIR CREDIT REPORTING ACT

20.   Under the FCRA, a "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

21.   Under the FCRA, a "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for: a) credit or insurance to be used primarily for personal, family, or household purposes; b) employment purposes; or c) any other purpose authorized under 15 U.S.C § 1681b  Under 15 U.S.C. § 1681b, one of the authorized purposes listed is in connection with a business transaction initiated by the consumer.

22   Under the FCRA, a "file" is defined as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

23.   Under the FCRA, consumers have the right to obtain a disclosure from a consumer reporting agency at any time  If a consumer requests a disclosure from a consumer reporting agency, the consumer reporting agency is required to provide the following: a) all information in the consumer's file at the time of the request (15 U S C § 1681g(a)(1)); b) the

sources of the information in the consumer's file (15 U S.C § 1681g(a)(2)); and c) the name of the persons, or trade names of the persons if applicable, who procured a consumer report from the consumer reporting agency during the 1-year period preceding the consumer's request for a disclosure (15 U S C § 1681g(a)(3))

## V.    NATURE OF DEFENDANTS' BUSINESS

24    Throughout the country, including Middle Tennessee and the State of Tennessee, a large percentage of businesses, including merchants, accept checks from consumers as a method of payment for goods and services.  The business transactions are initiated by the consumers who wish to purchase goods or services from said business or merchant (hereinafter Plaintiffs refer to "businesses" and "merchants" interchangeably)

25.    Businesses and merchants desire to accept checks as a method of payment for goods and services, yet also want to minimize the potential risk of a check being returned as an unpaid or dishonored item, such as a check returned for non-sufficient funds.

26    According to its SEC filings, eFunds engages in the payment processing business and one of its business lines is risk management.

27    eFunds does business as Deposit Payment Protection Services, Inc. ("DPPS").

28    eFunds' risk management segment, including DPPS, derives its revenues from providing data-based risk management products to retailers, merchants and other businesses These risk management products include those that Defendants claim can assess the potential risk associated with accepting a consumer's check as payment at the point of sale by a business, merchant, or retailer

29.    Defendant DPPS engages in the payment processing business and risk management

30     DPPS derives its revenues from providing data-based risk management products to retailers, merchants and other businesses  These risk management products include those that Defendants claim can assess the potential risk associated with accepting a consumer's check as payment at the point of sale by a business, merchant, or retailer.

31.     Defendants share common databases, which include information and other data in databases referred to as "ChexSystems" and "SCAN." SCAN is the acronym for Shared Check Authorization Network  Defendants share data and information from other sources as well.

32     SCAN is a service mark of Defendants

33     Defendants claim that their SCAN product or service, which provides check verification, can help businesses, merchants and retailers to reduce the risk of write-offs for dishonored checks and/or account fraud

34     Upon information, businesses, merchants and retailers throughout the country contract with Defendants to become "members" of SCAN.  These businesses, merchants and retailers include those in the Middle Tennessee area and the State of Tennessee

35.     According to eFunds' SEC filings, as of December 31, 2006, nine of the twenty largest retailers in the United States use Defendants' SCAN check verification service.

36.     According to eFunds' SEC filings, Defendants' larger retail customers host Defendants' SCAN database on their own computers.  Defendants' other customers are able to access Defendants' databases through Defendants' SCAN Online product.

37     Based on information contained in eFunds' SEC filings, businesses and merchants that host the SCAN database themselves typically pay a monthly service fee for Defendants' SCAN product based on the businesses' or merchants' net monthly check sales.  If the merchant or business uses certain online products, such as SCAN Online, they are billed by the number of

transactions processed through Defendants' system by the merchant or business  Additional fees are also assessed by Defendants for calls placed by the retailers or consumers to Defendants' call centers.

38    Procedurally, when a consumer initiates a sales transaction with the SCAN "member" business or merchant and presents a check as a method of payment at the point of sale, the business or merchant processes the check through Defendants' SCAN database and possibly Defendants' other databases as well  Typically, the check is processed by the business or merchant inputting identifiers unique to that consumer, such as driver license and/or bank account number, into a terminal at the point of sale  Some businesses and merchants have terminals in which the paper check is physically scanned reading these identifiers  Defendants then generate a report to the business or merchant, advising whether in Defendants' databases and systems the consumer has record of a returned or dishonored check or the account on which the check is written is reported as closed

39.    In addition to receiving reports from Defendants, "members" (i.e. businesses and merchants) who subscribe to Defendants' services also furnish information to Defendants.  If a "member" has a check that is returned as unpaid or dishonored, the "member" reports this information to Defendants, who enter it into their databases and systems.

40    Conceptually, if a "member" processes a check through Defendants' system and receives a report from Defendants that the consumer has a returned or dishonored item, such as a returned check, the "member" will not accept the check as a method of payment  The consumer will be directed to contact Defendants, who provide the consumer with information related to the unpaid item and the "member" who reported this information to Defendants.  Conceptually, once the unpaid item is subsequently paid by the consumer, that particular "member" furnishes this

information to Defendants, who adjust their systems and databases accordingly

41.    Conversely, if a "member" processes a check through Defendants' system and databases and receives a report from Defendants that the consumer does not have record of a returned or dishonored item, such as a returned check, the "member" will typically accept the consumer's check as a method of payment.

42.    In its SEC filings, eFunds states that because it collects and discloses transaction data and other personal information about consumers, its risk management businesses are subject to the FCRA and any state laws providing greater consumer protections.

43.    Defendants collect, gather, store, disseminate and report information to/from businesses and merchants regarding consumers' checkwriting and bank account histories. Defendants provide this information to businesses and merchants in the form of a consumer report as defined by the FCRA

44.    By performing the aforementioned risk management services, including the SCAN service, Defendants are consumer reporting agencies as defined by the FCRA

45.    In its SEC filings, eFunds admits that, under the FCRA, consumers have the right to know the contents of the records pertaining to them which eFunds maintains at its consumer reporting agencies  Further in its SEC filings, eFunds admit that, under the FCRA, consumers have the right to challenge the accuracy of that information and to have their information verified, updated or removed if it is incorrect

46    As consumer reporting agencies, Defendants are required to comply with the FCRA, including provisions contained in 15 U.S C. §§ 1681g, 1681h and 1681i

47.    Defendants have created and implemented a uniform policy, practice and procedure for responding to consumers' requests for information under the FCRA.

48.    Upon information and belief, Defendants operate and maintain an internet website known as www.consumerdebit.com.    On www.consumerdebit.com, Defendants provide a preprinted document called the "SCAN Consumer Report Order Form."

49    The purpose of the "SCAN Consumer Report Order Form" is for consumers to obtain disclosures pursuant to the FCRA.

50    In addition, Defendants have a policy, practice and procedure of accepting consumer requests for disclosures by telephone

## VI.    FACTS RELATING TO DEFENDANTS' FAIR CREDIT REPORTING ACT VIOLATIONS

51.    Plaintiffs Sammons and Beaudry, along with the Class they seek to represent, are consumers who have utilized checks as a method of payment for goods and services from businesses, including merchants and retailers.

52    In early May 2007, Sammons contacted Defendants at their 1-800 number and requested a consumer disclosure pursuant to the FCRA    Several days later, Sammons received a document in the mail titled "SCAN CONSUMER FILE DISCLOSURE REPORT" (hereinafter referred to as "SCAN Report") dated May 10, 2007    Accompanying the SCAN Report was a cover letter purportedly from DPPS, a document titled "A Summary of Your Rights Under the Fair Credit Reporting Act" and a document titled "Frequently Asked Questions." (**Exhibit 1**) (personal identifying information redacted)

53.    On or about May 11, 2007, Beaudry completed a "SCAN Consumer Report Order Form." that she printed off the internet on May 8, 2007.    Beaudry faxed the "SCAN Consumer Report Order Form" on May 11, 2007 to the 1-800 number provided on the preprinted form.

54    Several days later, Beaudry received a SCAN Report dated May 16, 2007 Accompanying the SCAN Report was a cover letter purportedly from DPPS, a document titled

"A Summary of Your Rights Under the Fair Credit Reporting Act" and a document titled "Frequently Asked Questions." (**Exhibit 2**)(personal identifying information redacted).

55. The SCAN Reports received by Plaintiffs are standardized documents that Defendants routinely provide to consumers when requesting disclosures under the FCRA. Upon information and belief, Defendants have sent identical or virtually identical SCAN Reports to the Class that Plaintiffs seek to represent

56 The SCAN Report received by Plaintiffs and the Class are broken down into several sections. First, under the "Identification" section, Defendant provides the identifiers supplied by the consumer to process his/her request These "identifiers" are typically a consumer's bank/financial institution account number and/or driver's license/i d number

57. Both Sammons and Beaudry supplied Defendant with their bank/financial institution account numbers, as well as their driver license numbers. Upon information and belief, other Class members would have supplied similar identifying information such as bank/financial institution account number and/or driver's license/ID number

58 The second section of the standard SCAN Report is titled "REPORTING SOURCE/PAYEE CONTACT INFORMATION" Under this section in Sammons' and Beaudry's SCAN Reports, there is no information listed

59. The third category on the standard SCAN Report is titled "CONSUMER STATEMENT INFORMATION" Under this section in Sammons' and Beaudry's SCAN Reports, there is no information listed

60 Upon receipt of her SCAN report, Sammons faxed a letter to 1-800 number provided by Defendants indicating that her report was incomplete. Knowing that she had written checks to merchants utilizing Defendants' services within the past year, she inquired as to why

none of the information was listed on the SCAN Report

61.    Sammons was contacted by Defendants' representative, who indicated that there was no information on her SCAN Report because Sammons had no record of current returned or dishonored checks

62.    Like Sammons, Beaudry has reasonable belief that she had written checks to merchants utilizing Defendants' services in the past year; however, these merchants are not listed on her SCAN Report

63.    Defendants have a uniform policy, practice and procedure for responding to consumer's request for disclosures under the FCRA. Under Defendants' uniform policy, practice and procedure, Defendants will only provide information regarding current dishonored and returned checks in its databases, systems and files. Other than information regarding current dishonored and returned checks, Defendants provide no additional information to consumers regarding checks processed through Defendants' systems and databases.

64    Under Defendants' uniform policy, practice and procedure, Defendants do not provide all information in the consumer's file at the time of the request required by 15 U.S.C. § 1681g(a)(1)  Upon information and belief, Defendants have additional information in their databases, systems and files regarding Plaintiffs and they Class they seek to represent, but did not provide this information in the SCAN Reports

65    Further, under Defendants' uniform policy, practice and procedure, Defendants do not provide the sources of the information in the consumer's file pursuant required by 15 U.S.C. § 1681g(a)(2).  Upon information and belief, Defendants have additional information in their databases, systems and files regarding the sources of information regarding Plaintiffs and they Class they seek to represent, but did not provide this information in the SCAN Reports.

66.    Finally, under Defendants' uniform policy, practice and procedure, Defendants do not provide the names of the persons (or trade names of the persons, if applicable) who procured consumer reports from Defendants regarding the consumer during the 1-year period preceding the consumer's request for a disclosure as required by 15 U.S.C. § 1681g(a)(3).    Upon information and belief, Defendants have additional information in their databases, systems and files regarding persons (or trade names of the persons, if applicable) who procured consumer reports from Defendants regarding Plaintiffs and the Class they seek to represent during the one-year period preceding the consumer's request, but did not provide this information in the SCAN Reports.

### VII.    CLASS WIDE ALLEGATIONS

### A.    CLASS DEFINITIONS

67    Plaintiffs sue on behalf of themselves and on behalf of other persons similarly situated pursuant to Fed. R. Civ. P. 23(a).    Plaintiffs are members of the Class they seek to represent, which consists of all "consumers" as defined under the FCRA in the United States who requested a consumer disclosure from Defendants within a period of two (2) years of the filing of this Complaint and received a document titled "SCAN CONSUMER FILE DISCLOSURE REPORT" ("SCAN Report") or similar report    Plaintiffs may subsequently refine the class definition in light of discovery

68.    Plaintiffs and the Class they seek to represent were provided with consumer disclosures from Defendants that violated the FCRA.    Specifically, Plaintiffs and the Class they seek to represent failed to receive disclosures from Defendants that complied with 15 U.S.C. § 1681g

69.    Plaintiffs and the Class they seek to represent have been subjected to violations of

the FCRA within two (2) years of the filing of this Complaint

### B.     NUMEROSITY AND IMPRACTICABILITY OF JOINDER

70.     The Class is so numerous that it is impracticable to bring all of its members before the Court  Upon information and belief, Defendants receive hundreds if not thousands of requests for disclosures by consumers pursuant to the FCRA on an annual basis  Thus, the Class of consumers comprises hundreds or thousands of persons  The actual number of Class members who have requested disclosures from Defendants within a period of two years from the filing of this Complaint (the "Liability Period") can be determined from Defendants' records

### C.     COMMON QUESTIONS OR LAW AND FACT

71     The prosecution of the claims of the Plaintiffs requires adjudication of questions of law and fact common to the putative Class: whether Defendants have engaged in a systematic and uniform policy, practice or procedure in responding to consumer's request for disclosures that violate the FCRA.

72.     The claims of the named Plaintiffs and the Class they seek to represent are embedded in common questions of operative facts and law in that Defendants have provided standardized, uniform consumer disclosures and: (1) refused or failed to provide all information in the consumer's file at the time of the request; (2) refused or failed to provide the sources of the information in the consumer's file at the time of the request; and/or (3) refused or failed to identify each person (or trade name if applicable) that procured a consumer report regarding the consumer from Defendants during the 1-year period preceding the date on which the consumer's request was made  Thus, the common questions of law are:  1) whether Defendants' SCAN Report or other reports provided to consumers violate the FCRA; 2) whether Defendants' noncompliance was a willful violation of the FCRA; 3) if willful, whether Plaintiffs and

members of the class are entitled to statutory damages; 4) if not willful, whether Defendants' violations of the FCRA were negligent

73    The common questions of fact are that the Plaintiffs and the Class they seek to represent all requested a consumer disclosure under the FCRA and were provided a SCAN Report or other uniform and standardized report utilized by Defendants' under a common business practice

74.    The questions of law and fact common to the class predominate over any questions affecting only individual Class members.

### D.    TYPICALITY

75    The claims of the named Plaintiffs are typical of the claims of the member of the Class. The named Plaintiffs and all Class members have been and are similarly adversely affected by the systematic and uniform policy, practice and procedures complained of herein Specifically, the named Plaintiffs' claims, like those of the Class members, arise out of Defendants' common business practice or a course of conduct in refusing or failing to provide disclosures to consumers in compliance with the FCRA. Like members of the Class, the named Plaintiffs' rights under the FCRA have been violated by Defendants' standard and uniform policies, practices and procedures.

### E.    ADEQUACY OF REPRESENTATION

76.    The named Plaintiffs will fairly and adequately protect the interest of the Class in so far as they are broadly representative, as reflected in the preceding paragraphs  The named Plaintiffs' interests are co-extensive with those of the Class members in that each would benefit from a declaration that Defendants' standard and uniform policies, practices and procedures violate the FCRA  Plaintiffs have no interests which are antagonistic or adverse to the interest of

other class members.

77.    Further, the named Plaintiffs' interests are co-extensive with those of the Class members in that each would benefit from imposition of a remedy for Defendants' continued, systematic and uniform violation of the FCRA

78    The named Plaintiffs are willing and able to represent the Class fairly and vigorously as they pursue their common goal through this civil action

79    The named Plaintiffs have also retained legal counsel experienced in litigating major class actions, including those in the field of consumer law, and who are prepared and able to meet the time and fiscal demands of class action litigation of this size and complexity  The combined interest, experience and resources of the named Plaintiffs and their counsel to litigate competently the Class claims satisfy the requirements of Fed  R  Civ  P  23(a)(4).

F.    **CERTIFICATION SOUGHT PURSUANT TO FED. R. CIV. P. 23(b)(2)**

80.    Defendants have acted on grounds generally applicable to the Class by adopting, following and utilizing standard policies, practices and procedures and a common business practice of providing consumer disclosures that do not comply with the FCRA  Defendants' violation of the FCRA is not a sporadic occurrence, but is Defendants' standard operating procedure.

81    Defendants have refused to adopt or follow policies, practices and procedures that comply with the FCRA, including but not limited to, refusing or failing to implement and follow standard policies, practices and procedures to provide consumer disclosures that comply with 15 U S.C § 1681g

82.    The Defendant's systematic and uniform violations of the FCRA make declaratory relief appropriate with respect to the Class as a whole

83     In addition, Defendants' uniform and standard policies, practices and procedure that violate the FCRA make final injunctive relief appropriate with respect to the Class as a whole

84     The relief necessary to remedy the claims of Plaintiffs is the same as that necessary for the Class  Plaintiffs seek a declaratory judgment that Defendants have engaged in a systematic policies, practices and procedures of providing consumer disclosures that do not comply with the FCRA.  Plaintiffs further seek injunctive relief requiring Defendants to adopt policies, practices and procedures to comply with the FCRA, including the dissemination of consumer disclosures that comply with the FCRA    Specifically, Plaintiffs seek a permanent injunction against such continued violations of the FCRA.  In addition, Plaintiffs seek injunctive relief which consist of restructuring Defendants' policies, practices and procedures so that consumer disclosures are provided to comply with the Fair Credit Reporting Act, which include: 1) all information in the consumer's file at the time of the request required by 15 U.S.C. § 1681g(a)(1); 2) the sources of the information in the consumer's file pursuant required by 15 U.S.C § 1681g(a)(2); and 3) the names of the persons (or trade names of the persons, if applicable) who procured consumer reports from Defendants regarding the consumer during the 1-year period preceding the consumer's request for a disclosure as required by 15 U.S.C § 1681g(a)(3).

85     Declaratory relief and injunctive relief are the predominant forms of the relief sought by the Class

G.     **CERTIFICATION SOUGHT PURSUANT TO FED. R. CIV. P. 23(b)(3)**

86     As alleged above in Paragraphs 71 – 74, which are incorporated by reference herein, questions of law and fact common to the Class members predominate over any

questions affecting only individual members.

87.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Most individual Class members have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation, the significant costs attendant to litigation on this scale, and the comparatively small, although significant, statutory damages to which each Class member is entitled   Absent a class action, Defendants' violations of the FCRA will continue without remedy

88.    This action will result in an orderly and expeditious administration of Class claims. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

89.    This action presents no difficulty that would impede its management by the Court as a class action. When liability of Defendants has been adjudicated, the damages of each class member can be administratively determined. A class action is superior to other available methods for the fair and efficient adjudication of each class member's claim.

H.    **CERTIFICATION SOUGHT PURSUANT TO FED. R. CIV. P. 23(c)(4)**

90    Under Fed R. Civ. P. 23(c)(4), an action may be brought or maintained as a class action with respect to particular issues

91    Plaintiffs seek class certification pursuant to Fed R Civ P 23(c)(4) on the following issues: 1) whether Defendants violated the FCRA and specifically, the provisions of 15 U.S.C § 1681g; 2) whether Defendants refused or failed to provide all information in the consumer's file at the time of the request in violation of 15 U.S.C § 1681g(a)(1); 3) whether Defendants refused or failed to provide the sources of the information in the consumer's file at the time of the request in violation of 15 U.S.C. § 1681g(a)(2); 4) whether Defendants refused or

failed to identify each person (or trade name if applicable) that procured a consumer report regarding the consumer from Defendants during the one-year period preceding the date on which the consumer's request was made in violation of 15 U.S.C. § 1681g(a)(3); 5) whether Defendants' SCAN Report or similar report provided to consumers violate the FCRA; and 6) whether Defendants' noncompliance is a willful violation of the FCRA or alternatively, a negligent violation of the FCRA.

## COUNT I – WILLFUL VIOLATION OF THE FCRA

92    Plaintiffs restate and incorporate by reference Paragraphs 1 - 91 above as part of Count I of this Complaint

93    Plaintiffs and the Class they seek to represent are "consumers" under the FCRA.

94.   Defendants are "consumer reporting agencies" under the FCRA

95.   As consumer reporting agencies, Defendants are bound by the requirements of the FCRA, 15 U.S.C. § 1681 *et seq.*

96    Defendants provide check verification services to its "members," which are businesses, merchants and retailers.

97.   When a "member" business or merchant process a consumer's check through Defendants' system and databases, including SCAN, Defendants provide a consumer report as defined by the FCRA.

98.   By providing information to a merchant regarding a dishonored or returned check, Defendants are providing a consumer report to the merchant.  Conversely, by providing information to the merchant advising the merchant that the consumer has no record of a dishonored or returned check, Defendants are also providing consumer reports to merchants

99    When a "member" business, merchant or retailer process a consumer's check

through Defendants' system and databases, including SCAN, the "member" business, merchant or retailer procures a consumer report from Defendants

100.    As consumer reporting agencies, Defendants are required to provide disclosures to consumers, upon request, which comply with the FCRA, including 15 U.S.C. § 1681g

101    After Plaintiffs and the Class they seek to represent requested consumer disclosures under the FCRA, Defendants refused to comply with the provisions of 15 U.S.C. § 1681g  Specifically, Defendants refused to provide:  1) all information in the consumer's file at the time of the request required by 15 U.S.C § 1681g(a)(1); 2) the sources of the information in the consumer's file required by 15 U.S.C. § 1681g(a)(2); and 3) the names of the persons (or trade names of the persons, if applicable) who procured consumer reports from Defendants regarding the Plaintiffs and Class Members during the one-year period preceding the consumer's request for a disclosure as required by 15 U.S.C § 1681g(a)(3)

102    Plaintiffs and the Class they seek to represent were subjected to a systematic and uniform policy, practice and procedure and common business practice by Defendants in violating the FCRA.

103.    Defendants have and continue to violate the FCRA, including the provision contained in 15 U.S.C § 1681g, *et seq*

104    Defendants' violation of the FCRA is willful  Despite having information in its systems, databases and files regarding Plaintiffs and the Class they represent, as well as merchants who requested consumer reports from Defendants, Defendants routinely refuse to provide this information to Plaintiffs and the Class they seek to represent.

105.    Defendants' refusal to provide accurate and complete consumer disclosures to consumers is in contravention of the plain and unambiguous language of the FCRA, constituting

a willful violation.

106    Plaintiffs and the Class members have no plain, adequate or complete remedy of law to redress these wrongs alleged herein. A declaratory judgment is their only means of securing adequate and equitable relief. Further, Plaintiffs and the Class members are now and will continue to suffer irreparable injury from Defendants' unlawful policies, practices and procedures unless enjoined by this Court.

107    As a result of Defendants' willful violations of the FCRA, Plaintiffs and the Class they seek to represent are entitled to declaratory relief, injunctive relief, statutory damages, punitive damages, attorneys' fees, costs and expenses.

## COUNT II – NEGLIGENT VIOLATION OF THE FCRA

108.    Plaintiffs restate and incorporate by reference Paragraphs 1 - 103 above as part of Count II of this Complaint.

109.    Alternatively, if it is determined that Defendants' violation of the FCRA is not willful, Defendants' violation of the FCRA is negligent. Despite having information in its systems, databases and files regarding Plaintiffs and the Class they represent, as well as merchants who requested consumer reports from Defendants, Defendants routinely fail to provide this information to Plaintiffs and the Class they seek to represent.

110.    Defendants' refusal to provide accurate and complete consumer disclosures to consumers is in contravention of the plain and unambiguous language of the FCRA and if not willful, constitutes a negligent violation.

111.    Plaintiffs and the Class members have no plain, adequate or complete remedy of law to redress these wrongs alleged herein. A declaratory judgment is their only means of securing adequate and equitable relief. Further, Plaintiffs and the Class members are now and

will continue to suffer irreparable injury from Defendants' unlawful policies, practices and procedures unless enjoined by this Court.

112. As a result of Defendants' negligent violations of the FCRA, Plaintiffs and the Class they seek to represent are entitled to declaratory relief, injunctive relief, attorneys' fees, costs and expenses

## PRAYER FOR RELIEF

113 WHEREFORE, Plaintiffs, on behalf of themselves and the Class members whom they seek to represent, request the following relief:

a      Acceptance of jurisdiction of this cause;

b      Certification of the case as a class action maintained under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(2);

c.     In addition to or in the alternative, certification of the case as a class action maintained under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3);

d.     In addition to or in the alternative, certification of the case as a class action maintained under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(c)(4);

e.     Designation of the Plaintiffs, as representatives of the Class, and their counsel of record as Class counsel;

f.      A declaratory judgment that Defendant's policies, practices and procedures challenged herein, as well as Defendant's standard and uniform consumer disclosures, violate the Fair Credit Reporting Act;

g.     A declaratory judgment that Plaintiffs' and the Class' rights under the Fair Credit Reporting Act were violated by Defendants;

h.     A declaratory judgment that Defendants' violations of the Fair Credit Reporting

Act were willful or in the alternative, negligent;

i.    A preliminary and permanent injunction against Defendants from further violations of the Fair Credit Reporting Act;

j.    An Order requiring Defendant to initiate and implement policies, practices and procedures that: (i) remedy Defendants' past and present violations of the Fair Credit Reporting Act; and (ii) eliminate the continuing violations of the Fair Credit Reporting Act

k    An Order requiring Defendants to initiate and implement policies, practices and procedures for complying with the Fair Credit Reporting Act, including those to provide disclosures to Plaintiffs, Class Members and future consumers that comply with requirements contained in 15 U.S.C. § 1681g;

l.    An award statutory damages if Defendants are found to have willfully violated the Fair Credit Reporting Act;

m    An award of punitive damages if Defendants are found to have willfully violated the Fair Credit Reporting Act;

n.    An award of prejudgment interest if Defendants are found to have willfully violated the Fair Credit Reporting Act;

o    An award of litigation, costs and expenses, including reasonable attorney's fees to the Plaintiffs and to the members of the Class;

p    That a jury try this cause; and

q    Such other and further relief as the Court may deem just and proper.

320133 v1                                 23

Respectfully submitted,

STEWART, ESTES & DONNELL, PLC

By: _____
    Martin D Holmes, #12122
    Fifth Third Center, Suite 1401
    424 Church Street
    Nashville, TN 37219
    (615) 244-6538

*Attorneys for Plaintiffs*