ATTACHMENT 4

*Campbell v Chase Manhattan Bank, USA, N.A.*

**2005 WL 1514221**

Westlaw

Not Reported in F.Supp.2d                                                                      Page 1
Not Reported in F.Supp.2d, 2005 WL 1514221 (D.N.J.)
**(Cite as: 2005 WL 1514221 (D.N.J.))**

▷Only the Westlaw citation is currently available.

United States District Court,
D. New Jersey.
Carroll CAMPBELL and Carolyn J. Campbell,
Plaintiffs,
v.
CHASE MANHATTAN BANK, USA, N.A., a
national bank; Experian Services
Corporation, a Delaware corporation, authorized to
do business in the State of
New Jersey; Equifax Information Services, LLC, a
Georgia limited liability
company, authorized to do business in the State of
New Jersey; Trans Union
Corporation, a Delaware corporation, authorized to
do business in the State of
New Jersey; and Chase Bankcard Services, Inc., a
Delaware corporation,
Defendants.
**No. Civ.A. 02-3489(JWB).**

June 27, 2005

Lauren B. Cohen, Paramus, New Jersey, for Plaintiffs.

Simmons, Jannace & Stagg, By: Thomas E. Stagg, East Meadow, New York, for Defendants Chase Manhattan Bank USA, N.A. (s/h/a Chase Manhattan Bank, USA, N.A.) and Chase Bankcard Services, Inc.

Stoldt, Horan & Kowal, By: Dorothy A. Kowal, Hackensack, New Jersey, for Defendant Experian Information Solutions, Inc.

Traflet & Fabian, By: David M. Fabian, Morristown, New Jersey and Kilpatrick Stockton LLC, By: John J. Friedline, Atlanta, Georgia, for Defendant Equifax Information Services LLC.

Satzberg, Trichon, Kogan & Wertheimer, By: Timothy P. Creech, Philadelphia, Pennsylvania, for Defendant Trans Union LLC.

OPINION

BISSELL, Chief J.

*1 This matter comes before the Court on defendant Chase Manhattan Bank and Trans Union's motions for partial summary judgment and defendant Experian Information Solutions, Inc. and Equifax Information Services LLC's motions for summary judgment. Additionally, plaintiffs Carroll and Carolyn Campbell have filed cross-motions for partial summary judgment against all four defendants. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1332. All motions are addressed in this Opinion.

*FACTS and BACKGROUND*
*Parties*

Plaintiff Carroll Campbell and his wife Carolyn J. Campbell ("plaintiffs") are residents of the State of New Jersey. (Amended Complaint (Am.Compl.), ¶ 4).

Defendant Chase Manhattan Bank USA, N.A. ("defendant Chase") is a national Association with its principal place of business located at 200 White Clay Center Drive, Newark, Delaware. (Am.Compl., ¶ 5).

Defendant Experian Information Solutions, Inc. ("defendant Experian") has its principal office located at 701 Experian Parkway, Allen, Texas. (Am.Compl., ¶ 7).

Defendant Trans Union, LLC ("defendant Trans Union") is a Delaware Corporation whose principal office is located at 555 West Adams Street, Chicago, Illinois. (Am.Compl., ¶ 8).

Defendant Equifax Information Services LLC ("defendant Equifax") is a Georgia limited liability company with its principal office at 1550 Peachtree Street, Atlanta, Georgia. (Am.Compl., ¶ 9).

Defendants Experian, Trans Union and Equifax are all consumer reporting agencies as defined in the Fair Credit Reporting Act ("FCRA"), regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties for

Not Reported in F.Supp.2d                                                                                  Page 2
Not Reported in F.Supp.2d, 2005 WL 1514221 (D.N.J.)
**(Cite as: 2005 WL 1514221 (D.N.J.))**

monetary compensation. (*Id.*)

*Facts*

In or about 1974, defendant Chase issued to plaintiff Carroll Campbell a Chase Platinum Visa credit card, number 4305 8703 8110 1864 (the "1864 card"). (*See* Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts ("Plaintiffs' 56.1 Facts"), ¶ 7). Plaintiff Carolyn Campbell was an authorized user of the 1864 card, however, she was not a co-obligor. (*Id.*) Plaintiffs allege that on November 7, 1999, plaintiffs mailed to defendant Chase a check, number 5211, in the amount of $250.00, payable to Chase, in payment for their monthly bill which was due on November 21, 1999. (Plaintiffs' 56.1 Facts, ¶ 8). On December 6, 1999 defendant Chase advised plaintiffs via letter that the 1864 card account was past due. (*Id.*, ¶ 10; Defendant Chase Br. at 2). In response, on December 9, 1999, Carroll Campbell faxed a letter to defendant Chase advising it that the November 1999 check had cleared plaintiffs' bank on November 12, 1999. (Plaintiffs' 56.1 Facts, ¶ 11; Dec. 9, 1999 Fax, attached to Thomson-Morris Affidavit as Exh. 3). Mr. Campbell also enclosed a copy of the November check and requested an "explanation and a copy of a credit report showing that this has been corrected." (*Id.*) On December 15, 1999, defendant Chase acknowledged receipt of Mr. Campbell's dispute and informed him that it was researching his inquiry. (*See* Dec. 15, 1999 letter, attached to Thomson-Norris Aff. as Exh. 4). After receiving further correspondence from defendant Chase that it was unable to decipher the information on the faxed copy of the check, Carolyn Campbell forwarded to defendant Chase copies of the front and back of cancelled check number 5211 which represented the November 1999 payment for the 1864 card account. (*See* Jan. 3, 2000 correspondence, attached to Thomson-Norris Aff. as Exh. 6).

*2 Defendant Chase alleges that after completing its investigation, it was able to confirm that it received Carroll Campbell's check on or about November 21, 1999, however, because he failed to write his account number on the check, the payment was mis-posted. (*See* Defendant Chase Br. at 3). In January 2000, defendant Chase sent Carroll Campbell a billing statement which reflected that Chase had reversed all late, finance and over limit charges and had credited the November 1999 payment as timely. (*Id.*;

Plaintiffs' 56.1 Facts, ¶ 13). According to plaintiffs, they closed on a mortgage refinance loan with Stanley Capital Mortgage Company, Inc. on January 20, 2000. (Plaintiffs' 56.1 Facts, ¶ 14). When doing so, plaintiffs consolidated an existing first mortgage and an existing second mortgage, at a rate of 10% per annum on a principal mortgage amount of $216,000.00. (*Id.*) Plaintiffs allege that at this time, they also "desired to obtain a new second mortgage or home improvement loan in order to perform some necessary improvements on their home, including a new roof and gutters, new back porch, and kitchen renovations, but plaintiffs were told by Mr. Steve Graber of Stanley [Capital Mortgage Company, Inc.] to wait a month or two when the rates would be more favorable." (*Id.*) Plaintiffs did so and contacted Stanley Capital Mortgage Company, Inc. in March of 2000. (*Id.*) However, Mr. Campbell was informed that Steve Graber no longer worked for Stanley and their financing requests were denied. (*Id.*) In March 2000, plaintiffs paid the balance on the 1864 card in full. (Plaintiffs' 56.1 Facts, ¶ 15).

In April 2000, plaintiffs allege that they received a promotional letter from First Union Bank ("First Union") advising plaintiffs that they had been "pre-approved for a home equity loan at a rate of 8.49% with no closing costs." (Plaintiffs' 56.1 Facts, ¶ 16). On April 26, 2000, plaintiffs went to a First Union branch in Bloomingdale, New Jersey in order to apply for a home equity mortgage loan. (*Id.*) According to plaintiffs, "Heidi Carfello of First Union checked both of their credit histories by computer and said it 'looks good.'" (*Id.*) Plaintiffs claim that shortly thereafter, they received a Good Faith Estimate, dated April 29, 2000, in the mail. (*Id.*) However, on May 17, 2000, plaintiffs received a letter from First Union denying their request for a loan. (*See* May 17, 2000 letter from First Union, attached to Carolyn Campbell certification (Campbell Cert.") as Exh. 5). The May 17, 2000 letter stated, *inter alia*, that Trans Union National Consumer Relations Center was the consumer reporting agency which provided First Union with information "that in whole or part influenced [its] decision." (*Id.*) On behalf of she and her husband, Mrs. Campbell called defendant Trans Union on May 17, 2000 and disputed the delinquencies and requested copies of both Carroll and Carolyn Campbells' credit reports. (Plaintiffs' 56.1 Facts, ¶ 18). Thereafter, plaintiffs received Trans Union Report Number 100JH3261-001, dated May 17, 2000, which was a consumer

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                                Page 3
Not Reported in F.Supp.2d, 2005 WL 1514221 (D.N.J.)
**(Cite as: 2005 WL 1514221 (D.N.J.))**

report for Carroll C. Campbell. (*See* Carroll Campbell Consumer Report, attached to Campbell Cert. as Exh. 6). The report stated that the 1864 card account had a "maximum delinquency of 1201 days occurred in 11/1999." (*Id*)

*3 On June 2, 2000, Mrs. Campbell called defendant Chase and informed them of the loan denial by First Union, which was allegedly influenced by the Trans Union credit report. The Chase representative referred Carolyn Campbell to Stella Walker, an Executive Correspondent of defendant Chase. Per Ms. Walker's instructions, Carolyn Campbell faxed a copy of defendant Trans Union's credit report to Ms. Walker's attention at Chase. (*See* June 2, 2000 fax to Stella Walker, attached to Campbell Cert. as Exh. 7). Defendant Chase immediately complied with plaintiffs' request to correct the information being furnished to the credit reporting agencies by sending a "Bullseye Report" to defendant Trans Union, defendant Experian and defendant Equifax, "instructing them to update their internal systems and report the account as 'Open, Current Account--With No Delinquencies.' " (Defendant Chase Br. at 3-4; Bullseye Report, attached to Thomson-Norris Aff. as Exh 9).

Also on June 2, 2000, Carroll Campbell received a letter from MBNA America advising him that it had reduced his credit line to $24,000. (*See* June 2, 2000 MBNA letter, attached to Campbell Cert. as Exh. 8). MBNA advised that this decision was based in part on information provided by the credit reporting agency, defendant Experian. (*Id*) Some days later, plaintiffs received Trans Union Credit Report Number 100J113261-004, dated June 9, 2000, which detailed the following for the 1864 card account:

  Status as of 3/2000: Paid or Paying as Agreed In
  Prior 48 months from date paid never late

On June 14, 2000, Carolyn Campbell called defendant Experian and disputed the delinquent Chase account information. (Campbell Cert., ¶ 26). In response to her request, defendant Experian forwarded a copy of Experian Report 3259560448, Carroll Campbell's credit report. (*Id*) The comments posted adjacent to the 1864 card account read: "Status: open/current, was past due 150 days Account History: 150 days as of 12-1999. As of 12-2006, this account is scheduled to go to a positive status." (*See* Experian Report # 3259560448, attached

to Campbell Cert. as Exh 9). Carolyn Campbell called defendant Experian on June 20, 2000 and disputed the 1864 card account delinquency. (Campbell Cert., ¶ 27). On June 23, 2000, plaintiffs claim that they received another Experian Report which indicated that defendant Chase had verified in June 2000 the delinquent history on the 1864 card account and that the aforementioned delinquent status would remain on Mr. Campbell's Experian Credit Report. (*Id*) Defendant Chase maintains that the credit report to which plaintiffs refer does not show that Chase verified any delinquent history Experian may have been reporting on the 1864 card account. (*See* Defendant Chase's Response to Plaintiffs' 56.1 Facts, ¶ 25). Carolyn Campbell contacted defendant Experian on June 29, 2000 and once again disputed the information on the report. Shortly thereafter, plaintiffs received Experian Report number 2588813814, which detailed the following for the 1864 card account:

  *4 Status: open/never late.
  This item was verified on 6-2000 and remained unchanged.

(*See* Experian Report Number 2588813814, Campbell Cert., Exh. 11). Plaintiffs claim that the "remained unchanged" language in the report was "confusing because the reporting on Account 1864 had indeed changed from 150 days late as of 12-1999 on the June 14, 2000 report to completely clear on this June 29, 2000 report." (Campbell Cert., ¶ 28).

On August 23, 2000, Carolyn Campbell allegedly called defendant Chase and, after asking to speak to a supervisor, was connected with Farrah Tsosie. (Campbell Cert., ¶ 31). At Ms. Tsosie's request, Mrs. Campbell faxed nine pages of information which detailed the Campbells' alleged credit report errors. Carolyn Campbell included the following in her letter to Ms. Tsosie:

  As a result of your sloppy clerical records, our previously outstanding credit rating (28 acct. "never late") has been practically destroyed, reaping disasterous [sic] results even now. This morning I was notified via phone conversation that DiTech (GMAC Mortgage Corp.) had also received the same faulty credit information from Experian.
  I believe it is fully Chase's responsibility to correct these errors, contact all agencies who have access to their records, and to undo all the harm they have done to us by making it impossible for us to secure any financial relief.

> My previous written correspondence to Kathleen O'Hara and Stella Walker has gone unacknowledged. This time I am expecting to receive a written report detailing what action your company has taken on our behalf.

(*See* letter to Ms. Tsosie, attached to Campbell Cert. as Exh. 13).

Plaintiffs allege that on August 24, 2000, Carolyn Campbell "called Chase and attempted to speak to Ms. Tsosie; however, the name was not recognized." (Campbell Cert., ¶ 33). Carolyn Campbell called defendant Chase again and spoke to Kim Turner, who allegedly advised Campbell that "she had authority and could help." (*Id*, ¶ 34). Plaintiffs claim that Carolyn Campbell summarized the dispute for Ms. Turner and faxed her the relevant information. [FN1] (*Id; see also* documents faxed to Kim Turner, attached to Campbell Cert. as Exh. 14). Plaintiffs claim that "as an accommodation, Ms. Turner arranged for [plaintiffs] to reactivate Account 1864 with a $9,900 cash advance, which was recorded as a balance transfer and sent to [plaintiffs] in the form of a check with that amount debited to Account 1864." (Campbell Cert., ¶ 34).

> FN1. Included in these faxed documents was a request by Carolyn Campbell to have her and her husband's names removed from their son's, Daniel Campbell, Chase Account (Number 4226-6106-5103-7109). (Campbell Cert., ¶ 35).

On August 25, 2000, plaintiffs received a letter from Aspire Visa denying their credit card application (*See* Aug. 17, 2000 Aspire Visa letter, attached to Campbell Cert. as Exh. 15). The letter informed plaintiffs that their application was denied "either wholly or partly because of information obtained" from defendant Equifax. (*Id*) Plaintiffs also claim that the applications that they had submitted via the Internet to DiTech.com and Lendingtree.com were denied because of the incorrect adverse information contained in Carroll Campbell's credit report. (Campbell Cert., ¶ 39a).

*5 On August 28, 2000, Chase sent another Bullseye Report to defendants Trans Union, Experian and Equifax, instructing the agencies to "report the account as 'open, current Account--with no delinquent history.' " (*See* Aug. 28, 2000 Bullseye Report, attached to Thomson-Norris Aff. as Exh. 11). Plaintiffs received a letter from defendant Chase, dated August 28, 2000, which stated, *interalia*:

> We have processed an adjustment to our credit reporting agencies to have your account reported as: an open, current account with no delinquent history. Please allow two to three weeks for all of our credit reporting agencies to update their files.

(*See* Aug. 28, 2000 letter from Chase, attached to Campbell Cert. as Exh. 17).

After receiving another promotion letter from First Union, plaintiffs returned to the Bloomingdale branch and met with Danielle Jaust in order to complete a preliminary application for a mortgage refinance loan. (Campbell Cert., ¶ 42). This application was denied on September 7, 2000. (*See* Campbell Cert., ¶ 46; *see also* Sept. 7, 2000 letter from First Union, attached to Campbell Cert. as Exh. 21).

On October 6, 2000, Carolyn Campbell contacted defendant Trans Union and requested a copy of Carroll Campbell's credit file. (Plaintiffs' 56.1 Facts, ¶ 33). Trans Union Credit Report number 100JH3261-007 stated the following with respect to the 1864 card account:

> Status as of 03/2000: paid or paying as agreed in prior 48 months from date paid: 1 time 90 or more days late maximum delinquency of 90+ days occurred in 06/1999 [FN2]

> FN2. In addition, plaintiffs' sons' account, 3901, was listed as three times 30 days late and Carroll Campbell was not identified as a co-signer on this account. (*Id.*) This account does not form the basis of plaintiffs' complaint, nor is it included in the Complaint or the Amended Complaint. Therefore, as only the 1864 card account served as the basis for plaintiffs' claims, the Court will not address any arguments posed regarding plaintiffs' son's account(s).

(*See* Trans Union Credit Report number 100JH3261-007, attached to Campbell Cert. as Exh. 27). On December 20, 2000, plaintiffs issued letters to defendants Trans Union, Equifax and Experian, requesting that each reporting agency correct the "erroneous delinquent history" on the 1864 card account as well as remove plaintiffs' son's credit card accounts from plaintiffs' credit files. (Plaintiffs' 56.1

Not Reported in F.Supp.2d                                                                                       Page 5
Not Reported in F.Supp.2d, 2005 WL 1514221 (D.N.J.)
**(Cite as: 2005 WL 1514221 (D.N.J.))**

Facts, ¶ 35). Defendant Trans Union sent a letter to plaintiffs on December 27, 2000 which stated, *inter alia*, that it was investigating the disputed information and was going to "contact the parties who reported the information and ask them to verify its accuracy." (*See* Dec. 27, 2000 Trans Union letter, attached to Campbell Cert. as Exh. 32). On December 29, 2000, defendant Equifax informed plaintiffs via letter that "the following accounts are not reporting on the credit file 4426610651037190 4226610659533901 and 430587038180 **1864**." (Emphasis added). (*See* Dec. 29, 2000 Equifax letter, attached to Campbell Cert., Exh. 33). Defendant Experian responded to plaintiffs' request and informed them that the account numbers contained in the December 20, 2000 letter were not found. The Court notes that the account number that plaintiffs typed on the report adjustment request forms to the credit reporting agency defendants was not the accurate account number for the 1864 card account. Plaintiffs typed the following Chase Account Number: 4305-8703-8180-1864. However, the accurate Chase Account Number is 4305-8703-8110-1864. This typographical error made by plaintiffs is the likely explanation for the inability of Experian and Equifax to respond effectively to plaintiffs' December 20, 2000 letter.

*6 Defendant Trans Union forwarded a copy of Trans Union Credit Report Number 100JH3261-012 to plaintiffs on January 3, 2001. Defendant Trans Union reported that it had completed its reinvestigation and found that the 1864 card account was "verified, no change." (*See* Jan. 3, 2001 Trans Union Report, attached to Campbell Cert. as Exh. 35). However, the second page of this report stated the following:

Status as of 01/2001: paid or paying as agreed in prior 48 months from date paid: 2 times 90 or more days late maximum delinquency of 901 days occurred in 06/1999

(*Id.*)

On January 23, 2001, defendant Trans Union forwarded a copy of Carroll Campbell's credit report, Trans Union Credit Report Number 100JH3261-017, to plaintiffs. (*See* Jan. 23, 2001 Trans Union Report, attached to Campbell Cert. as Exh. 38). This report listed the information detailed above with respect to the 1864 card account and noted that creditors may consider this information adverse. (*Id.*) Unhappy with the information contained in this report, Carolyn Campbell sent a Fax to Stephen Walsh at Trans Union on February 14, 2001. (Plaintiffs' 56.1 Facts, ¶ 39). Mrs. Campbell Faxed to defendant Trans Union a copy of the August 28, 2000 letter from defendant Chase indicating that it had processed an adjustment to the credit reporting agencies. (*Id., see also* Feb. 14, 2001 Fax to Stephen Walsh, attached to Campbell Cert. as Exh 40). On February 15, 2001, defendant Trans Union forwarded Trans Union Credit Report Number 100JH3261-020 to plaintiffs. (*See* Trans Union Credit Report Number 100JH3261-020, attached to Campbell Cert., Exh. 42). The remarks following the 1864 card account stated:

Status as of 01/2001: paid or paying as agreed In prior 48 months from date verif'd never late

(*Id*)

In a report from defendant Experian dated November 24, 2001, the 1864 card account remarks detailed the following:

Status: closed/current, was past due 50 days.

Account history: 150 days as of 11-1999

(*See* Experian Report Number 1393423094, attached to Campbell Cert. as Exh. 44). In a letter faxed to the Credit Bureau Update Department of defendant Chase on December 6, 2001, plaintiffs stated that they had "called Experian to question the info-date on their report (info verified 6-2000), and referred to the Chase letter of 8/28/00 supposedly sent to all credit agencies." Plaintiffs alleged that a representative from defendant Experian "confirmed that [the] acct. had just been updated by Chase on 11/28/01 and still showed the acct to be 150 days late as of 11/99." (*See* Dec. 6, 2001 letter from plaintiffs to Chase, attached to Campbell Cert. as Exh. 48). Defendant Chase responded via letter dated December 6, 2001. The letter stated, *inter alia*:

We have processed an adjustment to our credit reporting agencies to have your account reported as closed with a balance and no delinquency. Please allow six to eight weeks for all credit reporting agencies to update their files.

*7 (*See* Dec. 6, 2001 letter from Chase to plaintiffs, attached to Campbell Cert., as Exh. 50).

Plaintiffs then decided to contact defendant Trans Union to ensure that it had corrected their credit information. In response, defendant Trans Union issued a letter to plaintiffs on December 17, 2001 which stated, *inter alia*, that it was "unable to locate [the] credit report" for Carroll Campbell. (*See* Dec.

Case 1:08-cv-00985   Document 26-5   Filed 06/24/2008   Page 7 of 15

Not Reported in F.Supp.2d                                                                                    Page 6
Not Reported in F.Supp.2d, 2005 WL 1514221 (D.N.J.)
**(Cite as: 2005 WL 1514221 (D.N.J.))**

17, 2001 letter from Trans Union, attached to Campbell Cert. as Exh. 54). However, that same day, another letter was issued to plaintiffs which detailed Carroll Campbell's credit score as "1680". (*See* Dec. 17, 2001 Trans Union Consumer Credit Score, attached to Campbell Cert. as Exh. 55). According to this report, the maximum possible score is +934. (*Id.*) The credit report indicated that the 1864 card account status as of 09/2000 was "paid or paying as agreed in prior 44 months from date closed never late." (*Id.*) Trans Union Credit Report Number 107666456 dated March 13, 2002 contained no information for the 1864 card account. (*See* Trans Union Credit Report Number 107666456, attached to Campbell Cert. as Exh. 71).

Later that month, defendant Equifax issued a copy of Carroll Campbell's credit report to plaintiffs. Equifax Report Number 135430274, dated December 27, 2002, stated that the 1864 card account's previous payment history was "1 time 90 + days late." (*See* Equifax Report Number 135430274, attached to Campbell Cert. as Exh. 58). The remarks on this account noted "consumer disputes--reinvestigation in process. Account closed at consumer's request." Identical remarks and status of this account were also reported in the January 3, 2002 and February 26, 2002 reports issued to plaintiffs. (*See* Equifax Report Numbers 200337261 and 205225938, attached to Campbell Cert. as Exhs. 59 and 67).

In response to a letter written to the CEO of Chase Manhattan Bank by plaintiffs detailing their frustrations, Millicent Vassell, the Assistant Vice President of defendant Chase, issued a letter to plaintiffs on February 4, 2002 which included the following:
  Mr. Campbell, a review of records indicates that we did not receive the full minimum payments due on your statements for your account ending in 1864, from April 1999 through June 1999. Therefore, a portion of the delinquency that was showing on your credit reports was valid.
(*See* Feb. 4, 2002 letter from Millicent Vassell, attached to Campbell Cert. as Exh. 63). [FN3]

  FN3. Additionally, as a courtesy, defendant Chase "removed all delinquencies related to the account ending in 3901." (*Id.*) This is the account belonging to plaintiffs' son Daniel.

The instant Complaint was filed on July 19, 2002. On October 15, 2002, plaintiffs filed an Amended Complaint and Jury Demand. The Amended Complaint alleges claims against defendant Chase for violations of the Fair Credit Billing Act, 15 U.S.C. § 1666, *et seq.* and for breach of contract. (*See* Am. Compl., ¶¶ 58-62, 82-84). The Complaint also alleges claims against all defendants under the Fair Credit Reporting Act, 15 U.S.C. § 1682, *et seq.* and the New Jersey Fair Credit Reporting Act, N.J.S.A. 56:11-28. (*See* Am. Compl., ¶¶ 63-73, 85-86). Finally, plaintiffs allege common law claims against all defendants for intentional infliction of emotional distress, negligent infliction of emotional distress, misrepresentation and injurious falsehood. (*See* Am Compl., ¶¶ 73-81). Defendants Chase and Trans Union are presently moving for partial summary judgment. Defendants Equifax and Experian are moving for summary judgment on all counts of the Complaint. Plaintiffs have cross-moved for partial summary judgment.

*DISCUSSION*
*I Standard of Law Applied to a Motion for Summary Judgment*

\*8 Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.) (*enbanc*), *cert dismissed,* 483 U.S. 1052 (1987). In deciding a motion for summary judgment, a court must view the facts in the light most favorable to the nonmoving party and must resolve any reasonable doubt as to the existence of a genuine issue of fact against the moving party. *Continental Ins. Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982). The moving party has the burden of establishing that there are no genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

The Supreme Court has stated that, in applying the criteria for granting summary judgment:
  [t]he judge must ask   not whether ... the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:08-cv-00985   Document 26-5   Filed 06/24/2008   Page 8 of 15

Not Reported in F.Supp.2d                                                                                                    Page 7
Not Reported in F.Supp.2d, 2005 WL 1514221 (D.N.J.)
**(Cite as: 2005 WL 1514221 (D.N.J.))**

presented. The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict....
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. (Id.)

*II. Plaintiffs' Fair Credit Billing Act Claim*

The Fair Credit Billing Act ("FCBA") was enacted to resolve problems which arise as the result of billing errors. Title 15 U.S.C. § 1666(a) states the following:
 If a creditor, within sixty days after having transmitted to an obligor a statement of the obligor's account in connection with an extension of consumer credit, receives ... a written notice ... from the obligor in which the obligor -
 (1) sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor,
 (2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and
 (3) sets forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error, the creditor shall, unless the obligor has, after giving such written notice and before the expiration of the time limits herein specified, agreed that the statement was correct -
 *9 (A) not later than thirty days after the receipt of the notice, send a written acknowledgment thereof to the obligor, unless the action required in subparagraph (B) is taken within such thirty-day period, and (B) not later than two complete billing cycles of the creditor (in no event later than ninety days) after the receipt of the notice and prior to taking any action to collect the amount, or any part thereof, indicated by the obligor under paragraph (2) either -
 (I) make appropriate corrections in the account of the obligor, including the crediting of any finance charges on amount erroneously billed, and transmit to the obligor a notification of such corrections and the creditor's explanation of any change in the amount indicated by the obligor under paragraph (2) and, if any such change is made and the obligor so requests, copies of documentary evidence of the obligor's indebtedness; or
 (ii) send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account of the obligor was correctly shown in the statement and, upon request of the obligor, provide copies of documentary evidence of the obligor's indebtedness. In the case of a billing error where the obligor alleges that the creditor's billing statement reflects goods not delivered to the obligor or his designee in accordance with the agreement made at the time of the transaction, a creditor may not construe such amount to be correctly shown unless he determines that such goods were actually delivered, mailed, or otherwise sent to the obligor and provides the obligor with a statement of such determination.
 After complying with the provisions of this subsection with respect to an alleged billing error, a creditor has no further responsibility under this section if the obligor continues to make substantially the same allegation with respect to such error.

Plaintiffs claim that defendant Chase violated the FCBA because of its "continuous reporting of the Account as delinquent in spite of Plaintiffs' many verbal and written notifications to the Chase Defendants of the Erroneous Information." (See Compl., ¶ 61.) In accordance with this statute, plaintiffs had 60 days after defendant Chase issued Carroll Campbell's billing statement to provide written notice to defendant Chase of any billing error in said statement. (See 15 U.S.C. § 1666(a)). Defendant Chase then had 30 days to send a written acknowledgment to Carroll Campbell. (See 15 U.S.C. § 1666(a)(3)(A)). Following this, defendant Chase had two billing cycles, but no later than 90 days, to either confirm and correct the billing error or to deny that a billing error occurred. (See 15 U.S.C. § 1666(a)(3)(B)).

Plaintiffs claim that they "provided Chase Defendants with several written notifications of their billing error in accordance with the provisions of the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:08-cv-00985   Document 26-5   Filed 06/24/2008   Page 9 of 15

Not Reported in F.Supp.2d                                                                                                Page 8
Not Reported in F.Supp.2d, 2005 WL 1514221 (D.N.J.)
**(Cite as: 2005 WL 1514221 (D.N.J.))**

FCBA." (*See* Compl., ¶ 60). It is undisputed that plaintiffs wrote to Chase on December 9, 1999 to report the billing error. It is also undisputed that on December 15, 1999, defendant Chase acknowledged plaintiffs' written dispute. On January 27, 2000, after defendant Chase had completed its investigation into this matter, it reversed all charges relating to the dispute. This correction was clearly recorded on Carroll Campbell's January 2000 statement. (*See* Jan. 27, 2000 Statement, attached to Thomson-Norris Aff. as Exh. 7). Thus, it is undisputed that defendant Chase did not violate 15 U.S.C. § 1666(a) but, rather, credited the disputed amount and fees within the statutory time frame. Accordingly, defendant Chase's motion for summary judgment is granted with respect to plaintiffs' FCBA claim.

*III. Plaintiffs' Fair Credit Reporting Act Claims*

*10 Plaintiffs claim that (1) defendant Chase violated the Fair Credit Reporting Act ("FCRA") by failing to promptly inform the credit reporting agencies of inaccuracies in the credit report and failing to promptly provide corrected information to said agencies; and (2) defendants Experian, Equifax and Trans Union (the "defendant Credit Reporting Agencies" or "CRAs") violated the FCRA because said agencies "continually added, stored, maintained and disseminated credit data about the plaintiffs which was false, erroneous and misleading without employing procedures to insure the maximum possible accuracy of the information posted to Plaintiffs' consumer reports and disseminated." (*See* Compl., ¶¶ 64, 68). Furthermore, plaintiffs allege that the defendant Credit Reporting Agencies "assured Plaintiffs that appropriate corrections would be and were made to Plaintiffs' consumer reports," however, "such corrections were not made and/or were made in such a way that Defendants knew such actions would not correct Plaintiffs' complaints." (*Id.*, ¶ 69)

*Plaintiffs' Fair Credit Reporting Act Claims Against the Defendant CRAs* [FN4]

> FN4. It is undisputed that defendants Experian, Equifax and Trans Union are "consumer reporting agencies" as defined in 15 U.S.C. § 1681a(f) and the credit reports that have been produced are "consumer reports" within the terms of 15 U.S.C. § 1681(d). It is also undisputed that plaintiffs are "consumers" as defined in 15 U.S.C. § 1681a(c).

The Third Circuit has stated the following with respect to the function of the FCRA:

> The FCRA was enacted in order to ensure that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which his fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. The FCRA was prompted by congressional concern over abuses in the credit reporting industry. In the FCRA, Congress has recognized the crucial role that consumer reporting agencies play in collecting and transmitting consumer credit information, and the detrimental effects inaccurate information can visit upon both the individual consumer and the nation's economy as a whole.

*See Cushman v. Trans Union Corp.,* 115 F.3d 220, 223 (3d Cir.1997) (citing *Philbin v. Trans Union Corp.,* 101 F.3d 957, 962 (3d cir.1996) (internal citations omitted). If the accuracy of the information contained within the report issued by the consumer reporting agencies is disputed by a consumer, 15 U.S.C. § 1681i, which details procedures for "reinvestigation" by the CRA, is triggered. If a person is *negligent* in failing to comply with the requirements of the FCRA, the Act imposes civil liability for actual damages, costs, and attorney's fees. (*See* 15 U.S.C. § 1681o). Moreover, if a person *willfully* fails to comply with any requirement imposed under the FCRA, the Act imposes liability for punitive damages. (*See* 15 U.S.C. § 1681n(a)(2)).

Plaintiffs claim that the defendant CRAs (Equifax, Experian and Trans Union) negligently and willfully violated 15 U.S.C. §§ 1681e(b) and 1681i by failing to maintain reasonable procedures and failing to investigate the matter properly. The plaintiffs and the defendant CRAs move for summary judgment on these issues.

*A. Title 15 U.S.C. § 1681e(b)*

*11 The "Accuracy of report" section of the FCRA states:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                  Page 9
Not Reported in F.Supp.2d, 2005 WL 1514221 (D.N.J.)
**(Cite as: 2005 WL 1514221 (D.N.J.))**

procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b). In addition to proffering the existence of inaccurate information, in order to recover under § 1681e(b) plaintiffs must also establish (1) the proffer of inaccurate information was due to the defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (2) the consumer suffered injury; and (3) the injury was caused by the inclusion of the inaccurate entry. See *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir.1996) (citing *Morris v. Credit Bureau of Cincinnati, Inc.*, 563 F.Supp. 962, 967 (S.D.Ohio 1983); *Bryant v. TRW, Inc.*, 487 F.Supp. 1234, 1238 (E.D.Mich.1980), aff'd,689 F.2d 72 (6th Cir.1982). [FN5]

> FN5. Under the FCRA, an action to enforce any liability may be brought within "two years after the date of discovery by the plaintiff of the violation that is the basis for such liability." (See 5 U.S.C. § 1681p(1)). "Liability arises under § 1681(b) when the consumer reporting agency issues an inaccurate consumer report." See *Lawrence v. Trans Union LLC*, 296 F.Supp.2d 582, 587 (E.D.Pa.2003). Moreover, "each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies." (*Id*, citing *Jaramillo v. Experian Info. Solutions, Inc.*, 155 F.Supp.2d 356, 359-60 (E.D.Pa.2001)). Therefore, claims which relate to the inaccuracies in the credit reports which occurred prior to July 19, 2000 are time barred.

Accuracy

Defendants Experian and Equifax argue that plaintiffs have not overcome the initial hurdle which is to establish that inaccurate information was in fact reported. (*See* Equifax Br. at 12; Experian Br. at 6). The Complaint addresses only the disputed accuracy of the 1864 card account. As defendant Experian argues in its brief, plaintiff Carolyn Campbell has admitted that plaintiffs were late in paying the 1864 card account in April, May and June 1999. When asked if plaintiffs were ever late in making payments on this account, Carolyn Campbell testified: "Yes....

But not in 11/99, and the account was late in April, May, and June Pointed out to us in '99, by the lovely Christine Bennet's letter, but we paid all the late fees. Excuse me, one day late, three days late, five days late. It did not appear on credit reports for 10/99. It shows the account clear, and then suddenly, this date gets played back and forth, back and forth." (*See* Carolyn Campbell Dep. 49:21-50:8, attached to Kowal Aff. as Exh. D; *see also* Carroll Campbell Dep. 60:12-65:22).

A review of the reports as well as plaintiffs' testimony indicates that there are genuine issues of material fact as to whether the information on the credit reports was in fact accurate. There are also unresolved issues of material fact as to whether there was a lag in reporting the April, May and June 1999 delinquencies by the CRAs.

Reasonable Procedures

The defendant CRAs can only be held liable for inaccuracies which are the result of the defendants' failure to follow reasonable procedures. *Philbin*, 101 F.3d at 964. "Reasonable procedures are those that a reasonably prudent person would [undertake] under the circumstances." *Philbin*, 202 F.3d at 963 (quoting *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C.Cir.1984) (internal quotations omitted). "Judging the reasonableness of a [credit reporting] agency's procedures involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." (*Id*) In *Philbin*, the third Circuit determined that the "plaintiff ha[d] produced sufficient evidence to survive summary judgment on the issue of reasonable procedures merely by demonstrating that there were inaccuracies in the [credit] report." *Philbin*, 101 F.3d at 966. Thus, because any analysis of reasonable procedures hinges on the existence of inaccuracies in the credit report(s), the Court is unable to reach a conclusion at this juncture.

*12 Accordingly, because genuine issues of material fact remain with respect to plaintiffs' 15 U.S.C. § 1681e(b) claim, the parties' cross-motions for summary judgment on this issue are denied.

*B. Title 15 U.S.C. § 1681i*

This section of the FCRA states in relevant part:

Not Reported in F.Supp.2d    Page 10
Not Reported in F.Supp.2d, 2005 WL 1514221 (D.N.J.)
**(Cite as: 2005 WL 1514221 (D.N.J.))**

If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

15 U.S.C. § 1681i(a)(1)(A). Plaintiffs allege that the defendant CRAs failed to conduct a proper reinvestigation but, rather, engaged in a "limited, inadequate verification with the creditor, Chase." (Plaintiffs' Reply Br. at 10). The Court will examine the investigations conducted by each of the defendant CRAs in turn. [FN6]

> FN6. "Liability arises under 1681i when the consumer reporting agency allegedly violates its duty under the FCRA to reinvestigate." See Lawrence, 296 F.Supp.2d 582, 587.

1. Defendant Equifax' Reinvestigations

On December 20, 2000, plaintiffs issued a letter to Equifax which disputed the information contained within their credit reports. (See Dec. 20, 2000 letter to Equifax, attached to Campbell Cert. as Exh. 30). In this letter, plaintiffs incorrectly transcribed the 1864 card account number. The actual number on the account is 4305-8703-8110-1964, however, plaintiffs wrote 4305-8703-8180-1864 in the letter. On December 29, 2000, Equifax wrote to plaintiffs informing them of the results of its reinvestigation. The letter stated that "Equifax contacted each source directly and our investigation is now completed." The results of this investigation was that the aforementioned account (as transcribed inaccurately) was not reporting on the credit file. [FN7] Equifax also included an updated copy of plaintiff Carolyn Campbell's credit file.

> FN7. Only the reinvestigation letter sent to Carolyn Campbell is attached to the exhibits presented before this Court. This Court assumes that the letter sent to Carroll Campbell contained similar treatment of this dispute.

On December 27, 2001, Equifax issued another reinvestigation report to plaintiffs, this time in response to a second dispute which was highlighted in either the January 8, 2001 or December 13, 2001 Carroll Campbell credit report. [FN8] (See Dec. 27, 2001 Equifax Reinvestigation Letter, attached to Campbell Cert. as Exh. 58). The reinvestigation report stated the following with respect to the 1864 card account: "THIS CREDITOR HAS VERIFIED TO EQUIFAX THAT THE CURRENT STATUS IS BEING REPORTED CORRECTLY. THIS CREDITOR HAS VERIFIED TO EQUIFAX THAT THE PRIOR PAYING HISTORY IS BEING REPORTED CORRECTLY." (Id.)

> FN8. Plaintiffs admit in their brief that the December 27, 2001 reinvestigation report was prompted by a dispute which was made via telephone by plaintiffs that same day. (See Plaintiffs' Br. at 11)

The final dispute with Equifax was waged by plaintiffs on February 21, 2002. [FN9] On February 26, 2002, Equifax issued its reinvestigation report to plaintiffs for the alleged inaccuracies on Carroll Campbell's credit report. (See Feb. 26, 2002 Equifax Reinvestigation letter, attached to Campbell Cert. as Exh. 67). The status of the 1864 card account which was reported at the time was "1 time 90 + days late." (Id.) The reinvestigation report stated the following with respect to the 1864 card account, "THIS CREDITOR HAS VERIFIED TO EQUIFAX THAT THE CURRENT STATUS IS BEING REPORTED CORRECTLY. THIS CREDITOR HAS VERIFIED TO EQUIFAX THAT THE PRIOR PAYING HISTORY IS BEING REPORTED CORRECTLY." (Id.)

> FN9. Plaintiffs claim that a telephone dispute was also made on January 3, 2002. Whether the January 3, 2002 telephone call was actually a "dispute" is a source of contention between the parties. Equifax issued no reinvestigation report after this telephone call and plaintiffs have proffered little information regarding the subject matter of this telephone call. (See Notes written on Dec. 27, 2001 Equifax Reinvestigation letter, attached to Campbell Cert. as Exh. 58).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                   Page 11
Not Reported in F.Supp.2d, 2005 WL 1514221 (D.N.J.)
**(Cite as: 2005 WL 1514221 (D.N.J.))**

*13 The Third Circuit has held that "in order to fulfill its obligation under § 1681i(a), a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information." See Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir.1997) (quoting Henson v. CSC Credit Servs., 29 F.3d 280, 286 (7th Cir.1994)) (internal citations omitted). Furthermore, the court stated

> [w]hether the credit reporting agency has a duty to go beyond the original source will depend on a number of factors. One of these is whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable. A second factor is the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer. Whatever considerations exist, it is for the trier of fact [to] weigh the[se] factors in deciding whether [the defendant] violated the provisions of section 1681i.

(Id.) Therefore, it is to be left to the trier of fact to determine if Equifax should have known that the source, Chase, was unreliable to the extent that it was not properly reporting the alleged reporting and billing errors. Moreover, deciding whether there were, in fact, any errors or whether the April, May and June 1999 late payments were the sole source of the unfavorable reported comments is also a task that is reserved for the trier of fact. Accordingly, this Court cannot grant summary judgment to either the plaintiffs or defendant Equifax on this claim for negligent noncompliance with § 1681i(a).

2. Defendant Experian's Reinvestigations

Plaintiffs' claim that on six occasions, beginning in June 2000, telephone disputes were made to defendant Experian about the 1864 card account. (See Plaintiffs' Opp. Br. at 11; see also Plaintiffs' Certified Answers to Defendant Experian's First Set of Interrogatories, ¶ 9, attached to Kowal Aff. as Exh. B). The first recorded dispute was on June 23, 2000. After receiving a copy of the June 14, 2000 credit report from Experian, Carolyn Campbell contacted defendant Experian and asked it to verify the information for the 1864 card account. (See Carolyn Campbell Dep., 82:3-9, attached to Kowal Aff., as Exh. D). Defendant Experian proffers that it initiated an investigation by contacting the source of the information, defendant Chase, which verified the late payment history. Defendant Experian alleges that it sent a confirmation of the reinvestigation to plaintiffs on June 23, 2000. (Defendant Experian Reply Br. at 6). In January 2001, defendant Experian sent plaintiffs a copy of a second reinvestigation report it conducted at plaintiff's request. Defendant Experian submits "no investigation was conducted as to Chase account 1864, as it was already reporting as 'never late.' " (Defendant Experian Reply Br. at 6). After the 1864 card account again appeared as "late" in a November 24, 2001 Experian report, plaintiffs sent a fax to Experian requesting that it correct the credit report. (See Carolyn Campbell Dep., 84:25-85:4). At that time, Carolyn Campbell was informed that Experian would investigate the dispute. (Id.; Defendant Experian Reply Br. at 6). Defendant Experian claims that it "updated the [1864] account per the letter" and confirmation was sent to plaintiffs on December 10, 2001. (Id.; see also Campbell Cert., Exh. 51 (1864 card account marked as open/never late)).

*14 It is evident that defendant Experian complied with plaintiffs' request each time it was contacted regarding a dispute on the 1864 card account. [FN10] Plaintiffs admit that there were no further delinquencies reported after the December 2001 incident. Thus, as there is no genuine issue of material fact as to the reinvestigation efforts of defendant Experian, this Court finds that it complied with the requirements of 15 U.S.C. § 1681i and did not violate this section of the FCRA. Accordingly, defendant Experian's motion for summary judgment on this issue is granted and plaintiffs' motion for summary judgment on same is denied.

> FN10. For the purpose of this motion, the only non-time barred claim relates to the November 21, 2001 dispute.

3. Defendant Trans Union's Reinvestigations

Plaintiffs allege that on May 17, 2000, in response to a loan denial from First Union, Carolyn Campbell phoned defendant Trans Union in order to dispute reported delinquencies and to request copies of both her and her husband's credit reports (See Plaintiffs' Supp. 56.1 Facts, ¶¶ 17-18) Several days later, plaintiffs received a copy of Trans Union Report

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 12
Not Reported in F.Supp.2d, 2005 WL 1514221 (D.N.J.)
**(Cite as: 2005 WL 1514221 (D.N.J.))**

Number 100JH3261-001, which was a copy of Carroll Campbell's credit report showing a negative history for the 1864 card account. (*Id.*, ¶ 19). Plaintiffs allege that on or about June 9, 2000, after making inquiries to defendant Chase about the alleged misreported information, Carolyn Campbell contacted Trans Union via telephone and requested another copy of Carroll Campbell's credit file. [FN11](*Id.*, ¶ 23). Although plaintiffs' opposition brief characterizes this telephone contact as a "telephone dispute," the content of this telephone call is not entirely clear and plaintiffs' other submissions indicate that the purpose of this call was simply to request "another copy of Mr. Campbell's credit file." (*See* Plaintiffs' Supp. 56.1 Facts, ¶ 22, *see also* Plaintiffs' Opp. Br. at 11). In either case, defendant Trans Union does not submit that it engaged in any reinvestigation measures as a result of this June 2000 telephone call. Moreover, because this occurred prior to June 20, 2000, claims which rely on this "dispute" are necessarily time barred.

>    FN11. Plaintiffs' opposition brief states that June 6, 2000 was the date that a dispute was reported to defendant Trans Union.

In early October 2000, plaintiffs received Trans Union Report Number 100JH3261-007, which was Carroll Campbell's credit report dated October 6, 2000. (Plaintiffs' Supp. 56.1 Facts, ¶ 24). On December 20, 2000, plaintiffs drafted a letter to Trans Union which disputed the information on the 1864 card account. [FN12] (*See* Dec. 20, 2000 letter to Trans Union, attached to Campbell Cert. as Exh. 40). On December 27, 2000, defendant Trans Union sent Carroll Campbell a letter advising him that Trans Union was investigating the disputed information. (Plaintiffs' Supp. 56.1 Facts, ¶ 36). On January 3, 2001, plaintiffs received Trans Union Report Number 100JH3261-012. (*Id.*, ¶ 37). The first page of this report indicated that the 1864 card account was "verified, no change." (*See* Trans Union Report Number 100JH3261-012, attached to Carolyn Campbell Cert. as Exh. 41). However, plaintiffs argue that there was in fact a change detailed on this report; the report stated that the account was "2 times 90 or more days late" rather than "1 time 90 days late," which was the status in the previously filed reports. (*Id.*, *see* Plaintiffs' Supp. 56.1 Facts, ¶ 37).

>    FN12. However, as described more fully above, the account number was not properly transcribed.

*15 After the January 23, 2001 Trans Union report detailed the same information, Carolyn Campbell sent a fax to Steven Walsh at defendant Trans Union. On February 15, 2001, Carroll Campbell's credit report presented the 1864 account as "verified never late." (*See* Trans Union Report Number 100JH3261-020, attached to Carolyn Campbell Cert. as Exh. 42). [FN13]

>    FN13. Plaintiffs submit that on or about December 12, 2001, Carolyn Campbell telephoned Trans Union and requested a credit report on both her and her husband "just to make sure they were in proper order because [Carroll Campbell's] credit report from Experian was still incorrectly showing delinquencies." (Carolyn Campbell Aff., ¶ 81). The events which followed pose no relevancy to the 1864 card account or plaintiffs claims pursuant to 15 U.S.C. § 1681i and, as such, will not be addressed by the Court.

Defendant Trans Union does not disclose any details about its reported reinvestigation. Furthermore, genuine issues of material fact exist as to whether disputes were filed with defendant Trans Union in each instance claimed by plaintiffs. Without this very crucial information, the Court is not in the position to adjudicate this matter on summary judgment. Because the record does not reflect the arguments waged by each party, the Court cannot possibly delve into the completeness of reinvestigation efforts, if any, that were undertaken by defendant Trans Union. Accordingly, because genuine issues of material fact exist, plaintiffs' and defendant Trans Union's cross-motions for summary judgment on this issue are denied.

*Plaintiffs' Fair Credit Report Act Claims Against Defendant Chase*

Plaintiffs allege that defendant Chase violated 15 U.S.C. § 1681s-2(b). This section of the FCRA imposes a duty on furnishers of information. Section 1681s-2(b) states, in relevant part:
>    After receiving notice pursuant to section 1682(a)(2) of this title of a dispute with regard to

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1514221 (D.N.J.)
**(Cite as: 2005 WL 1514221 (D.N.J.))**

Page 13

the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall -
(A) conduct an investigation with respect to the disputed information;
(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681(a)(2) of this title;
(C) report the results of the investigation to the consumer reporting agency; and
(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

Plaintiffs aver that defendant Chase sent two communications to defendants Experian, Equifax and Trans Union after having been notified of plaintiffs' disputes: the first Bullseye Report dated June 2, 2000 and the second Bullseye Report dated August 28, 2000. (See Plaintiffs' Opp. Br. at 20; see also Thomson-Norris Aff., ¶¶ 11, 13). Plaintiffs argue that defendant Chase has failed to meet the requirements of 1861s-2(b) because it did not respond to the defendant CRAs requests for verification. (See Plaintiffs' Opp. at 20-21; see also Plaintiffs' Reply Br. at 18-21). However, plaintiffs furnish no relevant evidence or support for this allegation; therefore, plaintiffs' motion for summary judgment on this claim must be denied.

*IV. Punitive Damages*

Title 15 U.S.C. § 1681n provides the following:
*16 Any person who wilfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of ... such amount of punitive damages as the court may allow.

In order to show willful noncompliance with the FCRA, plaintiffs must demonstrate that defendants "knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive." See Cushman, 115 F.3d 220, 226. In Cushman, the plaintiff argued that the credit reporting agency "adopted its reinvestigation policy either knowing that policy to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy contravened those rights." (Id. at 227). The Third Circuit held that if the plaintiff was able to prove such allegations, she would be awarded punitive damages.

As discussed in further detail in section III of this Opinion, this Court finds that genuine issues of material fact remain as to the conduct of the defendants. A reasonable jury could find that a knowing violation of the FCRA was the result of defendants' "parroting information received from other sources." See Cushman, 115 F.3d 220, 225 ("a reinvestigation that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute.") Therefore, defendants Experian, Equifax and Trans Union's motions for summary judgment on this issue are denied. [FN14]

> FN14. Although the Court granted defendant Experian's motion for summary judgment with respect to plaintiffs' 1681i claim, it denied the motion which related to the 1681e(b) claim because genuine issues of material fact remained as to that claim.

*V. Plaintiffs' Common Law Claims*

*A. Preemption of Plaintiff's Common Law Claims Pursuant to 15 U.S.C. § 1681h(e)*

Title 15 U.S.C. § 1681h(e) states the following:
Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

This Court has already determined that a reasonable juror could conclude that defendants Experian, Equifax and Trans Union acted willfully. Accordingly, defendants Experian and Equifax are

Not Reported in F.Supp.2d                                                                                                           Page 14
Not Reported in F.Supp.2d, 2005 WL 1514221 (D.N.J.)
**(Cite as: 2005 WL 1514221 (D.N.J.))**

not entitled to summary judgment on this issue. [FN15]

> FN15. Defendant Trans Union did not move for summary judgment on this issue.

*B. Preemption of Plaintiffs' Common Law Claims Pursuant to 15 U.S.C. § 1681t(b)(1)(F)*

By enacting Section 1681t(b)(1)(F), Congress "wanted to eliminate all state causes of action relating to the responsibilities of persons who furnish information to consumer reporting agencies." See *Jaramillo v. Experian Info. Solutions, Inc.*, 155 F.Supp.2d 356, 361 (E.D.Pa.2991). Title 15 U.S.C. § 1681t(b)(1)(F) provides, in pertinent part:

*\*17 No requirement or prohibition may be imposed under the laws of any State--with respect to any subject matter regulated under Section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies.*

Courts have consistently held that state law claims are preempted by this section of the FCRA. See *Purcell v. Universal Bank, N.A.*, 2003 WL 1962376, 5 (E.D. Pa. April 28, 2003) (citing *Riley v Gen. Motors Acceptance Corp*, 227 F.Supp.2d 1316, 1323 (S.D.Ala.2002); *Vasquez-Garcia v. Trans Union de Puerto Rico*, 222 F.Supp.2d 150 (D.P.R.2002)). Consistent with the language in the FCRA, this Court finds that plaintiffs' state law claims of misrepresentation, emotional distress, injurious falsehood and breach of contract, as they relate to defendant Chase, are preempted.

## CONCLUSION

Defendant Chase's motion for summary judgment is granted with respect to plaintiffs' FCBA claim. Plaintiffs' motion for summary judgment against defendant Chase for the alleged 15 U.S.C. § 1681s-2(b) violations is denied. The cross-motions with respect to plaintiffs' 15 U.S.C. § 1681e(b) claim against the defendants Equifax, Experian and Trans Union are denied as is plaintiffs' motion with respect to 15 U.S.C. § 1681i against the same defendants. Defendant Equifax and Trans Union's cross-motions on the 15 U.S.C. § 1681i claim are denied as well. Defendant Experian's cross-motion on the 15 U.S.C. § 1681i claim is granted. Defendants Experian, Equifax and Trans Union's motions for summary judgment on the issue of plaintiffs' entitlement to punitive damages are denied. Defendants Experian and Equifax's motions for preemption of plaintiffs' state common law claims are also denied. Finally, plaintiffs' state law claims of misrepresentation, emotional distress, injurious falsehood and breach of contract, as they relate to defendant Chase, are preempted and, therefore, are dismissed.

Not Reported in F.Supp.2d, 2005 WL 1514221 (D.N.J.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.