# ATTACHMENT 5

*Larson v Ford Credit*

**2007 WL 1875989**

Westlaw

Not Reported in F.Supp.2d　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1
Not Reported in F.Supp.2d, 2007 WL 1875989 (D.Minn.)
(Cite as: 2007 WL 1875989 (D.Minn.))

Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
Gerri A. LARSON
v.
FORD CREDIT (d/b/a Primus), and Interstate Credit Control.
No. 06-CV-1811 (JMR/FLN).

June 28, 2007.

Gerri A. Larson, Pro Se Plaintiff.

Brian Vander Pol, for Defendant Ford Credit.

ORDER

JAMES M. ROSENBAUM, United States Chief District Judge.

*1 Defendant Ford Motor Credit Company ("Ford Credit") objects to the Report and Recommendation, issued by the Honorable Franklin L. Noel, United States Magistrate Judge, on February 12, 2007. The Report recommended granting in part, and denying in part, Ford Credit's motion to dismiss, made pursuant to Fed.R.Civ.P. 12(b)(6). Ford Credit timely filed its objection, pursuant to Local Rule 72.2.

Based upon a de novo review of the record herein, the Court adopts the Magistrate's Report and Recommendation.

I. *Background*

The background information is taken from the allegations in plaintiff's *pro se* Complaint and Amended Complaint (collectively, "Complaint"). [FN1] These allegations are presently presumed true, as plaintiff is the non-moving party. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n. 1 (2002).

> FN1. It is undisputed that the allegations in plaintiff's Amended Complaint, filed August 10, 2006, arise out of the same "conduct, transaction or occurrence" set forth in her original Complaint, and therefore relate back to her original Complaint filed May 16, 2006. Fed.R.Civ.P. 15(c)(2).

According to the pleadings, sometime in January, 2004, plaintiff reviewed her credit report, and discovered inaccurate information. In particular, the report referred to a charge-off on a Ford Credit account she had paid in full. She contacted Ford Credit and the credit bureaus to report the mistake. She sent at least three certified letters to the credit bureaus. Her most recent letters were dated January 5, April 26, and May 5, 2004. Despite her efforts, Ford Credit continued to report the incorrect information as late as March 15, 2005. Plaintiff continued to follow up, and on May 17, 2005, spoke by telephone with a representative of Ford Credit regarding her dispute.

On May 16, 2006, plaintiff filed her Complaint. Count I of the Complaint claims Ford Credit failed to investigate and remove inaccurate information from her credit report, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2 (1998 & Supp.2006) ("FCRA"). Count II alleges credit defamation under Minnesota law. Count III alleges tortious interference with business expectancy. Count IV alleges unfair or deceptive trade practices prohibited by the FCRA. With respect to the statute of limitations, plaintiff specifically alleges that "entries from ... Ford [C]redit were report[ed] within a 2 year period from date of Complaint." (Amended Complaint at 4.)

Ford Credit moves to dismiss plaintiff's Complaint, claiming it is time-barred.

II. *Analysis*

The Court affords a liberal construction to *pro se* pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A court should not dismiss a plaintiff's complaint if there are "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). Put another way, a plaintiff must plead facts showing a "reasonably founded hope that the [discovery]

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:08-cv-00985   Document 26-6   Filed 06/24/2008   Page 3 of 10

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 1875989 (D.Minn.)
(Cite as: 2007 WL 1875989 (D.Minn.))

Page 2

process will reveal relevant evidence" to support the claim. *Id.* at 1967.

The FCRA requires that those who furnish information to credit reporting agencies (1) provide accurate information to those agencies, and (2) investigate the accuracy of information they have provided upon receiving notice of a dispute. 15 U.S.C. § 1681s-2 (a), (b). The FCRA imposes civil liability for a credit reporting agency which either reports inaccurate information, or fails to conduct a reasonable investigation in response to a consumer dispute. *See Huroey v. Direct Merchants Credit Card Bank*, 371 F.Supp.2d 1058, 1059 (E.D.Mo.2005). The FCRA gives consumers the right to bring a civil action against those who furnish inaccurate information. *Id.* at 1060.

*2 The current version of the FCRA, in effect when plaintiff filed her Complaint, [FN2] requires commencement of a civil action "not later than the earlier of":

> FN2. Prior to March 31, 2004, the FCRA allowed an action to be brought "within two years from the date on which the liability arises" except in cases of material misrepresentation, which were subject to a discovery rule. *TRW Inc. v. Andrews*, 534 U.S. 19, 22 (2001).

(1) 2 years after the date of discovery by plaintiff of the violation that is the basis for such liability; or
(2) 5 years after the date on which the violation that is the basis for such liability occurs.
15 U.S.C. § 1681p (1998 & Supp.2006).

Both parties agree the two-year statute of limitations applies here. Because this action was filed on May 16, 2006, plaintiff's claim is untimely if it accrued before May 16, 2004. The question then, is, when did plaintiff's claim accrue? The Eighth Circuit has not spoken on this question in the FCRA context. Two lines of analysis have been developed by other courts, both based on the law of defamation.

The majority of courts considering the question have drawn upon defamation's traditional "multiple-publication rule." Under this rule, each publication of the same falsehood by the same defamer is a separate cause of action, thus starting the limitations clock anew. Restatement (Second) of Torts § 577A(1). In the FCRA context, this means each transmission of erroneous credit information is a separate FCRA violation. *See Hyde v. Hibernia Nat'l Bank*, 861 F.2d 446, 450 (5th Cir.1988) ("each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies"); *Campbell v. Chase Manhattan Bank*, 2005 WL 1514221, *11 n. 5 (D.N.J. June 27, 2005) (unpublished) (same), *amended on reconsideration on other grounds*, 2005 WL 1924669 (D.N.J. Aug. 10, 2005); *Lawrence v. Trans Union LLC*, 296 F.Supp.2d 582, 587 (E.D.Pa.2003) (same); *Acton v. Bank One Corp.*, 293 F.Supp.2d 1092, 1098 (D.Ariz.2003) (same); *Jaramillo v. Experian Information Solutions, Inc.*, 155 F.Supp.2d 356, 359-60 (E.D.Pa.2001) (same), *reconsideration granted on other grounds*, 2001 WL 1762626 (E.D.Pa. June 20, 2001); *Whitesides v. Equifax Credit Information Servs.*, 125 F.Supp.2d 807, 812 (W.D.La.2000); *Gill v. Kostroff*, 2000 WL 141258, *5 (M.D.Fla., Feb. 8, 2000) (unpublished); *Wilson v. Porter, Wright, Morris & Arthur*, 921 F.Supp. 758, 759 (S.D.Fla.1995) ("[t]he alleged violations of the FCRA by Equifax occurred when the credit reports were issued"); *Schneider v. United Airlines, Inc.*, 256 Cal.Rptr. 71, 78 (Cal.App.1989); *Lawhorn v. Trans Union Credit Information Corp.*, 515 F.Supp. 19, 20 (E.D.Mo.1981); *see also Swafford v. Memphis Indiv. Practice Ass'n*, 1998 WL 281935, *8 (Tenn.Ct.App., June 2, 1998) (unpublished) (addressing defamation claims against a medical rather than credit reporting service).

Ford Credit asks the Court to reject this analysis. Instead, it asks the Court to adopt a minority position, applying the "single-publication rule," which is an exception to the traditional rule. At common law, the single-publication rule remedied a shortcoming in the traditional rule when considering a mass-published defamatory statement. This exception was carved out in response to a situation under which every time an individual saw a copy of a defamatory print run, that event could conceivably give rise to a new cause of action. *See* Debra R. Cohen, *The Single Publication Rule: One Action, Not One Law*, 62 Brooklyn L.Rev. 921, 931-32 (1996). Under such a circumstance, it was possible that "the statute of limitations would no longer be effective if it were renewed every time a new party saw the libelous statement." Sapna Kumar, Comment, *Website Libel and the Single Publication*

Not Reported in F.Supp.2d                                                                                                Page 3
Not Reported in F.Supp.2d, 2007 WL 1875989 (D.Minn.)
**(Cite as: 2007 WL 1875989 (D.Minn.))**

Rule, 70 U. Chi. L.Rev. 639, 639-40 (2003). Accordingly, the single-publication rule holds that multiple copies of an "aggregate communication," such as a newspaper or magazine, are considered a single publication giving rise to one cause of action. Restatement (Second) of Torts § 577A(2), (3).

*3 Minnesota accepts the single-publication rule in the mass publishing context. *Church of Scientology v. Minnesota State Medical Ass'n Found.*, 264 N.W.2d 152, 155 (Minn.1978). And in considering compelled self-publication defamation in the employment context, federal courts have applied the rule. *See Johnson v. Overnite Transp. Co.*, 19 F.3d 392, 393 (8th Cir.1994) (per curiam); *Petersen v. Norwest Corp.*, 1988 WL 425635, *3 (D. Minn., June 16, 1988).

Now, Ford Credit urges the Court to extend the single-publication rule to the FCRA. It offers an oral ruling by the Honorable Ann D. Montgomery, in *Fearon v. Fleet Credit Card Servs.*, Civ. No. 00-2395, Docket No. 9, at 17-18 (D.Minn., Feb. 22,2001) (unpublished transcript, attached as Ex. A to Ford Credit's Objection to Report & Recommendation). Judge Montgomery ruled in a case brought under the earlier version of the FCRA statute of limitations, finding the plaintiff's claims accrued on the "publishing date of the statement"; that is, when defendant reported to the credit bureaus an incorrect balance on plaintiff's account. *Fearon* at 17-18. Defendant did so twice, and acknowledged that each of the reports would be subject to a separate statute of limitations. *Id* at 6-7. But because both reports occurred more than two years prior to filing the complaint, the court found both the FCRA and defamation claims time-barred. *Id*. Judge Montgomery specifically rejected plaintiff's argument that the limitations period commenced when the plaintiff requested that the credit reporting agencies issue a consumer dispute verification ("CDV") form to defendant. *Id* at 14-16, 18.

The opinion in *Fearon* relied upon an unpublished Northern District of Illinois case, *Ryan v. Trans Union Corp.*, 2000 WL 1160440, *2 (N.D.Ill., Aug. 4, 2000) (unpublished). There, the plaintiff's last communication with defendants occurred before the FCRA imposed any liability for defendants' alleged conduct. *Id* at *1. When the relevant provision became effective, the plaintiff requested that CDV forms be issued to defendants. *Id* at *2. The court held that the plaintiff's request did not bring the claims within the ambit of the new statute, observing:

> The fact that the inaccurate information predates the statute's effective date does not necessarily end the story; we cannot say that the fact that bad information is old necessarily absolves an information provider from investigating and correcting it after the statute's effective date. What we have here, however, is basically an attempt to drag out an old dispute, polish it up, and call it new.

*Id*. Accordingly, the court granted summary judgment for defendants.

This Court is not persuaded by either *Fearon* or *Ryan*. And the facts here are wholly different from each of those cases.

First, neither opinion calls into question the fundamental issue here: that, as presently enacted, the FCRA makes providers of credit information liable for each report of erroneous information. *See Fearon* at 17-18; *Ryan*, 2000 WL 1160440, *3 ("providers of information ... are accountable only if they continue to supply inaccurate data to credit reporting agencies after notification"); *see also* 15 U.S.C. § 1681s-2(b)(1)(A)-(D). The problem in both cases was that the plaintiff failed to allege defendant had provided an erroneous report during the relevant time period. Here, plaintiff has alleged such a report.

*4 Second, *Fearon* and *Ryan* neither acknowledge, nor differentiate between, the single and multiple publication rules. Neither considers whether the single-publication rule is appropriate in the credit reporting context. Having reviewed the numerous well-reasoned cases which have considered these issues--many decided after *Fearon* and *Ryan*--this Court is disinclined to adopt either the reasoning or the rule in *Fearon* and *Ryan*.

This Court finds no sound basis upon which to import a common law rule crafted for mass publication into Congress's enactment granting remedies to individuals damaged by the wrongful acts of credit reporting agencies. There is simply no way to equate the provision of a consumer's information to credit reporting agencies with the mass distribution of a newspaper's or magazine's claimed defamatory statement. Credit information is

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                   Page 4
Not Reported in F.Supp.2d, 2007 WL 1875989 (D.Minn.)
**(Cite as: 2007 WL 1875989 (D.Minn.))**

confidential; dissemination is limited; and it is easy to determine exactly when and to whom the information was disseminated. Lori A. Wood, *Cyber-Defamation and the Single Publication Rule*, 81 B.U. L.Rev. 895, 913 (2001); *Hyde*, 861 F.2d at 450; *Swafford*, 1998 WL 281935, *8. The FCRA offers no risk of "a vast multiplicity of lawsuits resulting from a mass publication." *Swafford, id.* The Court agrees with the Fifth Circuit's observation:

> We do not find the rationale underlying the single-publication rule applicable to the Fair Credit Reporting Act. The major harm may, indeed, result from the first transmission of defamatory material to an institution, but the confidential nature of a credit report necessarily means that each new issuance results in a separate and distinct injury.

*Hyde*, 861 F.2d at 450.

Plaintiff disputed information on her credit report and invoked Ford Credit's statutory obligation to investigate her concerns and correct the information if necessary. 15 U.S.C. § 1681s-2 (a), (b). The limitations period runs from the "violation"--Ford Credit's alleged failure to perform either of its duties--or from plaintiff's later discovery of the violation. 15 U.S.C. § 1681p.

Accordingly, the Court finds that each re-report of inaccurate information, and each failure to conduct a reasonable investigation in response to a dispute, is a separate FCRA violation subject to its own statute of limitations.

At this point in the proceedings, the Court is constrained to accept plaintiff's contention that she discovered the erroneous charge-off on her credit report as early as January, 2004. If that erroneous report were the only alleged violation of FCRA, her claim would arguably be untimely. But she alleges additional violations--specifically, that Ford Credit, on successive occasions and after notice, repeatedly failed to properly investigate her later communications, and that it continued to report the error after May 16, 2004. Accordingly, each of these successive failures to comply with the law is subject to the two-year limitations period, from the date each violation of the FCRA occurred. Read generously, the Complaint's facts allow a "reasonably founded hope that the [discovery] process will reveal relevant evidence" to support plaintiff's allegations. *Bell Atlantic*, 127 S.Ct. at 1967. This is enough to state a claim. Fed.R.Civ.P. 8(a).

**\*5** Discovery may ultimately reveal facts showing that plaintiff discovered all of the alleged violations before May 16, 2004. But on these facts, the Court cannot conclude that plaintiff's FCRA claim is time-barred, and therefore defendant's motion to dismiss must be denied.

Counts II and III allege claims under Minnesota law. Defendant's motion to dismiss shall be denied as to these counts, for the reasons set forth in the Magistrate's Report & Recommendation.

Count IV shall be dismissed for the reasons set forth in the Magistrate's Report and Recommendation.

Accordingly, the Court adopts the Magistrate's Report and Recommendation [Docket No. 45].
1. Defendant's motion to dismiss is denied as to Counts I, II and III.
2. Defendant's motion to dismiss is granted as to Count IV.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION

FRANKLIN L. NOEL, United States Magistrate Judge.

THIS MATTER came before the undersigned United States Magistrate Judge on January 25, 2007, on Defendant Ford Credit's Motion to Dismiss [# 34]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that Defendant Ford Credit's Motion to Dismiss [# 34] be granted in part and denied in part.

### I. FINDINGS OF FACT
Plaintiff Gerri A. Larson brought this action against Defendant Interstate Credit Control and Ford Credit (hereinafter "Defendant") alleging violations of the Fair Credit Reporting Act, and claims for credit defamation and tortious interference with economic expectancy. (Am. Compl., Docket Number 10.) Count I of Plaintiff's Amended Complaint alleges that Defendant willfully violated 15 U.S.C. § 1681s-2 by

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                Page 5
Not Reported in F.Supp.2d, 2007 WL 1875989 (D.Minn.)
**(Cite as: 2007 WL 1875989 (D.Minn.))**

failing to conduct a reasonable and independent investigation to remove inaccurate information from Plaintiff's credit report. (Am. Compl. at 1-2.) Count II of Plaintiff's amended complaint alleges that Defendant's conduct exhibited a reckless disregard for the accuracy of Plaintiff's credit report and that Defendant's actions of erroneously reporting adverse information on Plaintiff's credit report constituted credit defamation in violation of Minnesota law. (Am. Compl. at 3.) Count III of Plaintiff's amended complaint alleges a claim for tortious interference with economic expectancy, and Count IV alleges a claim for unfair and deceptive trade practices pursuant to the Fair Credit Reporting Act (hereinafter "Act" or "FCRA"). (Am. Compl. at 4.)

Plaintiff is suing Defendant for inaccurately reporting her account information to credit reporting agencies, and for failing to conduct a reasonable investigation into the accuracy of the reported information after receiving notice of a dispute from the credit reporting agencies. In her amended complaint, Plaintiff alleges that she noticed inaccuracies in her credit report related to an account she previously had with Defendant and that she "reported these inaccuracies several times to the credit agencies ... in hopes of getting them corrected [by] Ford Credit." (Am. Compl. at 2.) Plaintiff further alleges that "[t]he Credit bureaus contacted ... Ford Credit ... in their investigation and after their research, the derogatory reports still came on Plaintiff's credit report." (Am. Compl. at 2.) Plaintiff alleges that Defendant did not remove these errors from her credit report even after being notified by the credit reporting agencies of the errors. Plaintiff further alleges that "[w]ith regard to the statute of limitations, entries from both Interstate Credit Control and Ford credit were report[ed] within a two year period from the date of the Complaint." (Am. Compl. at 4.)

*6 Defendant now moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons that follow, the Court recommends that Defendant's motion be granted in part and denied in part.

### II. STANDARD OF REVIEW
Defendant moves to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). A cause of action should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of her claim that would entitle her to relief. *Schaller Tel. Co. v. Golden Sky Sys., Inc.,* 298 F.3d 736, 740 (8th Cir.2002). In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook,* 278 F.3d 754, 757 (8th Cir.2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.,* 299 F.3d 735, 738 (8th Cir.2002).

Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *Neitzke v. Williams,* 490 U.S. 319, 326-327 (1989). To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.,* 133 F.3d 649, 651 (8th Cir.1998).

*Pro se* pleadings should be liberally construed, and are held to a less stringent standard when challenged by motions to dismiss. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Horsey v. Asher,* 741 F.2d 209, 211 n. 3 (8th Cir.1984). Although it is to be liberally construed, a pro se complaint must still contain specific facts to support its conclusions. *Kaylor v. Fields,* 661 F.2d 1177, 1183 (8th Cir.1981).

### III. LEGAL ANALYSIS
#### A. Count I States a Claim for a Violation of the Fair Credit Reporting Act.
The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq* "imposes civil liability on any person who willfully or negligently fails to comply with any of the Act's requirements with respect to a consumer." *Huorcy v. Direct Merchants Credit Card Bank,* 371 F.Supp.2d 1058, 1059 (E.D.Mo.2005). The Act imposes two sets of duties on persons or entities that furnish information to credit reporting agencies. A furnisher of information to a credit reporting agency has (1) the duty to provide accurate information to credit reporting agencies, *see* 15 U.S.C. § 1681s-2(a), and (2) the duty to "investigate the accuracy of

Not Reported in F.Supp.2d                                                                                      Page 6
Not Reported in F.Supp.2d, 2007 WL 1875989 (D.Minn.)
**(Cite as: 2007 WL 1875989 (D.Minn.))**

reported information upon receiving notice of a dispute." *Huoey*, 371 F.Supp.2d at 1060;*see also* 15 U.S.C. § 1681s-2(b). "[F]urnishers of information are required to conduct a 'reasonable' investigation of a consumer's dispute regarding information contained in a credit report." *Huoey*, 371 F.Supp.2d at 1060 (quoting *Bruce v. First U.S.A. Bank, N.A.*, 103 F.Supp.2d 1135, 1143 (E.D.Mo.2000)); *see also Schaffhausen v. Bank of America*, 393 F.Supp.2d 853, 858 (D.Minn.2005).

*7 Under the Act,

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy ... not later than the earlier of--(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p.

The present suit was filed on May 16, 2006. Defendant argues that Plaintiff's claim under 15 U.S.C. § 1681s-2(b) is time-barred by the two year statute of limitations. Defendant notes that, "[i]n her amended complaint, Plaintiff alleges that she wrote certified letters to the credit bureaus regarding her account with Ford Credit on January 5, 2004, April 26, 2004, and May 5, 2004, and that despite those letters, her credit report continued to reflect inaccurate information." (Def.'s Mem at 7.) Defendant argues that these allegations alone "are sufficient to warrant the conclusion that Plaintiff discovered the existence of her cause of action under the FCRA far in advance of May 16, 2004, the last possible date on which Plaintiff's claim could be considered timely." (Def.'s Mem at 7.) Defendant argues that Plaintiff's additional court filings support the conclusion that Count 1 is time-barred, because Plaintiff acknowledged in her motion for default judgment that she was aware as early as January 2004 that her credit report contained inaccuracies regarding her account with Ford Credit, and because Plaintiff confirmed in her Response to Ford Credit's Motion for a Definite Statement that she was aware no later than February 11, 2004, of the alleged failure of Ford Credit to conduct a reasonable investigation. (Def.'s Mem. at 7.) Defendant argues that since Plaintiff admits that she discovered the existence of her cause of action prior to May 16, 2004, her claim is barred by the two year limitations period.

At the hearing on this matter Defendant's counsel cited two cases to this Court in support of Defendant's argument that Count 1 is time-barred because Plaintiff discovered the existence of her cause of action under the Act well before May 16, 2004. The first case cited by Defendant is *Bittick v. Experian Information Solutions, Inc.*, 419 F.Supp.2d 917 (N.D.Tex.2006). In *Bittick* the court stated the following:

> Bittick filed suit on June 27, 2005. All of the transactions Bittick raises in her complaint occurred before June 27, 2003. Indeed, the only event in her complaint that occurred after June 27, 2003 is her additional report to the agencies that the information was incorrect. This additional report cannot restart the limitations clock.... Bittick argues that because the agencies removed the information and then put it back on her report in 2004, this is an instance of re-reporting that restarts the two year statute of limitations clock.... This re-report was not alleged in her complaint, however, and cannot defeat [the] ... limitations argument.

*8 *Id*. at 919 (internal quotations and citation omitted). *Bittick* is distinguishable from the present case because all of the events alleged in the complaint in *Bittick* occurred prior to the statute of limitations date. In addition, *Bittick* is distinguishable because, although the plaintiff alleged that the credit reporting agencies removed the inaccurate information from her report and then put it back on her credit report in 2004, the plaintiff did not include those allegations in her complaint and therefore could not use those allegations to defeat defendant's statute of limitations argument.

The second case cited by Defendant in support of its argument that the statute of limitations began to run as soon as Plaintiff became aware of the existence of her claim is *Ryan v. Trans Union Corporation*, 2000 WL 1100440 (N.D.Ill.2000). *Ryan* is distinguishable from the facts in the present case because all of the events in *Ryan* that allegedly violated the Act occurred prior to the effective date of the Act. *Id*. at * 1-2.

To the extent that *Ryan* and *Bittick* can be read to stand for the proposition that the statute of limitations begins to run on a FCRA claim at the time the plaintiff becomes aware of the existence of the claim, and that a subsequent report by the plaintiff of the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                          Page 7
Not Reported in F.Supp.2d, 2007 WL 1875989 (D.Minn.)
**(Cite as: 2007 WL 1875989 (D.Minn.))**

same alleged inaccuracy that occurs after the furnisher of information conducts an initial investigation does not constitute a new violation of the Act, this Court rejects that reasoning. This Court concludes that each time a furnisher of information receives a report of a credit inaccuracy and fails to conduct a reasonable investigation of that inaccuracy, that failure constitutes a new violation of 15 U.S.C. § 1681s-2(b), even if the report addresses the same credit inaccuracy issue that has previously been reported to the furnisher of information.

In the present case, the Court reads Plaintiff's Amended Complaint to say that she wrote to the credit reporting agencies to inform them of the alleged inaccuracies in her reported account with Defendant Ford Credit. The credit reporting agencies then contacted Ford Credit regarding the alleged inaccuracies and Defendant failed to conduct a reasonable investigation regarding those inaccuracies; instead, Defendant stated that the alleged inaccuracies were in fact correct. In response, Plaintiff continued to write to the credit reporting agencies to inform them of the inaccuracy, and Defendant continually failed to conduct a reasonable investigation into the accuracy of the reported information.

Although the amended complaint is not a model of clarity, it appears to the Court that Plaintiff's amended complaint alleges that Plaintiff sent at least one letter to the credit reporting agencies within two years of May 16, 2006, and that Defendant did not conduct a reasonable investigation regarding those inaccuracies despite being notified of the inaccuracies. Federal Rule of Civil Procedure Rule 8 states that

> *9 [a] pleading which sets forth a claim for relief .... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Fed.R.Civ.P. 8(a). Federal Rule of Civil Procedure Rule 8 also notes that "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f). In her amended complaint, Plaintiff states "[w]ith regard to statute of limitations, entries from Ford credit were report[ed] within a 2 year period from date of Complaint." (Am. Compl. at 4.)

The Court concludes that Plaintiff's allegation in her amended complaint that entries from Ford Credit were reported to the credit reporting agencies within a two year period from the date of the complaint is sufficient to satisfy the general rules of notice pleading required by Federal Rule of Civil Procedure Rule 8. The Court concludes that this statement is sufficient to defeat Defendant's motion to dismiss Count I. SeeFed.R.Civ.P. 8(a), (f). It is the purpose of discovery to determine whether Defendant's alleged actions occurred within the two year statute of limitations. For the purpose of a motion to dismiss, Plaintiff has sufficiently plead that she satisfied the two year statute of limitations in the present case.

The Court concludes that, although Plaintiff may have become aware of the existence of the alleged FCRA violation prior to May 16, 2004, each time Plaintiff made a renewed complaint to the credit reporting agencies and Defendant did not engage in a reasonable investigation of that complaint, Defendant committed a new violation of 15 U.S.C. § 1681s-2(b). The Court further concludes that Plaintiff has sufficiently pled that Defendant violated the Act within two years of the date that Plaintiff filed her complaint. SeeFed.R.Civ.P. 8(a). Therefore, the Court concludes that Plaintiff has stated a claim pursuant to 15 U.S.C. § 1681s-2(b) and recommends that Defendant's motion to dismiss Count I be denied as to any report that Plaintiff filed with the credit reporting agencies after May 16, 2004.

**B. Counts II and III Are Not Time-Barred and Are Not Preempted by the Fair Credit Reporting Act.**

Defendant argues that Count II should be dismissed because it is time-barred. Defendant argues that, pursuant to Minnesota Statute section 541.07(1), the statute of limitations for defamation claims is two years from the date of publication of the alleged defamatory statement, and since Plaintiff's pleadings and other filings with the Court make it clear that Plaintiff was aware of the publication of the alleged defamatory statements prior to May 16, 2004, Count II is time-barred and must be dismissed. (Def.'s Mem. at 5.) Similarly, Defendant argues that, while under Minnesota law claims for tortious interference with

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                    Page 8
Not Reported in F.Supp.2d, 2007 WL 1875989 (D.Minn.)
**(Cite as: 2007 WL 1875989 (D.Minn.))**

economic expectancy are generally subject to a six year statute of limitations, where the facts alleged in support of such a claim are essentially a part of the plaintiff's defamation action, the two year limitations period set forth in Minnesota Statute section 541.07(1) is applicable. See Wild v. Rarig, 234 N.W.2d 775, 793 (Minn.1975). Defendant argues that the facts alleged in support of Plaintiff's claim for tortious interference with economic expectancy are identical to those alleged in support of her claim for credit defamation, and therefore the two year statute of limitations applies to Count III. Defendant argues that Plaintiff's pleadings and other filings with the Court make it clear that Plaintiff was aware of the publication of the alleged defamatory statements prior to May 16, 2004, and hence Count III is time-barred.

*10 Assuming without deciding that the two year statute of limitation applies to Count III as well as Count II, the Court concludes that Plaintiff's statement in her amended complaint that entries from Ford Credit were reported within a two year period from the date of the complaint is sufficient to satisfy the general rules of notice pleading required by Federal Rule of Civil Procedure Rule 8. SeeFed.R.Civ.P. 8(a), (f). It is the purpose of discovery to determine whether Defendant's alleged actions occurred within the two year statute of limitations. For the purpose of a motion to dismiss, Plaintiff has sufficiently plead that she satisfied the two year statute of limitations in the present case.

In addition to arguing that Counts II and III are time-barred, Defendant argues that Counts II and III are preempted by the Fair Credit Reporting Act. 15 U.S.C. § 1681h states that

no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (footnote omitted). Defendant argues that Count II, as an action for credit defamation, is preempted by the Fair Credit Reporting Act as stated in 15 U.S.C. § 1681 h(e). (Def.'s Mem. at 5-6.) Defendant also argues that Count III should be dismissed as preempted by the Fair Credit Reporting Act, because "[r]educed to its essence, Plaintiff's claim for tortious interference is equivalent to a claim of credit defamation, and is therefore preempted unless Plaintiff can establish that Ford Credit's actions were taken with malice or willful intent to injure her." (Def.'s Mem. at 7.)

The Court finds that Plaintiff has sufficiently plead willfulness in her amended complaint. Plaintiff alleges in her amended complaint that she repeatedly notified the credit reporting agencies of the inaccuracies in her credit report related to Ford Credit and that Ford Credit repeatedly failed to conduct a reasonable investigation of these inaccuracies and instead re-affirmed the validity of these inaccuracies. This pleading is sufficient to state a claim that Defendant's actions were taken with malice or willful intent to injure Plaintiff. [FN1] Therefore, the Court recommends that Defendant's motion to dismiss be denied as to Counts II and III.

FN1.SeeFed.R.Civ.P. Rule 8(a); *Haines v. Kerner*, 404 U.S. at 520.

**C. There is No Private Right of Action for Unfair and Deceptive Trade Practices Under the Fair Credit Reporting Act; Therefore, Count IV Should be Dismissed.**

In Count IV of her amended complaint, Plaintiff alleges a claim for unfair and deceptive trade practices pursuant to the Fair Credit Reporting Act. (Am. Compl. at 4.) While the Act imposes civil liability on a furnisher of information if the furnisher fails to comply with its duties, a private cause of action only exists to enforce the duty of a furnisher of information to conduct a reasonable investigation to determine the accuracy of reported information upon receiving notice of a dispute from a credit reporting agency pursuant to § 1681s-2(b). As a private cause of action only exists to enforce the duty of a furnisher of information to conduct a reasonable investigation of the accuracy of reported information upon receiving notice of a dispute from a credit reporting agency, Count IV fails to state a claim for Unfair and

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 1875989 (D.Minn.)
**(Cite as: 2007 WL 1875989 (D.Minn.))**

Page 9

Deceptive Trade Practices pursuant to the Fair Credit Reporting Act. Since Count IV fails to state a claim under the Fair Credit Reporting Act, the Court recommends that Defendant's motion to dismiss be granted as to Count IV.

### IV. RECOMMENDATION

*11 Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss [# 34] be **GRANTED** with respect to Count IV and **DENIED** with respect to Counts I, II, and III.

Not Reported in F.Supp.2d, 2007 WL 1875989 (D.Minn.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.