UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GLADYS SEARCY, | ) | |
| | ) | No. 08-C-985 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE KOCORAS |
| | ) | |
| eFUNDS CORPORATION et al., | ) | MAGISTRATE JUDGE COX |
| | ) | |
| Defendants. | ) | |

REPLY MEMORANDUM IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Defendants' Motion for Summary Judgment is based upon Plaintiff Searcy's request for a consumer disclosure from SCAN in January 2005, more than two years before this lawsuit was filed. Because the disclosure to Plaintiff in January 2005 was pursuant to the identical "uniform policy, practice and procedure" (Complaint ¶ 57) challenged by Plaintiff in her Complaint, the Complaint is barred by the FCRA's two-year statute of limitations. In her Response to the Motion, Plaintiff argues that her claim should not be barred because subsequent requests by Plaintiff for disclosures, which were produced by SCAN pursuant to the same uniform policy, are nonetheless "separate and distinct" FCRA violations.

For two reasons, Plaintiff's argument fails. First, the caselaw upon which Plaintiff primarily relies involves "consumer reports" — information provided to merchants from consumer reporting agencies ("CRAs") for the purpose of establishing a consumer's eligibility for credit. Plaintiff's claim in this case involves "consumer disclosures" — information provided to consumers, at the consumer's request, for the purpose of verifying the accuracy of certain file information. Consumer reports serve different purposes and are treated substantially different under the FCRA than consumer disclosures. The fundamental difference is that disclosure of erroneous consumer reports to merchants may

result in actual injury to the consumer – the denial of credit. By contrast, the disclosure of inaccurate information to a consumer in a consumer disclosure involves no injury, in and of itself, to the consumer. These and other differences render the caselaw regarding the accrual of a cause of action involving consumer reports inapplicable to a case such as this one involving consumer disclosures.

Second, Plaintiff's claim is limited to an allegedly willful, rather than negligent, violation of the FCRA. Plaintiff's argument that each of the disclosures provided to her constitutes a separate and distinct "willful" violation of the FCRA leads to unreasonable and unintended consequences under the statutory remedial mechanism for willful violations. Specifically, this argument would empower prospective plaintiffs, through their own unilateral action, to toll the statute of limitations indefinitely. In several, recent FCRA cases, district courts have rejected the argument that plaintiffs' unilateral acts can indefinitely restart the clock for the statute of limitations. The adoption of Plaintiff's argument would also allow prospective plaintiffs to increase their statutory damages at will by requesting as many disclosures as possible during the two-year limitations period. For these reasons, Plaintiff's requests for consumer disclosures are not separate and distinct violations for purposes of the FCRA statute of limitations, and Plaintiff's Complaint should be dismissed.

## STATEMENT OF FACTS

In her response to the Motion for Summary Judgment, Plaintiff alleges for the first time that she had checks declined by local merchants, and that these declines prompted her file disclosure requests. Pl.'s Resp. at 2-3. She complains that Defendants failed to tell her why her checks were declined. Id. Plaintiff goes on to say that each merchant that declined one of her checks provided her with the contact information for SCAN. Id. Plaintiff did not allege these facts in her Complaint.

The short answer to Plaintiff's question (why SCAN did not provide her with the reason for her check declines) is that she did not ask.  Despite the allegations recently conveyed in response to the Motion, Searcy never communicated to SCAN in 2005 and 2006 that she had a check declined by a merchant.  When a consumer requests a consumer disclosure in writing, the SCAN Consumer Report Order Form expressly asks the consumer whether she has had a check declined by a merchant.  The one-page form contains the following section:

If your check writing privileges were declined by a retailer please provide the following:

Retailer Name:                    _____
City and State:                    _____
Date Check was Declined:    _____

Plaintiff Searcy left this section entirely blank both times she requested her SCAN Report in writing.  See Declaration of Tonya Weber (Docket No. 18-2) at Exhibit 1; Supplemental Declaration of Tonya Weber ¶¶ 5-6, ex. 1-2 (filed contemporaneously).  Likewise, in her October 2006 telephone request for a consumer disclosure, Plaintiff did not indicate that her check had been declined by a merchant.  Id. ¶ 7.

Defendants have no way of knowing the reasons for a particular check decline by a merchant; the decision whether to accept or decline a particular check is always made by the merchant.  Id. ¶ 8.  Indeed, prior to the filing of Plaintiff's response, Defendants had no knowledge whatsoever of these three declined checks.  In addition to SCAN, merchants oftentimes rely on other check verification companies, as well as their own internal records, in determining whether to accept a check.  Id.  Because Plaintiff did not indicate that her checks had been declined in any of her communications with Defendants, it was impossible for Defendants to determine if these declines were based upon information provided by

SCAN, another check verification company, or the store's own internal records.  Id. ¶ 9.  Had Plaintiff Searcy indicated to Defendants that her checks had been declined, "the situation would have been escalated to research" to assess the reason for the decline.  Id.  Because Searcy chose not to inform SCAN about the check declines, "it was impossible to conduct any research on these check declines or even know that such research was needed." Id. ¶ 10.

Furthermore, Plaintiff's allegations regarding check declines are irrelevant to this Motion and lawsuit.  Plaintiff Searcy does not bring a claim alleging that her checks were wrongfully declined based upon erroneous information provided by Defendants.  Plaintiff's claims in this lawsuit are focused solely upon the content of the consumer disclosures that she received from SCAN, as opposed to the consumer reports that were received and potentially acted upon by merchants.  If the allegations about check declines were pertinent to the pending Motion, Plaintiff would have set them forth in her response to the Statement of Undisputed Material Facts.  See Local Rule 56.1(b)(3)(C).  Plaintiff, however, has not done so.  Accordingly, Plaintiff's last-minute disclosure of merchant declines is irrelevant to this Motion and lawsuit, and paints an inaccurate picture of Plaintiff's actual conduct at the time she made her requests for file disclosures.

<u>ARGUMENT</u>

I.     **Caselaw regarding application of the statute of limitations to "consumer reports" is inapplicable to this case involving "consumer disclosures."**

The FCRA establishes a narrow statute of limitations period that requires an action to enforce any liability created by the Act be brought within "2 years after the date of discovery by plaintiff of the violation that is the basis of the liability."  15 U.S.C. § 1681p.  Plaintiff now concedes that she requested and received a SCAN Report in January 2005 and that this January 2005 SCAN Report was "in the same format as the SCAN Reports"

included in the Complaint.  Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Docket No. 25) at ¶¶ 7, 8.

Despite Plaintiff's concession that the January 2005 disclosure was identical in format to the October 2006 disclosure, Plaintiff maintains that her complaint is not time-barred because "each file disclosure . . . constitutes a separate and distinct violation for purposes of the FCRA statute of limitations period." Pl.'s Resp. at 9-10.  Plaintiff, however, cites no legal authority to support the argument that multiple consumer disclosures under 15 U.S.C. § 1681g that suffer from identical alleged deficiencies are separate torts, each of which authorizes a plaintiff to seek a separate award for statutory damages.

In her response, Plaintiff cites a number of FCRA "consumer report" cases in an attempt to bolster her argument that each and every "consumer disclosure" she received amounts to a distinct tort that is independently actionable.  Under the FCRA, "[t]he date on which liability arises depends on which provision allegedly was violated."  Acton v. Bank One Corp., 293 F. Supp. 2d 1092, 1097 (D. Ariz. 2003).  In her citations to these "consumer report" cases, Plaintiff compares apples to oranges by attempting to equate "consumer disclosures" with "consumer reports."  In doing so, she seeks to have a limitations rule that is expressly and strictly connected to "actual damages" apply to a cause of action seeking purely "statutory damages."

A.    The FCRA consumer disclosures at issue here are distinguishable from the FCRA consumer reports at issue in the cases cited by Plaintiff.

"Consumer reports" under 15 U.S.C. § 1681a(d) are "communication[s] of information by a credit reporting agency bearing on a consumer's credit worthiness" to a third-party user.  Consumer disclosures, on the other hand, are communications to the consumer herself.  15 U.S.C. § 1681g.  The legal obligations surrounding the furnishing of consumer disclosures to consumers are quite different from those attendant to the provision

of consumer credit reports to users/merchants.   See, e.g., Hyde v. Hibernia Nat'l Bank, 861 F.2d 446, 449 (5th Cir. 1988) ("A consumer may learn that a credit agency possesses erroneous information in its files, but he has no cause of action in tort against the credit agency until the agency somehow injures him.").

For purposes of the statute of limitations, there are strong policy reasons for distinguishing between the issuance of consumer reports to merchants and the communication of consumer disclosures to consumers.  An erroneous consumer report typically leads to the incursion of actual damages by the consumer, whereas an erroneous consumer disclosure does not.  Indeed, the requirement that CRAs provide consumer disclosures upon request is designed, in part, to permit consumers to assess whether there are errors or omissions in the file and correct them before they lead to an injury.  See Spector v. Equifax Information Services, 338 F. Supp. 2d 378, 386 (D. Conn. 2004) ("The purpose of [15 U.S.C. § 1681g]'s disclosure requirement is to provide the consumer with an opportunity to dispute the accuracy of information in his file.").   Under the FCRA, when there are alleged inaccuracies in a consumer disclosure, the consumer is directed by the statute to dispute the completeness or accuracy of her file disclosure without resorting to litigation.  15 U.S.C. § 1681i provides in pertinent part:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer . . . the agency shall, free of charge, conduct a reasonable reinvestigation . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer . . . .

15 U.S.C. § 1681i(a)(1)(A).

Given the express grant of a right to consumers to notify the CRA of errors in their credit file, courts should be reluctant to adopt the expansive view of the statute of limitations urged by Plaintiff for claims regarding the adequacy of a consumer disclosure. Although a "separate and distinct" rule may apply for consumer reports (where the

consumer may be injured), this expansive rule should not apply to consumer disclosures

(where the consumer cannot suffer actual injury and has an alternative statutory remedy).

When a consumer discovers that a CRA's policy in generating consumer disclosures

allegedly violates the FCRA, but the consumer neither notifies the CRA nor promptly brings

suit to remedy this violation, courts should not authorize such a prospective plaintiff to re-

start the clock by subsequently requesting additional disclosures.  Because CRAs are

required to make disclosures upon the request of the consumer, a ruling that each

disclosure starts a new limitations period would place CRAs "between [a] rock and hard

place."  Renninger v. ChexSystems, 1998 WL 295497, at *5 (N.D. Ill. 1998).

     B.     The "separate and distinct" language cited by plaintiff is
             dependent upon the actual harm caused by erroneous
             consumer reports issued to third-party users and is misplaced
             in the context of consumer disclosures.

By glossing over the difference between consumer reports and consumer disclosures,

Plaintiff seeks to have the same limitations rules that apply to consumer reports, which can

cause actual injuries to a consumer, apply with equal force to consumer disclosures, which

cannot cause such injuries.  The FCRA cases cited by Plaintiff in her response generally hold

that the FCRA's limitations period begins when the plaintiff has suffered an actual loss due

to a violation of the statute.  E.g., Hyde v. Hibernia Nat'l Bank, 861 F.2d 446, 448 (5th Cir.

1988).  This precedent is plainly inapplicable to a case such as this one where no actual loss

is alleged to have occurred.

In Hyde, the plaintiff received a copy of a consumer disclosure that erroneously

indicated an outstanding debt.  Id. at 447.  The plaintiff, however, did not file suit until some

years later when the plaintiff's application for a credit card was declined on the basis of the

erroneous information in the credit report provided to the "user," i.e. the credit-granting

entity.  Id.  The Court considered the different points in time upon which the limitations

period might commence: (a) "[w]hen the agency committed the act of negligence, that is, in the statutory language, when it failed to employ 'reasonable procedures'"; (b) "[w]hen the report was first received by or made known to the consumer;" or (c) "[w]hen the agency issued the erroneous report to a user." Id. at 448.

The Hyde Court rejected the argument that the limitations period should begin when the consumer became aware of the deficiency, because "[a] consumer may learn that a credit agency possesses erroneous information in its files, but he has no cause of action in tort against the credit agency until the agency somehow injures him." Id. at 449. Under the rule of Hyde, the issuance of a consumer disclosure to the consumer is simply not an actionable event under § 1681e(b). There must be an injury, which can only occur when the erroneous report is presented to a credit report user who takes some form of adverse action against the plaintiff. "The requirement that a consumer sustain some injury in order to establish a cause of action suggests that the statute should be triggered when the agency issues an erroneous report to an institution with which the consumer is dealing." Id. at 449.

Plaintiff attempts to rip Hyde from its context by arguing that it stands for a general proposition that each transmission of information by a CRA, regardless of whether it is to a user/merchant or a consumer, is a separate and distinct tort. The Hyde Court's holding, however, is entirely dependent upon the plaintiff's incursion of actual losses. Indeed, the Hyde Court makes this explicit by adopting the formulation of the Restatement of Torts on defamation. Id. at 450. The issuance of erroneous consumer reports are separate and distinct torts only because there have been separate and distinct injurious communications to a third party: "While each injury resulted from [Defendant's] transmission of the same erroneous credit files, [Defendant's] later action inflicted a new injury on [Plaintiff]." Id. (emphasis added). Similarly, Larson v. Ford Credit, 2007 WL 1875989 (D. Minn. June 28, 2007), also cited by Plaintiff in her response, relies on defamation principles to find

separate and distinct communications of erroneous information to a third party. In Larsen, the provider of credit information, Ford Credit, allegedly furnished erroneous information to a CRA. Neither Hyde nor Larson is applicable to the situation in this case, in which Plaintiff alleges a deficiency only in a communication to her.

This Court should not extend the Hyde rule, which is grounded in the defamatory communication of false information to a third party, to Plaintiff's allegation related to the non-communication of non-negative information to herself. Likewise, it makes no sense to apply a rule that is dependent upon actual losses to a case where actual losses are expressly denied in the Complaint. Complaint ¶ 5. Here, the retransmission of consumer disclosures to the same consumer using an identical format did not lead to a new injury.

Similarly, all of the cases cited by Plaintiff as grounds for her "separate and distinct" theory involve actual losses that were suffered within the statutory period or the communication of erroneous credit information to parties other than the consumer. For instance, in Whitesides v. Equifax Credit Information Services, the court made clear that the causes of action were dependent upon an actual harm in the denial of credit: "[E]ach time a potential creditor requested Whitesides's credit report and each time credit was denied based upon the [erroneous information], the statute of limitations began to run anew for each potential harm." 125 F. Supp. 2d 807, 812 (W.D. La. 2000) (emphasis added).

Likewise, in Jaramillo v. Experian Information Solutions, Inc., 155 F. Supp. 2d 356, 360 (E.D. Pa. 2001), the plaintiff's action was brought within the statute of limitations where the defendants "published the inaccurate information [to credit report users] within the two year statute of limitations." In reaching this conclusion, the district court explicitly relied upon the Restatement principles associated with the tort of defamation as outlined in Hyde, supra. Id. at 360. In Acton v. Bank One Corp., 293 F. Supp. 2d 1092, 1098-1101 (D. Ariz. 2003), a case alleging a violation of the FCRA's reinvestigation provision, the court

held that the plaintiff's action could only be maintained where there were actual damages during the statutory period. See also Philbin v. Trans Union Corp., 101 F.3d 957, 968 (3d Cir. 1996) (finding the plaintiff's action was timely asserted because he had been denied credit due to the communication of adverse information to credit users within the statute of limitations).

>    C.    In "consumer disclosure" cases such as this one, where there is no actual injury, the statute of limitations commences when the plaintiff discovers the alleged statutory deficiency in the defendant's disclosures.

The Hyde decision provides guidance as to when the FCRA statute of limitations for intentional non-compliance should commence when there is no actual injury to the consumer:

>    When the claim is for intentional non-compliance, the period commences either from the time of injury to the consumer or from the date of the consumer's discovery of the error, whichever is later.

861 F.2d at 449 (emphasis added). The Hyde holding for intentional non-compliance actions provides two alternative triggers for the limitations period: (1) the time of injury or (2) the date of discovery of error. Here, because there is no actual injury whatsoever, the limitations period commenced upon Plaintiff's discovery of Defendants' alleged noncompliance, which was in January 2005. See TRW, Inc. v. Andrews, 534 U.S. 19, 37 (2001) (Scalia, J., concurring in judgment) ("Absent other indication, a statute of limitations begins to run at the time the plaintiff 'has the right to apply to the court for relief . . . ."); see also Emich Motors Corp. v. General Motors Corp., 229 F.2d 714, 719 (7th Cir. 1956) (noting that generally "statutes of limitations begin running on the date on which the plaintiff first has the right to bring action"). Accordingly, pursuant to the rationale in Hyde, the Complaint should be dismissed.

II.    Adoption of Plaintiff's argument for "separate and distinct" violations
would be incompatible with the FCRA's mechanism for the award of
statutory damages.

Plaintiff's claim is limited to an allegedly willful violation of the FCRA under 15

U.S.C. § 1681n, as opposed to a negligent violation under 15 U.S.C. § 1681o, which requires

proof of actual damages.  She alleges that Defendants' practice of including "only 'negative'

information, such as current or past 'bounced checks' and closed bank accounts" in her

consumer disclosures constitutes a willful violation of the FCRA.  See Pl.'s Resp. at 1.

Because Plaintiff disclaims (as she must) any actual damages resulting from this policy, her

Complaint is premised entirely on her right to statutory damages.

The text of the statute providing a cause of action for "willful" violation of the FCRA

is as follows:

> Any person who willfully fails to comply with any requirement imposed under
> this subchapter with respect to any consumer is liable to that consumer in an
> amount equal to the sum of . . . any actual damages sustained by the
> consumer as a result of the failure or damages of not less than $100 and not
> more than $1,000 . . . .

15 U.S.C. § 1681n.  Plaintiff argues that each consumer disclosure constitutes a separate and

distinct FCRA violation, each subject to the provisions of § 1681n.  The statute, however,

should not be interpreted in such a manner.  Both for purposes of the statute of limitations

and the underlying potential liability, Plaintiff should not be allowed to bring multiple

claims to seek multiple recoveries for the exact same statutory violation.  Because CRAs are

strictly required under the FCRA to respond to consumers' requests for file disclosures,

permitting liability to accrue for each allegedly non-compliant disclosure would provide an

incentive for consumers to affirmatively seek non-compliant disclosures in order to run up

damages against a defendant.  A plaintiff could easily request a new consumer disclosure

every month and then file suit for $24,000 in statutory damages.  Plaintiff trivializes the

FCRA by suggesting that each piece of paper she receives that contains an alleged deficiency enables a separate cause of action and a separate award of punitive and statutory damages.

Furthermore, Plaintiff's interpretation of the FCRA would render the statute of limitations inconsequential in cases in which the plaintiff asserts the inadequacy of a CRA's uniform policy and procedure for providing consumer file disclosures.  No matter how long such a policy is in place, a prospective plaintiff who becomes aware of the policy can bring a challenge to the policy at the time of his or her choosing by simply requesting a disclosure, which the CRA is obligated by law to provide.  Such an interpretation would eviscerate the purpose of the statute of limitations, which is premised on the fundamental principle that prospective plaintiffs should not be allowed to sit on their rights indefinitely.

Three recent district court decisions confirm that a plaintiff's own actions "cannot restart the limitations clock."  Bittick v. Experian Information Solutions, Inc., 419 F. Supp. 2d 917, 919 (N.D. Tex. 2006); see also Blackwell v. Capital One Bank, 2008 WL 793476, at *3 (S.D. Ga. Mar. 25, 2008); Hancock v. Charter One Mortgage, 2008 WL 2246042, at *2 (E.D. Mich. May, 30, 2008).  In each of these cases, district courts held that the statute of limitations commenced upon plaintiff's discovery of the alleged violation and could not be extended by subsequent actions of the plaintiff, even when those actions trigger a defendant's obligations under the FCRA.

For instance, in Blackwell, the plaintiff discovered an erroneous item in her file in February 2003 and requested reinvestigation under the FCRA, but did not file suit until July 2006.  2008 WL 793476, at *1-*2.  Plaintiff attempted to save her claims from prescription by pointing to two additional requests for reinvestigation that she filed with defendants within the limitations period.  Similarly to Plaintiff Searcy here, the plaintiff in Blackwell "contend[ed] that [Defendant] committed new violations with regard to her additional complaints."  Id. at *2.  The district court rejected this argument:  "To allow [Plaintiff's]

claims to go forward based upon the subsequently submitted complaints would allow plaintiffs to indefinitely extend the limitations period and render it a nullity." Id. at *3.; see also Bittick, 419 F. Supp. 2d at 919 ("To do so would allow plaintiffs to indefinitely extend the limitations period by simply sending another complaint letter to the credit reporting agency.").

Similarly, in Hancock, the plaintiffs discovered erroneous information in a consumer disclosure in November of 2004 but did not file suit until December of 2007. 2008 WL 2246042, at *2. These plaintiffs also argued that their cause of action should survive because they made an additional complaint within the limitations period that triggered FCRA obligations. Id. Like Plaintiff Searcy, the Hancock plaintiffs argued that each time Defendants failed to reinvestigate constituted "a separate and distinct tort to which a separate statute of limitations applies." Id.[1] The court in Hancock flatly rejected as "wrong" the argument that a plaintiff's own action can "restart[] the statute of limitations.":

> A perpetual statute of limitations not intended by the FCRA would be the result if the Court adopted [plaintiffs'] argument. The [plaintiffs] knew of the errors on their credit report more than two years before they filed suit. As a result, their claim is barred by the statute of limitations set forth in § 1681p.

Id. The logic of the Bittick, Blackwell, and Hancock decisions applies with equal force to Plaintiff Searcy's argument here.

Plaintiffs are not entitled to "drag out an old dispute, polish it up, and call it new" by requesting an additional iteration of their consumer disclosure, when their cause of action has already matured and become actionable. Cf. Ryan v. Trans Union Corp., 2000 WL 1100440, at *2 (N.D. Ill. Aug. 4, 2000). This Court should not "permit plaintiff to end-run"

---

[1] Similarly to Plaintiff Searcy, the plaintiffs in Hancock prominently cited Hyde v. Hibernia Nat'l Bank, supra, to support their argument that there were "separate and distinct" torts. The Hancock Court found that while the Hyde decision "does discuss a situation in which the statute of limitations can be restarted, that situation does not pertain here." Id.

the statute of limitations by exploiting a CRA's obligation to provide a consumer disclosure upon request.  Id.

CONCLUSION

The FCRA statute of limitations begins to run when the consumer discovers the basis for liability under the FCRA. 15 U.S.C. § 1681p.  In this case, there are three consumer disclosures that Plaintiff alleges fall short of the requirements of the FCRA.  The basis for liability stemming from any and all of these three reports is identical.  The alleged shortcoming in the third Searcy SCAN Report was equally present in the first Searcy SCAN Report.  Accordingly, her discovery of any basis for liability occurred when she received this first report, and the statute of limitations should be measured against that January 2005 discovery.

Plaintiff in her attempt to escape the application of the two-year FCRA statute of limitations urges this Court to ignore the fact that any injury that she suffered was complete and actionable in January 2005.  Upon her receipt of an allegedly deficient consumer disclosure at that time, Searcy could have brought this exact same cause of action against the Defendants.  In 2005, she could have raised the exact same claims and sought the exact same damages.  The alleged "basis of the liability" was exactly the same in 2005 as it is today.  Because she did not seek to bring this claim within two years from the date on which this alleged liability arose, her claims are now time-barred.

For these reasons and those contained in the original memorandum, the Court should grant Defendants' motion for summary judgment.

Respectfully submitted,

s/ David R. Esquivel
David R. Esquivel (pro hac vice)
Jeffrey P. Yarbro (pro hac vice)
BASS, BERRY & SIMS PLC
315 Deaderick Street, Suite 2700
Nashville, TN  37238-3001
Phone:  615-742-6200
Fax:     615-742-0405

David L. Hartsell
MCGUIREWOODS LLP
77 West Wacker Drive
Suite 4100
Chicago, IL  60601-1818
Phone: 312-750-8898
Fax:     312-920-6766

Attorneys for Defendants

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system on this 1st day of July, 2008, which will send a notice of electronic filing to the following:

Edward H. Nielson (IL Bar #0252296)
Scott L. Anderson (IL Bar #6269332)
Pretzel & Stouffer, Chartered
One South Wacker Drive
Suite 2500
Chicago, IL  60606

Co-Counsel for the Plaintiff

M. Reid Estes, Jr.
Martin D. Holmes
Stewart, Estes & Donnell, PLC
Fifth Third Center
424 Church Street
Suite 1401
Nashville, Tennessee 37219

Lead Attorneys for Plaintiff


s/ David R. Esquivel
David R. Esquivel