UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GLADYS SEARCY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 08 C 985 |
| eFUNDS CORPORATION, d/b/a DEPOSIT PAYMENT PROTECTION SERVICES, INC., and DEPOSIT PAYMENT PROTECTION SERVICES, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendants eFunds Corporation and Deposit Payment Protection Services Inc. (collectively referred to as "eFunds") to compel and for sanctions against Plaintiff Gladys Searcy ("Searcy") pursuant to Federal Rule of Civil Procedure 37. For the reasons set forth below, the motion to compel is denied in part and entered and continued in part. The surviving portion of the motion will be recommended for referral to Magistrate Judge Cox for consideration and resolution. No sanctions will be imposed on either party.

## BACKGROUND

eFunds engages in payment processing and risk assessment to assist businesses and merchants in deciding whether to accept personal checks from consumers at the point of sale. To receive these services, businesses and merchants become members of eFunds' "SCAN" database and "SCAN Online" service. Both SCAN and SCAN Online provide check verification services by keeping files on consumers' check-writing histories and other financial information.

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, requires consumer reporting agencies to disclose information in the files they keep on specific consumers to the consumer upon request. According to the complaint, Searcy requested that eFunds disclose the contents of her file to her in September 2005 and again in October 2006. The complaint asserts that the disclosures eFunds sent did not contain all of the information in Searcy's file at the time of the request as required by 15 U.S.C. §1681g(a)(1), the sources of the information in her file as required by 15 U.S.C. §1681g(a)(2), or the names of the persons who procured consumer reports from eFunds regarding Searcy during the one-year period preceding her requests for a disclosure as required by 15 U.S.C. § 1681g(a)(3).

Prior to the filing of this action, Searcy's counsel represented plaintiffs Kimberly Sammons and Cheryl Beaudry in a nearly identical suit in the Middle District of

Tennessee. That case was also a putative class action, but it was voluntarily dismissed by the individual plaintiffs before the issue of class certification was addressed. Prior to the dismissal, eFunds produced a list of approximately 130,000 names and addresses of consumers who were sent file disclosures. After receiving this information, counsel for Sammons and Beaudry sent a form letter and questionnaire to approximately 2,500 of those consumers. The form letter informed recipients that counsel was in the process of bringing a class action against eFunds. The letter further explained that the suit had been filed on behalf of consumers who requested file information from SCAN between July 2005 and January 2008 and that the recipient was believed to have requested file information during that period. The letter then asked recipients to complete and return the accompanying questionnaire and provided counsel's contact information.

The one-page questionnaire asked recipients to provide a name, address, home and cellular telephone numbers, and email address. It then provided a blank area for respondents to describe their experience with SCAN and requested that they attach any written documentation in their possession related to experiences they had had with SCAN. Shortly after the letters were sent, the Tennessee action was dismissed and Searcy filed the instant suit, represented by the same counsel who had represented Sammons and Beaudry.

eFunds has served Searcy with discovery requests seeking production of several types of documents. First, eFunds asked for all of Searcy's checking account records from January 1, 2005, through the date the request was made. Second, it requested additional identifying information, such as addresses, for the 2,500 people who were sent the form letter and questionnaire. Lastly, eFunds requested documents relating to all communications between Searcy or her counsel and any member of the prospective class. Though Searcy has produced some responsive documents for each of these requests, eFunds contends that the production is incomplete or otherwise lacking and now seeks to compel production pursuant to Fed. R. Civ. P. 37.

## LEGAL STANDARD

Under Fed. R. Civ. P. 37(a)(3)(B)(iv), a party can move to compel discovery when an opponent fails to comply with a discovery request made pursuant to Fed. R. Civ. P. 34. Rule 34(a)(1) permits one party to serve another with a request to produce documents that are "in the responding party's possession, custody or control." Fed. R. Civ. P. 26(b)(1) allows discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." According to Fed. R. Civ. P. 26(b)(5)(A), a party claiming that otherwise discoverable information is privileged or subject to protection must expressly make that claim and describe the nature of unproduced materials in a manner that, without revealing the privileged or protected information itself, will enable

others to assess the claim. Questions of privilege that arise in the course of the adjudication of federal rights are governed by federal common law principles. Fed. R. Evid. 501; *see also U.S. v. Zolin*, 491 U.S. 554, 562, 109 S. Ct. 2619, 2625 (1989).

With these considerations in mind, we turn to the present motion.

## DISCUSSION

### I. Motion to Compel

In its initial form, eFunds' motion to compel sought production of three categories of documents and information: all documents related to Searcy's check-writing since January 1, 2005, that are in her possession or that she has a legal right to obtain; a complete list of potential class members who received the form letter and questionnaire sent out in the Tennessee case, including addresses and other identifying information; and all completed questionnaires and other written communications received in response to that mailing. Over the course of the briefing of the instant motion, the parties resolved their dispute with regard to the first two categories. Accordingly, we confine our analysis to the issues surrounding production of the completed questionnaires and other written responses to the form letter. Searcy maintains that the requested documents are protected by the work product doctrine or by attorney-client privilege.

*A. Work Product Doctrine*

In one arguments, Searcy contends that the requested documents constitute her counsel's work product. Documents and tangible things that have been prepared in anticipation of litigation are considered work product and are accordingly granted a qualified exemption from the liberal rules regarding discovery. Fed. R. Civ. P. 26(b)(3). The policy behind work product protection, as articulated in *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S. Ct. 385, 393 (1947) and confirmed in *Upjohn*, 449 U.S. at 398, 101 S. Ct. at 686-87, lies in the need for lawyers to work with a degree of privacy to further the interests of clients and, ultimately, the cause of justice.

In determining whether a particular document is subject to work product protection, a court must first determine whether it was prepared in anticipation of litigation. The sole document at issue in this dispute that was prepared by an attorney in anticipation of litigation is the blank questionnaire, which has already been produced to eFunds. None of the documents submitted to counsel by recipients of the letters were completed by counsel, so they provide no insight into his litigation strategy. Thus, the work product doctrine does not apply to the completed questionnaires or any preexisting documents that were submitted to Searcy's counsel.

*B. Attorney-Client Privilege*

Where an attorney-client relationship exists, the client may prevent disclosure of communications between the client and his or her attorney. The existence of an attorney-client relationship is not dependent upon the payment of fees or upon the execution of a formal contract. *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1331, 1317 (7th Cir. 1978). Instead, the relationship begins when a client believes that he or she is consulting an attorney in a professional capacity and manifests an intent to seek legal advice from that attorney. *Id.* The privilege applies to communications that take place when a client seeks legal advice from a professional legal adviser in that person's capacity as a legal professional, provided the communications are made in confidence. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). Unless the client waives the privilege, neither the client nor the attorney can be commanded to disclose the communications made. *Id.*

Privilege from disclosure is not a default position. Because the privilege runs counter to the main purpose of discovery—uncovering the truth—it must be "strictly confined within the narrowest possible limits consistent with the logic of its principle." *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983). Furthermore, though the attorney-client privilege protects the disclosure of the communications between a client and an attorney, the privilege does not bar disclosure of the underlying facts. *Upjohn*

*Co. v. United States*, 449 U.S. 383, 395-96, 101 S. Ct. 677, 685-86 (1981). Documents that would not otherwise be protected from disclosure do not automatically come within the scope of the privilege because they are transmitted to an attorney. *See*, *e.g.*, *Radiant Burners, Inc. v. American Gas Ass'n*, 320 F.2d 314, 324 (7th Cir. 1963); *In re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. 515, 519 (N.D. Ill. 1990); *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 4 (N.D. Ill. 1980). As the party refusing to disclose information based on a claim of privilege, Searcy bears the burden of establishing that the privilege applies. *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000).

Assessment of the applicability of privilege entails highly fact-specific inquiries under any circumstances. *Id*. Though it is possible that communications made before a professional arrangement is formalized can be privileged from disclosure, the amorphous nature of the interactions between two parties when no representation has been finalized further complicates this inquiry. In any event, assertions of privilege from disclosure must be made with particularity, expressly and with sufficient elaboration of the nature of the document or documents at issue that others can assess whether application of the privilege is appropriate. Fed. R. Civ. P. 26(b)(5)(A); *In re Grand Jury Proceedings*, 220 at 571; *Radiant Burners, Inc. v. American Gas Ass'n*, 320 F.2d 314, 324 (7th Cir. 1963). Conclusory statements of privilege are not sufficient to establish that a large group of documents is protected, and the fact that some documents

within the group may be privileged does not mandate a conclusion that all are. *Holifield v. United States*, 909 F.2d 201, 204 (7th Cir. 1990).

Searcy's arguments with regard to the application of the attorney-client privilege center on two cases: *Barton v. Smithkline Beecham*, 410 F.3d 1104 (9th Cir. 2005) and *Vodak v. City of Chicago*, No. 03 C 2463, 2004 WL 783051 (N.D. Ill. Jan. 16, 2004). In each of those cases, questionnaires filled out by potential class members were held to be communications with counsel and therefore not discoverable. However, in both cases there were facts available to the reviewing court that permitted assessment of the state of mind of the party having contact with the attorney. In this case, with one exception, Searcy has not provided sufficient information as to the documents she claims are privileged to allow a like assessment of the foundation of her resistance to their disclosure. The single exception is her own experience; given that she filed the instant suit five weeks after receiving the letter, there is a ready inference that her response to the questionnaire and any documents submitted to counsel therewith were provided with the intention of seeking legal advice from her present counsel.

With respect to the other requested documents, however, Searcy has not provided particularized bases for us to conclude that she has met her burden of demonstrating that the attorney-client privilege applies to them. As a result, her position distills to a blanket assertion that the documents at issue, many of which are preexisting or would

seem to contain purely factual information, are privileged. Based on the legal principles stated above, that position does not warrant application of the attorney-client privilege. However, it is conceivable that Searcy can produce fact-specific, particularized information to support her assertions that these materials are privileged.

Consequently, the motion to compel is denied with respect to Searcy's response to the questionnaire as well as documents she sent to counsel in response to the form letter. It is entered and continued with respect to all other documents received in the initial response to the form letter, including the completed questionnaires. The surviving portion of the motion will be recommended for referral to Magistrate Judge Cox for resolution. Prior to the initial appearance, Searcy must provide a complete privilege log to counsel for eFunds as well as to Judge Cox.

## II. Sanctions

eFunds' motion to compel also includes a call for sanctions pursuant to Fed. R. Civ. P. 37 premised upon Searcy's resistance to discovery and other conduct in this action. In her response, Searcy asks that eFunds be sanctioned pursuant to 15 U.S.C. § 1681n(c) and 28 U.S.C. § 1927. Though the parties have not worked as collegially as possible during the course of discovery in this case, none of the behavior described is so egregious as to warrant sanctions. No sanctions will be imposed at this time.

## CONCLUSION

Based on the foregoing analysis, eFunds' motion to compel is denied in part and entered and continued in part. The surviving portion of the motion will be recommended for referral to Magistrate Judge Cox for consideration and resolution. The requests for sanctions are denied.

/s/ Charles P. Kocoras

Charles P. Kocoras
United States District Judge

Dated:   March 5, 2009