| | | |
|---|---|---|
| GLADYS SEARCY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 08 C 985 |
| eFUNDS CORPORATION, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This case comes before the Court on Plaintiff Gladys Searcy's motion for class certification pursuant to Fed. R. Civ. P. 23, her Motion to Strike Portions of Tonya Weber's Declaration, and Defendants' Motion To Strike Declaration of Gladys Searcy. For the reasons stated below, Searcy's motion for class certification is granted in part and denied in part and her motion to strike is denied as moot. Defendants' motion is denied.

## BACKGROUND

Defendants eFunds Corp. and Deposit Payment Protection Services, Inc. ("Defendants") are check verification companies. Defendants contract with a number of retailers to operate a service called the Shared Check Authorization Network, or SCAN. SCAN is essentially an electronic "bad check" list. Defendants collect a list of

driver's license and checking account numbers ("consumer identifiers") associated with bounced checks and bank accounts closed under adverse circumstances. SCAN then compiles these identifiers into a database and distributes it to their customers to help them determine whether to accept a consumer's check. When a retailer becomes a SCAN member, Defendants electronically send the retailer an initial file containing a negative database containing a list of consumer identifiers associated with bad checks or adversely closed bank accounts. Each day thereafter Defendants send the retailer an update file with a list of consumer identifiers associated with new adverse transactions to add to the negative database and corrected information about accounts to delete from the database.

Defendants also operate a service called SCAN OnLine that allows retailers to access Defendants' database through the Internet instead of having to store and constantly update the database on their own computers. Defendants have stored all consumer check transactions processed through SCAN OnLine since its creation in 1998, including the date of transaction, consumer identifiers entered by merchants, and whether the particular check was approved or denied.

As a consumer reporting agency, Defendants are required by the Fair Credit Reporting Act ("FCRA") to provide individuals with a Consumer File Disclosure Report upon their request. 15 U.S.C. § 1681g. The FCRA also mandates that consumer

reporting agencies include certain types of content in the report, specifically: (1) all information in the consumer's file at the time of the request; (2) the sources of the information; and (3) the identities of all businesses who procured a consumer report from the consumer reporting agency during the preceding twelve-month period. 15 U.S.C. § 1681g(a)(1)-(3). From June 2005 to July 2008, SCAN issued its Disclosure Reports using a standardized format. The report provided two types of information: (1) any current bounced checks or bank accounts closed under adverse circumstances; and (2) any cleared items, or previously reported bounced checks or closed bank accounts that had been reported resolved.

Searcy made two requests for Disclosure Reports that were issued pursuant to this standardized formula.[1] Around September 13, 2005, Searcy presented a check from a recently opened bank account to a SCAN member-retailer. After the retailer declined the check, Searcy provided her driver's license number and some bank account numbers to SCAN and requested a report. She received it in the mail a few days later. Searcy requested another report from SCAN in October 2006. The report indicated that in February 2006 Searcy had written checks that were returned unpaid and therefore her identifiers had been placed in the list Defendants distribute to SCAN member-retailers.

---

[1] While many people (like Searcy) requested a Disclosure Report because they believed their checks were declined by retailers based on information from SCAN, anyone could request a Disclosure Report from Defendants.

On February 15, 2008, Searcy filed suit against Defendants, alleging that their Disclosure Reports failed to include certain information required by the FCRA in three areas: first, failing to include information associated with her identifiers from the SCAN OnLine database (and the retailer sources of that information); second, neglecting to incorporate a list of all retailers who possessed SCAN's database containing her identifiers during the twelve months prior to her request; and third, failing to identify all SCAN retailers to which Searcy presented a check during the year prior to her request. In addition to presenting her individual claims, Searcy wishes to represent the interests of four classes. She initially seeks to represent a class made up of all persons who requested a Disclosure Report from June 18, 2005, to July 20, 2008. She also proposes to represent a class of persons whose SCAN disclosures did not include SCAN OnLine transactions on file in Defendants' records at the time of the request. She further asks to represent a class of persons whose consumer identifiers were in the SCAN database sent to merchants during the 1-year period preceding the prospective class member's request for a report. Finally, Searcy asks to represent a class of persons who presented checks to SCAN merchants during the 1-year period preceding their report request.[2] Searcy now moves to certify these classes.

_____

[2] 15 U.S.C. § 1681g(a)(3) requires consumer reporting agencies to list all persons who procured a consumer report during the year prior to the date the report request was made. This temporal limitation on the reporting requirements is an important part of the definition of Searcy's third and fourth classes. However, in the interests of brevity, we omit mention of that requirement below.

## LEGAL STANDARD

To be certified as a class action, a claim must first satisfy four criteria: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). The first two focus on the characteristics of the class as a whole: the number of potential class members must be so large that joinder would be impracticable, and legal or factual questions presented in the putative class action must be common to all class members. Fed. R. Civ. P. 23(a)(1)(2). The third and fourth criteria concentrate on the attributes of the parties seeking to represent the class: the claims or defenses of those representatives must be of the same type as those of the class they seek to represent, and the representatives must be able to protect the interests of the class fairly and adequately. Fed. R. Civ. P. 23(a)(3)(4).

If an action shows each of these four attributes, the inquiry shifts to examine whether "the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Rule 23(b)(3) specifies that a class can be certified if the common factual or legal questions identified for purposes of Rule 23(a)(2) predominate over issues that pertain only to individual class members and if adjudicating the controversy as a class action would be superior to other possible methods. The party who seeks class certification bears the burden of showing that the Rule 23 requirements are satisfied. *Amchem*, 521 U.S. at 614.

# DISCUSSION

Before assessing the question of class certification, we must address Defendants'
motion to strike Searcy's declaration filed in support of class certification. According
to Defendants, the relief is warranted because, in their opinion, Searcy's declaration
contradicts statements she made in her earlier deposition. Courts may strike a witness'
sworn statement if it contradicts her prior deposition testimony. *See Patton v. MFS/Sun
Life Fin. Distribs.*, 480 F.3d 478, 488 (7th Cir. 2007). During her deposition,
Defendants' counsel asked Searcy whether a check written on October 15, 2005, was
the first check she wrote from a particular bank account. Searcy replied that she could
not recall. Her declaration states that she opened the account on September 12, 2005,
and wrote a check from that account that night or the next morning at a SCAN retailer
who declined to honor the check. Contrary to Defendants' assertions, these statements
are not inherently inconsistent such that both cannot be true. The deposition testimony
and the declaration relate to two entirely distinct events and Searcy's inability to recall
an asserted fact at her deposition is not tantamount to an affirmative misstatement.
Because Searcy's deposition and her declaration are not contradictory, there is no basis
to strike the declaration.

## I.      Motion To Certify

Searcy seeks certification of four classes. The first consists of all individuals who
received a Disclosure Report from Defendants from June 18, 2005, until July 20, 2008.

The second is comprised of individuals whose Disclosure Reports did not include SCAN OnLine Transactions ("SCAN OnLine Claims"). The third consists of individuals whose identifiers appeared in the SCAN database ("Bad Check List Claims"). The fourth class contains individuals who presented checks to SCAN retailers ("Check Presenter Claims"). We discuss each class in turn.

## A.     All Recipients of SCAN Disclosure Reports

Before a court can consider the Rule 23 criteria, a party seeking certification must first demonstrate that the proposed class is sufficiently definite to warrant certification. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). An overbroad putative class definition should be rejected in favor of a narrower one. *See Kohen v. Pac. Inv. Mgmt. Co., LLC*, 571 F.3d 672, 677 (7th Cir. 2009)."A class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Id*.

Membership in Searcy's first proposed class only requires receipt of a SCAN Disclosure Report during a three-year period. This definition presumes that every report issued during this time provided incomplete information. However, Defendants have demonstrated that this is not the case. For example, consumers with no previous interactions with SCAN have requested Disclosure Reports because they were concerned with identity theft. In those circumstances, Defendants provided these

consumers with blank, albeit complete, reports. In this situation, there can be no legal argument that the report provided violated the provisions of the FCRA relied upon by Searcy. These persons would have no claim akin to that of other class members and therefore the proposed class definition is too broad. Because the first proposed definition fails the class definition requirement, class certification would be inappropriate.

**B.     SCAN OnLine Class**

Searcy next asks us to certify a class consisting of all individuals whose Disclosure Reports did not include their prior transactions with SCAN OnLine retailers.

*1.     Rule 23(a) Factors*

a.     Numerosity

To satisfy the numerosity requirement, the number of putative class members must be sufficiently large to make joinder of all members impracticable. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). During discovery Defendants tendered a list of 40,142 individuals who could fall within the SCAN OnLine class. The joinder of thousands of individual plaintiffs from several different states would make orderly progression of judicial proceedings difficult. Therefore, the SCAN OnLine class is sufficiently numerous to render joinder impracticable, thus satisfying Fed. R. Civ. P. 23(a)(1).

b.      Commonality

Where injuries alleged by a class are the result of a standardized course of conduct by a defendant, the class members' claims will usually present at least some common facts and common legal questions. *See id*. In this case, Searcy argues that Defendants engaged in a standardized course of conduct by distributing Disclosure Reports without including SCAN OnLine transactions associated with the customer's identifiers. Several common questions of law and fact are raised by this course of conduct, including whether SCAN OnLine transactions constitute part of the consumer's "file" as defined by the FCRA, whether 15 U.S.C. § 1681g(a)(1) required Defendants to include SCAN OnLine transactions in Disclosure Reports, whether 15 U.S.C. § 1681g(a)(2) required Defendants to include SCAN OnLine merchants as the "sources of information" for SCAN OnLine transactions, whether Defendants' actions constituted violations of the FCRA, and whether the alleged violations were willful. Thus, the commonality requirement of Fed. R. Civ. P. 23(a)(2) is fulfilled.

c.      Typicality

The typicality requirement of Fed. R. Civ. P. 23(a) is satisfied if the same course of conduct that produced the named plaintiff's claim produced the claims of the class and the same legal theory is advanced as to both. *De La Fuente v. Stokely-Van Camp, Inc.* 713 F.2d 225, 232 (7th Cir. 1983). This factor connects the two factors of commonality and adequacy of representation by ensuring that the claims litigated by the

class representative will involve the same factual and legal arguments that pertain to the class as a whole and that the resolution of the representative's claims will in turn address the claims of the group. *Id.; see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997).

Searcy claims that Defendants violated the FCRA by failing to include SCAN OnLine transactions in her Disclosure Report. The claim of each member of the SCAN OnLine class arises from the same practice and alleges the same violations of the FCRA. Searcy's claim is therefore typical of those of the SCAN OnLine class because the course of conduct that produced it also produced the claims of the class, and Searcy advances the same FCRA claim that will be brought by the class.

d.    Adequacy

The final subsection of Fed. R. Civ. P. 23(a) requires that a class representative "fairly and adequately protect the interests of the class." This requirement has been interpreted to consist of two components: adequacy of the named plaintiff to represent and thereby to protect the interests of absent class members and adequacy of class counsel. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). In order to be an adequate class representative, a named plaintiff must have the same interests and have incurred the same legal injury as the class members. *Uhl v. Thoroughbred Tech. and Telecomm., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002).

Searcy acknowledges that she had no transactions in Defendants' SCAN OnLine records and she therefore has no SCAN OnLine claim. Because Searcy did not incur the same legal injury as the members of the putative class she seeks to represent, she is an inadequate class representative. Because Searcy has not established that the SCAN OnLine class satisfies each of the Rule 23(a) criteria, class certification would be inappropriate on this record.

## C.    Bad Check List Class

Searcy next asks us to certify a class of individuals whose identifiers appeared in the SCAN database prior to their request for a Disclosure Report but did not appear on the report they received.

### 1.    *Rule 23(a) Factors*

a.    Numerosity

Defendants elected to stipulate to the numerosity of the Bad Check List Class in lieu of producing records with sensitive consumer information. Based on this stipulation, the fact that Defendants' electronic bad check database contained over one million identifiers, and the fact that Defendants distributed around 180,000 consumer reports during the relevant period, we conclude that the putative class satisfies numerosity.

b.    Commonality

Searcy contends that Defendants engaged in the required standardized course of conduct by sending Disclosure Reports to persons whose identifiers appeared in the SCAN database without including the names of the retailers who received that information in the report. Many common questions of law and fact are raised by these events, including whether a retailer who received a SCAN database from Defendants procured a consumer report under 15 U.S.C. § 1681g(a)(3), whether Defendants' failure to identify the merchants who received the SCAN database violated § 1681g(a)(3), and whether Defendants' actions were willful. The commonality requirement has been satisfied.

c.    Typicality

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc*. 713 F.2d 225, 232 (7th Cir. 1983). Searcy's claim stems from Defendants' failure to include the list of retailers who received the electronic bad check database (containing her consumer identifiers) during the year preceding her report request. This is the same kind of conduct from which the claims of the members of the putative class arise. Searcy also

alleges the violation of the same provision of the FCRA, namely 15 U.S.C. § 1681g(a)(3). Searcy's claim is typical of those of the class.

d.     Adequacy

Adequacy requires the named plaintiff and class counsel to adequately represent the interests of other class members. and the adequacy of class counsel. *Ret. Chicago Police Ass'n*, 7 F.3d at 598. A named plaintiff must have the same interests and have incurred the same legal injury as the class members in order to serve as an adequate class representative. *Uhl*, 309 F.3d at 985. Searcy suffered the same alleged violation of the FCRA as the members of the putative Bad Check List class. She has pursued those interests in prosecuting this suit against Defendants for nearly two years.

Defendants argue that Searcy is an inadequate class representative because she has credibility problems that would prejudice the members of this putative class. If this case were to proceed to trial, Searcy's credibility will indeed be relevant and an issue in the case. Contrary to Searcy's assertions, Defendants do not fail to elaborate or specify the nature of their "unique defenses" against Searcy and the impact these defenses will have on her ability to serve as class representative. Defendants have also presented specific evidence of Searcy's potential credibility issues; her testimony regarding her attempts to pass checks from accounts that had long since closed may place her credibility at issue were this matter to proceed to trial. Despite these concerns,

we require a stronger showing of credibility issues before decertifying the class on the basis of Searcy's inadequacy. *Cf. Kaplan v. Pomerantz*, 132 F.R.D. 504, 510 (N.D. Ill. 1990) (holding class representative inadequate when he gave demonstrably false testimony during deposition). Furthermore, Defendants have not shown how Searcy's credibility will be at issue in prosecuting the claims of the Bad Check List class; her membership in the class is established by Defendants' own records and the success of her claim rests largely on an interpretation and application of the FCRA. But whether or not Searcy's credibility renders her an adequate representative will be reconsidered, upon request, as the record is further developed. Accordingly, we find that Searcy is an adequate representative for this class.

Fed. R. Civ. P. 23(g) provides four factors that a court must consider to determine whether counsel can adequately represent the class and merits appointment to serve as class counsel. As applied to this matter, those factors are the work that counsel has done with respect to the potential class claims, experience in handling class actions, counsel's knowledge of the FCRA, and the resources that counsel will devote to the representation of the class. Counsel has done a significant amount of work over the past year and a half that this case has been pending including extensive discovery proceedings and active motion practice. Counsel also has extensive experience in handling class actions, some of which have involved the FCRA. His submissions to the

Court demonstrate in-depth knowledge of the FCRA. Finally, counsel has committed to devoting adequate human and financial resources to properly represent the class.

We therefore find that Searcy and her counsel will adequately protect the Bad Check List class' interests.

2.    *Ascertainability*

Although Rule 23 does not explicitly contain the requirement that has come to be known as ascertainability, Seventh Circuit case law clearly calls for it to be present in any certified class. *Oshana*, 472 F.3d at 513. To be ascertainable, a class must be identifiable as a class and membership within it must be determined by application of precise, objective criteria. *Gomez v. Illinois State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987).

Membership in the Bad Check List class can be assessed by using solely objective criteria including whether the putative class member requested a Disclosure Report during the relevant time period and whether his or her consumer identifiers appeared on the SCAN database at any time during the year prior to their request. Defendants protest that the difficulties associated with combing through their data in order to identify potential Bad Check List class members renders the class unascertainable. But the arduousness involved in combing through data to determine whether putative class members meet the objective criteria of class membership does

not render a class unascertainable. Because Defendants do not highlight any problem with the criteria with class membership, we therefore find the ascertainability requirement met for the Bad Check List class.

3.   *Predominance and Superiority Under Rule 23(b)(3)*

As Searcy has met the requirements of Rule 23(a), we now proceed to examining whether the proposed action can be maintained under one of the subsections of Rule 23(b). *Amchem*, 521 U.S. at 614. Searcy maintains that this class falls within Rule 23(b)(3), which provides that a class action can be maintained if common questions predominate over those specific to individual class members and class treatment is a superior method of adjudication. The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. Though the predominance factor is related to the Rule 23(a)(2) commonality factor, the predominance factor is "far more demanding" than the commonality requirement of Rule 23(a). *Id*. at 623-24. While commonality looks to whether class members share factual or legal issues, the predominance inquiry examines whether the shared attributes will be a main focus of the litigation. *See id*.

The Bad Check List claims arise from a standardized course of conduct: the claimed violation of a single provision of the FCRA. Common questions of law, primarily whether a retailer who received a SCAN database from Defendants procured

a consumer report under 15 U.S.C. § 1681g(a)(3), will be the focus of the litigation. Defendants argue that the determination of whether a particular plaintiff belongs in the Bad Check List class is an individualized inquiry that would militate against class treatment, but the information needed to determine class membership is in Defendants' possession and only requires a review of their records. This sort of inquiry will not result in a large number of "mini-trials" that would detract from the resolution of the legal questions common to all members of the putative class. Common questions will be the main focus of this action, making class treatment with its attendant consistency and efficiency a superior method of resolving this controversy. As a result, all of the requirements of Rule 23 are satisfied, and certification is appropriate for the Bad Check List class.

**D.      Check Presenter Claims**

Lastly, Searcy asks us to certify a class of individuals who presented checks to SCAN retailers, requested Disclosure Reports, and received reports without the names of those retailers included.

*1.      Rule 23(a) Factors*

a.      Numerosity

In reviewing Defendants' records from the first two years of the relevant three-year period in this case, Searcy identified around 80,000 customers who presented a

check at a SCAN retailer and then requested a Disclosure Report in which the names of those retailers were not included. Joinder of the claims for such a large number of individuals would be impracticable; the numerosity requirement is therefore satisfied.

b.    Commonality

The Check Presenter class claims stem from a common course of conduct on Defendants' part, namely the failure to include in Disclosure Reports the names of SCAN retailers at which the class member presented a check. *See Keele*, 149 F.3d at 594. Several common questions of fact and law arise from Defendants' course of action, including whether using SCAN service to process the requestor's check constitutes "procuring a consumer report" under the under 15 U.S.C. § 1681g(a)(3), whether Defendants' failure to identify the merchants who used the SCAN database violated § 1681g(a)(3), and whether Defendants' actions were willful. We therefore find the commonality requirement satisfied.

c.    Typicality

Searcy's claim stems from Defendants' failure to include the name of the retailer who used SCAN in processing one of her checks in September 2005. This is the same conduct from which the claims of the members of the putative class arise. Searcy also alleges the violation of the same provision of the FCRA. Searcy's claim is typical of those of the class.

d.       Adequacy

Searcy suffered the same alleged legal injury and has interests identical to those

of the putative class members. As was the case with regard to the Bad Check List class,

Defendants have not yet shown that Searcy possesses significant credibility problems

that would affect her ability to ably represent the members of the Check Presenter class.

We therefore decline to hold that Searcy poses credibility problems that render her an

inadequate class representative at this time.

2.       *Ascertainability*

Defendants highlight certain responses to surveys[3] regarding transactions with

SCAN to argue that the Check Presenter class is unascertainable. Defendants again

misconstrue the ascertainability requirement as relating to the means used to identify

potential class members instead of the criteria used to distinguish members of the class

from non-members. Membership in the Check Presenter class can be assessed by using

solely objective criteria, namely whether the putative class member received a

Disclosure Report during the relevant time period and had presented a check at a SCAN

member retailer prior to making that request. These are matters within the personal

---

[3] These surveys were issued by Searcy's counsel in an earlier related proceeding involving similar claims against Defendants. Putative class members were sent questionnaires asking them to describe the circumstances of their previous interactions with SCAN.

knowledge of the putative class members and are a suitable basis for class membership. Defendants' concerns regarding the use of surveys to identify class members are exaggerated; a party would need a good-faith basis to believe that he or she satisfies the class definition before making a representation to this court to that effect. We therefore find the ascertainability element satisfied.

3.    *Predominance and Superiority Under Rule 23(b)(3)*

The Check Presenter class claims arise from a uniform course of conduct and involve an alleged violation of a single provision of the FCRA. Common questions of law, in particular the question of whether a retailer's use of SCAN when a customer presents a check constitutes "procure[ment] of a consumer report" under the FCRA, will be the focus of litigation. The resulting interpretation of the FCRA will essentially determine whether Defendants are liable for neglecting to provide certain content in their reports during the relevant period. Defendants argue that individualized inquiries as to whether a particular SCAN member-merchant actually utilized SCAN when deciding to accept or decline an individual's check render this action inappropriate for class treatment. Though Defendants' own employees make generalized statements that retailers that have purchased the SCAN service choose not to use the service in deciding to accept a customer's check, Defendants have not presented any evidence from retailers to support the counterintuitive proposition that stores that pay monthly fees for

SCAN do not employ it. In the absence of such evidence, we cannot say at this point that individualized issues will predominate over the central common legal questions of this litigation.

We therefore find that all Rule 23 requirements are satisfied for the Check Presenter class such that class certification is appropriate.

## CONCLUSION

Based on the foregoing reasons, Plaintiff's Motion for Class Certification is granted in part and denied in part. Because we did not rely on any of the challenged portions of Tonya Weber's declaration in any material way in deciding this matter, Plaintiff's Motion to Strike is denied as moot. Defendants' Motion to Strike is denied.

_____
Charles P. Kocoras
United States District Judge

Dated: _____January 20. 2010_____