# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | Sheila Finnegan |
|---|---|---|---|
| **CASE NUMBER** | 08 C 985 | **DATE** | 7/22/2010 |
| **CASE TITLE** | Searcy vs. eFunds Corporation, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons discussed below, Plaintiffs' Motion for Protective Order to Strike Defendants' First Set of Interrogatories and Requests for Production of Documents [243] is granted in part and denied in part. Plaintiffs must respond to Defendants' written discovery requests as directed below within thirty days of this Order.

■[ For further details see text below.]

Notices mailed by Judicial staff.

---

## STATEMENT

This matter comes before the Court on the Motion of Plaintiff Elizabeth Krech for Protective Order to Strike Defendants' First Set of Interrogatories and Requests for Production of Documents. Krech was added as a named plaintiff after the District Judge determined that the existing plaintiff, Gladys Searcy, was not an adequate class representative for any of the three classes that otherwise are viable. Defendants have now served written discovery on Krech that Plaintiffs contend should be struck or at least limited because it: (1) seeks irrelevant information; (2) is overly broad and burdensome and designed to harass; and (3) exceeds the limits on such discovery previously imposed by the District Judge. For the reasons set forth below, the motion is granted in part and denied in part.[1]

### BACKGROUND

SCAN Negative Database

On February 15, 2008, Gladys Searcy filed a putative class action against check verification companies eFunds Corp. d/b/a Deposit Payment Protection Services, Inc. and Deposit Payment Protection Services, Inc. ("Defendants"), alleging violations of the Fair Credit Reporting Act ("FCRA"). During the relevant time period, Defendants operated a service called the Shared Check Authorization Network ("SCAN") which is essentially an electronic "bad check" list. Defendants collected and stored on a database the driver's license and checking account numbers associated with bounced checks and bank accounts closed under adverse circumstances ("the negative database"). Merchants who paid for the SCAN service received the negative database electronically (with updates on a daily or near daily basis) and stored it on their own computer system for use when processing consumer checks. The merchants did not track and report to SCAN whether or how they used the negative database. Nor did they track and report to SCAN the identifiers related to each check considered for payment. A smaller number of merchants, however, opted for the SCAN

OnLine service that allowed them to access the negative database through the Internet on a computer system hosted by the defendants rather than storing it on their own system. For these merchants, Defendants tracked and stored all the transactions processed by the merchants using SCAN OnLine, including the date/time of the transaction, the merchant's name, store number, check number, check amount, consumer's identifier(s) inputted by the merchant, and the approval/decline code.

Disclosure Reports

SCAN required merchants that declined a consumer's check on the basis of information in the negative database to present the consumer with an "adverse action notice." The notice informed consumers that they could contact SCAN for help in determining why a check had been declined and how to resolve the situation. Consumers who contacted SCAN could learn which identifiers appeared in the negative database and the prior transactions that caused them to appear there. Consumers could also request a SCAN Consumer File Disclosure Report ("Disclosure Report" or "report").

Allegations

Plaintiffs allege that Defendants are consumer reporting agencies as defined by the FCRA and that, when merchants received the negative database on a daily basis, as well each time they accessed the database to process a check, the merchants were "procuring" consumer reports. Plaintiffs contend that the FCRA therefore required the SCAN Disclosure Reports to include certain information, namely: (1) any information stored on Defendants' system for transactions processed through SCAN OnLine; (2) the identity of merchants who procured the SCAN negative database during the one-year period preceding any Disclosure Report sent to the consumer, as well as merchants who used the database; and (3) the sources of the information contained on the negative database.[2]

Plaintiffs allege that, during the period from June 18, 2005 through July 20, 2008 (hereinafter "the liability period"), the SCAN Disclosure Reports were in a standardized format that omitted the above information in that they contained only two types of information about the consumer: any current bounced checks or bank accounts closed under adverse circumstances; and any cleared items, or previously reported bounced checks or closed bank accounts that had been reported resolved.

Classes and Class Representatives

After extensive briefing and argument on class certification issues, the District Judge ultimately identified three classes that satisfied the requirements for certification, except that the named plaintiff, Searcy, was not an adequate class representative. Plaintiffs were given leave to amend the complaint to add Krech (and later Russell Hornbeck) as class representatives and did so.

The three classes that the District Judge found to be viable (aside from the inadequacy of the class representative) were (1) the Scan OnLine class; (2) the Check Presenter class; and (3) the Bad Check List class. Each class (as now described in the Third Amended Complaint), and the pertinent prior rulings related to that class are discussed in turn since this bears on whether the requested discovery is relevant.

A.     SCAN OnLine Class: This class would include all persons who received a SCAN Disclosure Report during the liability period which did not include information related to SCAN OnLine transactions in Defendants' records at the time of the person's request. The District Judge declined to certify this class only

because Searcy was not an adequate class representative in that she had no transactions in Defendants' SCAN OnLine records and thus had no SCAN OnLine claim. For this reason, Searcy had not incurred the same legal injury as the members of the putative class she sought to represent. (Mem. Op. 10-11, Jan. 20, 2010 (Doc. 188).) It is undisputed that the new named plaintiffs, Krech and Hornbeck, *did* have transactions in the SCAN OnLine records; Defendants' own records reflect that each wrote checks that were processed using SCAN OnLine, and subsequently received SCAN Disclosure Reports during the liability period that omitted certain information that Plaintiffs contend is required under the FCRA.

B.  The Check Presenter Class: This class would include all persons who received a SCAN Disclosure Report during the liability period and who had presented a check to a SCAN merchant during the one-year period preceding their request for a report. The District Judge initially certified this class (*id.* at 17-21), but later decertified it based on new evidence casting "significant doubt on the veracity of [Searcy's] sworn testimony" that she had presented a check to a SCAN merchant. (Mem. Op. 13, Mar. 31, 201 (Doc. 227).) Because Defendants' records did not indicate whether Searcy had presented a check to a SCAN merchant or not, this sworn testimony from Searcy (and her credibility) were crucial to the District Judge's finding that she had a Check Presenter claim and was an adequate class representative. With respect to the new named plaintiffs, Krech and Hornbeck, the situation is different because Defendants' own records demonstrate that each presented a check to a SCAN merchant during the one-year period preceding their request for a SCAN Disclosure Report.

C.  The Bad Check List Class: This class would include all persons who received a SCAN Disclosure Report during the liability period whose driver license numbers and/or bank account numbers were contained in the SCAN negative database during the one year period preceding the request for the report. The District Judge initially certified the class but, upon reconsideration, decertified the class after concluding that Searcy was not an adequate class representative because of the lies in her declaration (discussed above). *Id.* at 13. While Krech does not assert a Bad Check List claim, Hornbeck does and is proposed as the new class representative. Defendants' own records establish that Hornbeck received a SCAN Disclosure Report during the relevant period and that his checking account number was contained in the negative database within the year preceding the request for the report.

Prior Rulings and Hearings

In opposing Plaintiffs' motion to amend the complaint to add Krech as a plaintiff (and later Hornbeck), Defendants argued that they would be prejudiced by the amendment because they would need to redo all the discovery that had been done for Searcy. Specifically, they noted that they would need to discover the checking accounts and check writing history of the new plaintiffs and issue third party subpoenas to gather their checking account information. (Mem. in Opp'n. to Pls.' Mot. to Am. Compl. (Doc. 208) at 11-12.) Defendants also argued that they would need to prepare revised briefing on the issues of adequacy, predominance, and superiority of the proposed classes. *Id.* Plaintiffs disagreed, asserting that there was no need for such discovery since Defendants' own records provided indisputable proof that the new plaintiffs had incurred the same legal injury as members of the putative class.

During the March 31, 2010 hearing before the District Judge (when leave to amend was granted) Defendants asked for the opportunity to take discovery to find out whether Krech and the other new plaintiff who was soon to be added were adequate representatives. The District Judge stated:

I will give you some chance to do that discovery for that limited purpose, without getting into too much detail. So, why do we not do this: On the assumption that we will have a new putative representative for that class [Hornbeck -- for the Bad Check List class], I will give you 30 – days within which you can depose the new proffered representative."

(Hr'g. Tr. 5, Mar. 31, 2010.)

A week later, the parties appeared in Court again on Defendants' motion for clarification. The District Judge said:

First, as to Ms. Krech, there is discovery ordered as to her adequacy as a class representative for the Check Presenter class. The motion to certify her as a representative for the SCAN OnLine and the Check Presenter classes hasn't been received or filed, so we were premature in saying anything along those lines.

We are going to decertify the Check Presenter class so as not to interfere with appellate rights and accelerate things that should not be accelerated.

Any appeal in this case should have a full record, including discovery as to the adequacy of the representative, and so that class is going to be decertified pending receipt of a motion to certify her as a representative and the class itself.

I'm not and don't intend to revisit any of the issues of fact and law [we] have already engaged in other than the representation question, so you don't have to do all that over again, but I think that should clarify the positions of the parties and safeguard any appellate rights without having them go upstairs prematurely....

(Hr'g. Tr. 2-3, Apr. 8, 2010.)

Discovery Served on Krech

On April 5, 2010, Defendants served written discovery on Krech in the form of seventeen interrogatories and thirteen document requests, and indicated that they would be serving similar written discovery on Hornbeck. The discovery was similar in scope and content to what previously had been served on Searcy. These discovery requests sought such information as every bank account, every instance when a check was declined, every consumer disclosure that she ever requested, documents showing her financial resources, a description of all communications with the law firms representing the class prior to her engaging the firms, and information related to experts. These discovery requests led Plaintiffs to file the pending motion for a protective order which asks this Court to strike the discovery or at least limit it.

## ANALYSIS

Under Fed. R. Civ. P. 26(c)(1) this Court may, for good cause, issue an order forbidding or limiting discovery to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Before turning to the specific discovery requests and this Court's ruling on each, we discuss certain preliminary and overarching arguments made by the parties.

# STATEMENT

A.   Scope of Discovery: The parties disagree as to whether the District Judge imposed any limits on the discovery that may be taken of the new proposed class representatives. Plaintiffs argue that discovery is limited to a deposition of each on the issue of their adequacy as a named plaintiff. Defendants contend that there are no such limits on the type of discovery that may be served or its focus and they may serve written discovery on all class issues, the merits and damages. (Resp. 1-2.)

At Plaintiffs' suggestion (Reply 5 n.4.), this Court has examined the parties' filings on the motion for class certification, as well as the District Judge's opinions and his remarks during the March 31, 2010 and April 8, 2010 hearings. Based on this review, this Court concludes that discovery at this juncture is limited to what is needed to determine the adequacy of the new plaintiffs to serve as class representatives.[3] The Court disagrees, however, with the argument that such discovery is limited to taking depositions of these new plaintiffs. While the District Judge stated that Defendants could depose the new plaintiffs, he was not asked to rule (and did not rule) on whether Defendants could serve any written discovery. (Hr'g. Tr. 5, Mar. 31, 2010.) Therefore, this Court declines to categorically strike *all* written discovery as impermissible and instead examines each written request individually to assess relevancy.

B.   Relevancy: The also parties disagree as to whether the information and documents sought by Defendants are relevant to the issue of the adequacy of Krech. Plaintiff's position is that Krech is an adequate class representative if she incurred the same legal injury as the class members. They further argue that Defendants' own records indisputably show that she did suffer such an injury, at least for the SCAN OnLine and Check Presenter classes.[4]

Turning first to the SCAN OnLine class, Plaintiffs argue (and Defendants do not dispute) that the Defendants' records reflect that: (1) Krech presented a check to Casual Corner in August 2005, which was processed by Casual Corner using SCAN OnLine; (2) information regarding the Casual Corner transaction was contained in Defendants' files and records at the time Krech received a Disclosure Report in October 2005; and (3) this transactional information was not included in the Disclosure Report that Defendants sent to Krech. Since Plaintiffs believe the injury is proved from Defendants' own records, they argue that there is no reason to allow intrusive discovery of all of Krech's bank accounts, credit history, and check writing activities in order to learn whether she suffered the requisite injury and therefore can serve as a class representative. While Defendants disagree and contend that all the written discovery is necessary, they do not articulate what they might learn from any specific discovery request and how such information would alter what their own records show or otherwise demonstrate that Krech does not have a SCAN OnLine claim.

Plaintiffs similarly argue that no discovery is needed from Krech to determine her adequacy to represent the Check Presenter class since Defendants' own records reflect that Krech presented a check to a SCAN merchant (Target) in October 2005. Target declined the check and referred Krech to SCAN. Krech subsequently requested and received a Disclosure Report from SCAN that did not list Target as a merchant who had procured a consumer report about her within the preceding year.[5]

Defendants do not deny that their records show this but argue that Krech may not have a claim because Target may not have used the SCAN negative database when processing the check. They point out that Target maintained its own internal verification system to process checks before accessing SCAN's negative database and so may have declined the check based on a mistake in Target's own internal system rather than anything in the SCAN database. (Resp. 10.) Defendants posit that, if SCAN had no role in the decline of Krech's check at Target, then she has no standing to bring a Check Presenter claim and is not an adequate class representative.

This Court need not decide the validity of this standing argument since it is beside the point for purposes of the pending discovery motion. What is pertinent instead is whether any of the written discovery seeks information that is relevant to this standing issue. While Defendants are silent on this question, logically any information about the internal processes of Target, and whether it relied on its internal database or the SCAN database (or both) when declining Krech's check, must come from Target rather than Krech.

Defendants argue more generally that Plaintiffs' view of what is relevant discovery is unduly narrow because Plaintiffs have oversimplified what class members must prove to prevail. (Resp. 9 (Defendants "fundamentally disagree with Plaintiff's entire characterization of what the...FCRA requires of Defendants.").) Most significantly, Defendants dispute that all information provided to merchants through the SCAN and SCAN OnLine systems constitutes a "consumer report" as defined in the FCRA. They therefore argue that the omission of certain information from the Disclosure Reports did not violate the FCRA. *Id.* But Defendants do not say how, under their alternative view of what FCRA requires, the specific information and documents that they seek are relevant to whether a claim exists. Nor do they explain how the discovery is relevant to the question of what the FCRA requires under the circumstances of this case. For example, they do not indicate how learning the identity of all of Krech's bank accounts or seeing every consumer disclosure report that she ever received may uncover evidence probative of what qualifies as a "consumer report" under the FCRA and what categories of information were required to be in SCAN Disclosure Reports to comply with the FCRA. Plainly, Defendants do not need information or documents from Krech in order to make these arguments.

Defendants also argue that the discovery *must* be relevant to Krech's adequacy because similar discovery obtained from Searcy was relevant. Indeed, the discovery from Searcy allowed Plaintiffs to prove that she had lied in saying that she presented a check to a SCAN merchant and this caused the District Judge to decertify the classes for which Searcy had been the only named plaintiff. (Resp. 3.) One weakness with this argument is that Defendants' own records reflect that Krech *did* present a check to a SCAN merchant. The records did not show this for Searcy which is why her sworn testimony on the point was vitally important in determining whether she had a Check Presenter claim and could represent the class. (Resp. 9.) Defendants also say the written discovery is relevant because it will shed light on Krech's credibility, but do not identify any particular statement that Krech has made (in her declaration) or is expected to make (at trial) that is disputed. Defendants again simply point to their success in undermining Searcy's credibility with the discovery that was permitted about her as a basis for scrutinizing all of Krech's accounts, check writing, and credit history requests. Of course, unlike the situation with Searcy, it does not appear that Krech's claim rises or falls on the believability of her own testimony that she presented a check since Plaintiffs will rely on Defendants records to prove this point. Nonetheless, since Plaintiffs apparently will call Krech as a witness at trial and the substance of her future testimony is unknown, this Court is unable to conclude that her credibility is irrelevant.

Finally, Defendants argue that the discovery should be permitted because the standard for relevancy is broad, Krech's entry into the case is recent, and Plaintiffs seek in excess of $100 million in statutory damages for the classes. The Court agrees and this is why Defendants must be given some latitude to obtain information and documents from Krech that arguably may bear on her adequacy to serve as a class representative. At the same time, this Court must consider whether the discovery requests are unnecessarily broad and burdensome such that they should be stricken or narrowed.

C.     Rulings on Specific Discovery Requests

# STATEMENT

With the above considerations in mind, this Court has examined each discovery request individually, weighing the relevancy of the information sought and the extent of the burden to produce it. This Court has also considered the necessity for the written discovery in view of Krech's upcoming deposition. In some instances, the Court does not require a response to an Interrogatory because the information can more easily be obtained during Krech's deposition.[6]

The rulings on each discovery request are set forth below. Because the parties did not address the relevancy (and burden) of each specific discovery request (and instead took an all or nothing approach), this Court does not do so either.

## Credit Information[7]

I-4: Identify each consumer disclosure you requested from any consumer reporting agency, stating

    (a) name and location of the consumer reporting agency
    (b) date of your request
    (c) reasons for requesting your consumer disclosure

Ruling: Krech must respond to this request as narrowed: request covers only consumer disclosures that Krech requested from SCAN during the liability period (6/18/05 to 7/20/08), and asks only for the date of the request but not the reason for each request.

D-3: Copies of your requests for file disclosures, and any responses and subsequent communications, from any credit reporting agency, consumer reporting agency, or nationwide speciality consumer reporting agency.

Ruling: Krech must respond to this request as narrowed: request covers these documents only for any SCAN disclosures during the liability period.

D-2: Documents, including but not limited to reports, receipts, invoices, or billing or bank statements, sufficient to show the specific information that you contend was missing from the file disclosures provided to you by the Defendants.

Ruling: Krech must respond.

D-7: All documents, in either written or audio format, containing any of the phone calls or correspondence referenced in your Complaint.

Ruling: Krech must respond.

D-12: All documents provided to you by the Defendants or provided by you to the Defendants.

Ruling: Krech must respond.

## Bank Accounts and Check Writing

I-5: Each and every account that she has maintained with any bank, stating:

    (a) name and location of the bank;

(b) name or names on the account;
(c) account number or numbers or any other identifiers;
(d) the type of account (e.g., savings, checking, etc.);
(e) the dates on which the account was opened or closed; and
(f) if applicable, the reason for the closing of the account.

Ruling: Krech must respond to this request as narrowed: request covers only checking accounts that were open between June 2004 and July 2008, indicating the name of the bank, the signatories on the account, and the opening and closing date of each account. Account numbers are only needed for an account if Krech requested a SCAN Disclosure Report in relation to a transaction in which she used a check drawn on the particular account.

D-4: All documents related to your check writing, including copies of cancelled checks, bank statements, and other materials received from your bank(s).

Ruling: Krech must respond to this request as narrowed: request covers only cancelled checks and other check writing documents that relate to transactions with SCAN merchants[8] between June 2004 and July 2008, or relate to dealings with SCAN during this period.

I-6: Identify each instance in which you have ever had a check declined by a merchant, stating:
(a) name/location of merchant that declined your check;
(b) date/time of attempted purchase;
(c) amount of attempted purchase;
(d) amount of funds in your checking account at the time of the attempted purchase.

Ruling: Krech must respond to this request as narrowed: request covers only instances in which she has had a check declined by a SCAN or SCAN OnLine merchant between June 2004 and July 2008 but only IF she requested a Disclosure Report from SCAN after the check was declined. For each instance, the information identified in (a) through (d) is to be provided.

I-7: Identify each instance in which a check written by you and accepted by a merchant as payment was ever returned to the merchant by your bank unpaid, stating:
(a) name/location of merchant that accepted your check;
(b) date/time of attempted purchase;
(c) amount of attempted purchase;
(d) amount of funds in your checking account at the time of the attempted purchase; and
(e) the reason that your bank returned the check to the merchant and/or declined to make payment.

Ruling: Krech must respond to this request as narrowed: request covers only instances between June 2004 and July 2008 in which a check written by her and accepted by a merchant as payment was returned to the merchant by the bank unpaid IF she requested a Disclosure Report from SCAN after the check was returned. For each instance, provide the information identified in (a) through (e).

D-13: All documents provided to you by a merchant or provided by you to a merchant regarding the acceptance or decline of a check transaction.

Ruling: Krech must respond to the request as narrowed: request covers documents provided to Krech by a

SCAN merchant or provided by her to a SCAN merchant regarding the acceptance or decline of a check transaction if that transaction occurred between June 2004 and July 2008 IF she requested a Disclosure Report from SCAN after the transaction.

I-8: Identify each time you presented a check from 10/19/04 to 10/19/05 to any one of the merchants identified on Exhibit A and for each, state:
       (a) name/location of merchant;
       (b) date/time of purchase;
       (c) amount of purchase;
       (d) whether merchant accepted your check as payment.

Ruling: Krech must respond to the request as narrowed: request asks Krech to identify each time she presented a check from 10/19/04 to 10/19/05 to any of the merchants identified on Exhibit A provided that the merchant is a SCAN merchant and provided that she requested a Disclosure Report from SCAN after presentation of the check.

**Communications with Counsel and Fee Arrangements**

I-9: All communications with the law firms representing the class that pre-date her engaging the firms, and the circumstances through which she came to engage them.

Ruling: No response required.

D-8: Documents reflecting the above communications, including but not limited to the full January 10, 2008 letter (including any and all attachments thereto), any responses that you made to this letter (including any completed questionnaire or electronic communication sent to the law firm), and any subsequent communications.

Ruling: Krech must respond to this request as narrowed: request covers the January 10, 2008 letter and any attachments thereto and responses that Krech made to the letter (including any completed questionnaire or electronic communication sent to the law firm) and any response from the law firm.

I-10: Describe circumstances through which you came to engage the law firms to represent you.

Ruling: No response required.

I-11: Identify any person, except attorneys in the law firms representing the class, who will or may share in any legal or consulting fee in this action.

Ruling: Krech must respond.

I-12: Describe any recovery to be received by you for serving as a class representative in lieu of or in addition to your pro rata share of any prospective class recovery.

## STATEMENT

Ruling: Krech must respond.

I-13: Identify each communication you or your representatives have had with any persons referring or relating to a possible legal action against entities or individuals responsible for complying with the FCRA.

Ruling: No response required.

D-1: All documents relating to any communications between you (or any of your representatives) and any other person or entity relating to the initiation and pursuit of this action or your decision to seek to act as class representative on behalf of the proposed class.

Ruling: Krech must respond.

**Miscellaneous**

I-1: Identify and state the location and custodian for all documents concerning the matters responsive to all requests for production propounded by Defendants in this case.

Ruling: Krech must respond.

I-2: Identify each person whose documents were reviewed or searched in connection with the response to the requests for production propounded by Defendants in this case.

Ruling: Krech must respond.

I-3: Identify each person who assisted with answering these Interrogatories and, for each, specify the Interrogatory the person assisted in answering.

Ruling: Krech must respond.

I-14: State the reasons why you believe you can fairly and adequately represent the interests of the classes, describing with particularity your financial resources, relevant experience and your fee and cost arrangements with counsel.

Ruling: No response required.

D-5: All documents relating to your contention that you can fairly and adequately represent the interests of all of the proposed class members, including documents sufficient to show your financial resources, your relevant experience, and the fee and cost arrangements with your legal counsel.

Ruling: No response required.

I-15: Identify all lawsuits or administrative proceedings in which you have been a party.

---

**STATEMENT**

---

Ruling: Krech must respond.

I-16: Identify every communication with any member of the class or purported classes concerning the allegations in the lawsuit.

Ruling: No response required.

D-6: All documents relating to your efforts to verify or confirm the accuracy of the allegations set forth in the Class Action Complaint or any amendment made thereto in this case.

Ruling: No response required.

I-17: Describe the manner and circumstances in which she first became aware of the violations alleged in the complaint.

Ruling: No response required.

D-9, D-10, D-11: Document requests seeking materials pertaining to testifying experts.

Ruling: No response required at this time.

**CONCLUSION**

     For the reasons discussed above, Plaintiffs' Motion for Protective Order to Strike Defendants' First Set of Interrogatories and Requests for Production of Documents is granted in part and denied in part. Plaintiffs must respond to the Defendants' written discovery requests as directed above within thirty days of this Order.

---

1. To the extent that Defendants seek to serve the same discovery on Russell Hornbeck, the other new named plaintiff, this ruling applies to that discovery as well.

2. The FCRA requires Consumer File Disclosure Reports from consumer reporting agencies to include: 1) all information in the consumer's file at the time of the request; 2) the sources of the information in the consumer's file and 3) the name of those who procured a consumer report from the consumer reporting agency during the preceding one-year period. 15 U.S.C. §§ 1681g(a)(1-3).

3. It is worth noting, however, that Defendants have not demonstrated that any of the specific information that they seek from Krech is relevant to any issue other than her adequacy as a class representative (if that).

4. Krech does not assert a Bad Check List claim.

5. Apparently Krech's identifiers were not in the negative database but Target declined her check because it mistakenly associated her with another consumer's identifiers that *were* in the SCAN negative

database.  The letter from SCAN dated October 21, 2005 said: "SCAN has determined that your check was declined due to an internal association at Target Stores, from your driver's license number and/or bank routing and account number (MICR) to another account and/or driver license number which was reported to SCAN for an unpaid check."  (Pls.' Br. 8 n.8.)

6. Plaintiffs' motion for protective order is directed at written discovery requests only, not Plaintiffs' depositions, and this ruling on written discovery should not be construed as limiting the scope the depositions of Searcy and Hornbeck.

7. The discovery requests have been reorganized so that all requests seeking roughly the same type of information appear under the same general heading.  "I" refers to Interrogatory and "D" refers to Document (i.e., I-1 means "Interrogatory 1" and "D-1" means Document Request 1).

8.  Whenever a ruling refers to "SCAN merchant" this includes merchants using SCAN OnLine.